1   Rasha Gerges Shields (Cal. Bar No. 218248)
    rgergesshields@jonesday.com
2   Tyler J. Scott (Cal. Bar No. 341039)
    tscott@jonesday.com
3   JONES DAY
    555 South Flower Street, 50th Floor
4   Los Angeles, CA 90071
    Telephone: +1.213.243.2719
5   Facsimile: +1.213.243.2539

6
7   Attorneys for Defendant
    UNIVERSITY OF SOUTHERN CALIFORNIA
8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

12  DOE JEWISH USC FACULTY              Case No. 2:24-cv-05712 FLA (SSC)
    MEMBER 2004 and DOE JEWISH
13  USC STUDENT 1987, Individually      **DEFENDANT'S NOTICE OF**
    And On Behalf of All Others Similarly **MOTION AND MOTION TO**
14  Situated,                           **DISMISS PLAINTIFFS' FIRST**
                                        **AMENDED COMPLAINT**
15              Plaintiffs,             **AND TO STRIKE CLASS**
                                        **ALLEGATIONS**
16  v.

17
    Trustees of THE UNIVERSITY OF       **Date:    August 16, 2024**
18  SOUTHERN CALIFORNIA, a private      **Time:    1:30 p.m.**
    public benefit corporation; and DOES 1 **Place:   Courtroom 6B**
19  through 100, inclusive,             **Judge:   The Honorable**
                                        **        Fernando L. Aenlle-Rocha**
20              Defendants.
21                                      FAC Filed: June 5, 2024
22                                      Action Removed: July 8, 2024

23
24
25
26
27
28

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on Friday, August 16, 2024, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 6B of this Court, located at 350 West 1st Street, Los Angeles, California, before the Honorable Judge Fernando L. Aenlle-Rocha, Defendant University of Southern California ("USC" or "University"), erroneously sued as "Trustees of THE UNIVERSITY OF SOUTHERN CALIFORNIA,"[1] will and hereby does move the Court for an order dismissing plaintiffs' First Amended Complaint with prejudice and/or each of its causes of action or, in the alternative, striking plaintiffs' class allegations.

This motion is made pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, and this Court's inherent powers.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the accompanying Request for Judicial Notice ("RJN"), the proposed order submitted herewith, the complete files and records in this action, the argument of counsel, and such other matters as the Court may consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 3, 2024. The conference was conducted via phone on July 3, 2024, with follow-up emails between counsel concluding on July 4, 2024.

---

[1] Plaintiffs' complaints are modeled after a separate lawsuit filed by plaintiffs' counsel against the "Regents of THE UNIVERSITY OF CALIFORNIA, LOS ANGELES" on May 13, 2024. *See* RJN, Ex. A. Although the "Regents of the University of California" is an incorporated legal entity, the "Trustees of the University of Southern California" is not. Moreover, the operative complaint references USC itself as the defendant, not USC's Board of Trustees. *See, e.g.*, Dkt. No. 1, Ex. A-7, First Amended Complaint ¶ 11 ("The Defendant University, one of America's leading universities …"), ¶ 55 ("Defendant University is a California private public benefit corporation, controlled by its Board of Trustees.").

1    Dated: July 15, 2024                    Respectfully submitted,

2

3                                            JONES DAY

4

5                                            By: */s/ Rasha Gerges Shields*
                                                 Rasha Gerges Shields
6
                                             Attorneys for Defendant
7                                            UNIVERSITY OF SOUTHERN
                                             CALIFORNIA
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND STRIKE CLASS

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................. 1

BACKGROUND .................................................................................. 2

    I.    Plaintiffs' Allegations ................................................................ 2

        A.    The Faculty Plaintiff ........................................................ 3

        B.    The Student Plaintiff ........................................................ 3

    II.    Other Allegations ................................................................ 4

ARGUMENT ....................................................................................... 6

    I.    Plaintiffs' claims must be dismissed ...................................... 7

        A.    Plaintiffs' civil rights and intentional tort claims fail because plaintiffs do not allege USC had the requisite specific intent to violate their civil rights or authorize violence against them ................................................ 7

        B.    Plaintiffs' civil rights and tort claims fail for additional reasons .......................................................................... 13

            1.    Bane Act (Count 1) ........................................ 13

            2.    Unruh Act (Count 2) ...................................... 13

            3.    Ralph Act (Count 3) ....................................... 14

            4.    Tort Claims (Counts 4, 6-7) ........................... 15

        C.    Plaintiffs' remaining claims fail .................................... 17

            1.    Breach of contract (Count 5) .......................... 17

            2.    Declaratory and injunctive relief (Counts 8-9) .............. 18

    II.    Plaintiffs' class allegations should be dismissed or stricken .............. 19

CONCLUSION ................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Alcorn v. Anbro Engineering, Inc.*,
   2 Cal. 3d 493 (1970) .......................................................................................... 13

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
   225 Cal. App. 4th 1451 (2014) ............................................................................ 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................3, 9, 10, 11, 13

*Augustus v. Cnty. of Los Angeles*,
   No. 2:20-cv-11255-FLA, 2023 WL 2799117 (C.D. Cal. 2023) .................... 6, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 7

*Brandstetter v. City of Riverside*,
   No. 520CV01866-FLA, 2023 WL 5493817 (C.D. Cal. 2023) ........................... 8

*Bustamante v. Intuit, Inc.*,
   141 Cal. App. 4th 199 (2006) ............................................................................ 18

*Casella v. SouthWest Dealer Servs., Inc.*,
   157 Cal. App. 4th 1127 (2007)................................................................8, 9, 11

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011) ............................................................................ 6

*Cider Riot, LLC v. Patriot Prayer USA, LLC*,
   544 P.3d 363 (Or. App. Ct. 2024) ..................................................................... 17

*Conde v. Sensa*,
   259 F. Supp. 3d 1064 (S.D. Cal. 2017) .............................................................. 5

*Cornell v. City & Cnty. of San Francisco*,
    17 Cal. App. 5th 766 (2017) ........................................................................ 8, 11

*Counterman v. Colorado*,
    600 U.S. 66 (2023) ............................................................................................ 17

*Daniels v. Select Portfolio Servicing, Inc.*,
    246 Cal. App. 4th 1150 (2016) ........................................................................ 18

*Davis v. Lab. Corp. of Am. Holdings*,
    No. 20-cv-0893, 2022 WL 1682416 (C.D. Cal. 2022) .................................... 14

*Doe v. Rector & Visitors of George Mason Univ.*,
    149 F. Supp. 3d 602 (E.D. Va. 2016) ........................................................ 11, 17

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ...................................................................... 11, 12

*Est. of Miller v. Cnty. of Sutter*,
    No. 22-cv-577, 2020 WL 6392565 (E.D. Cal. 2020) ....................................... 8

*Fed. Trade Comm'n v. Walmart Inc.*,
    664 F. Supp. 3d 808 (N.D. Ill. 2023) ................................................................. 5

*Ford v. Mckesson*,
    No. 16-00742-BAJ-RLB, 2024 WL 3367216 (M.D. La. 2024) ...................... 17

*Gabrielle A. v. Cnty. of Orange*,
    10 Cal. App. 5th 1268 (2017) ............................................................................ 8

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) .......................................................................................... 19

*Harris v. Cap. Growth Invs. XIV*,
    52 Cal. 3d 1142 (1991) ....................................................................................... 8

*Holliday v. Jones*,
    215 Cal. App. 3d 102 (1989) ............................................................................ 16

*Jones v. Dep't of Corr. & Rehab.*,
    152 Cal. App. 4th 1367 (2007)................................................................................16

*Jones v. Regents of Univ. of Cal.*,
    97 Cal. App. 5th 502 (2023)..................................................................................15

*Lam v. Ngo*,
    91 Cal. App. 4th 832 (2001)..................................................................................17

*Lyons v. Bank of Am., NA*,
    No. 11–1232-CW, 2011 WL 6303390 (N.D. Cal. 2011)....................................20

*Matal v. Tam*,
    582 U.S. 218 (2017) ..............................................................................................11

*McGowan v. Weinstein*,
    505 F. Supp. 3d 1000 (C.D. Cal. 2020)..............................................................13

*Miklosy v. Regents of Univ. of Cal.*,
    44 Cal. 4th 876 (2008)..................................................................................15, 16

*Molien v. Kaiser Found. Hosps.*,
    27 Cal. 3d 916 (1980)............................................................................................17

*Moon v. Guardian Postacute Servs., Inc.*,
    95 Cal. App. 4th 1005 (2002)..............................................................................13

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014)................................................................................10

*N. A. A. C. P. v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ..............................................................................................17

*Neerman v. Cates*,
    No. CV 22-2751, 2022 WL 18278377 (C.D. Cal. 2022)..................................18

*Nia v. Bank of Am., N.A.*,
    603 F. Supp. 3d 894 (S.D. Cal. 2022)................................................................14

iv

*Piedra v. Dugan*,
    123 Cal. App. 4th 1483 (2004)......................................................................16

*Reese v. Cnty. of Sacramento*,
    888 F.3d 1030 (9th Cir. 2018)......................................................................7

*Roberts v. Target Corp.*,
    No. 11-951-HE, 2012 WL 400030 (W.D. Okla. 2012)....................................19

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004)..............................................................................18

*Robles v. Agreserves, Inc.*,
    158 F. Supp. 3d 952 (E.D. Cal. 2016)........................................................16

*Rojo v. Kliger*,
    52 Cal. 3d 65 (1990)................................................................................13

*Route v. Mead Johnson Nutrition Co.*,
    No. CV 12-7350-GW, 2013 WL 658251 (C.D. Cal. 2013)..............................19

*Rust v. Sullivan*,
    500 U.S. 173 (1991)................................................................................11

*Sanders v. Apple, Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009)...............................................19, 20

*Schilling v. Kenton Cnty., Ky.*,
    No. 10-143-DLB, 2011 WL 293759 (E.D. Ky. 2011)....................................20

*Shoyoye v. Cnty. of Los Angeles*,
    203 Cal. App. 4th 947 (2012).....................................................................8

*Smith v. Cnty. of Santa Cruz*,
    No. 20-CV-00647-BLF, 2020 WL 6318705 (N.D. Cal. 2020), *aff'd*,
    2022 WL 2287429 (9th Cir. 2022)............................................................13

*So v. Shin*,
    212 Cal. App. 4th 652 (2013)...................................................................16

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND STRIKE CLASS

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010)..........................................................19, 20

*Trazo v. Nestle USA, Inc.*,
    No. 12-2292-PSG, 2013 WL 4083218 (N.D. Cal. 2013)..................................19

*United States v. Hansen*,
    599 U.S. 762 (2023) ...........................................................................................9

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .............................................................................6

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ...........................................................................9

*Winarto v. Toshiba Am. Electronics Components, Inc.*,
    274 F.3d 1276 (9th Cir. 2001) .........................................................................14

*Wuxi Multimedia, Ltd. v. Koninklijke Philips Electronics, N.V.*,
    No. 04-cv-1136, 2006 WL 6667002 (S.D. Cal. 2006) ......................................12

*Zavatto v. Itzhaki*,
    No. B270579, 2017 WL 1021734 (Cal. Ct. App. 2017) ...................................18

**STATUTES**

Cal. Civ. Code § 51..............................................................................................7, 14

Cal. Civ. Code § 51.7................................................................................................7

Cal. Civ. Code § 52.1..........................................................................................7, 13

Cal. Educ. Code § 94367 ...................................................................................11, 17

Cal. Labor Code § 3600.........................................................................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12........................................................................................2, 6, 12, 19

Fed. R. Civ. P. 23...............................................................................................19, 20

NBCLA Video, available at
    https://www.youtube.com/watch?v=XqbZtOuKVVo
    (last accessed July 10, 2024) ................................................................... 6

1 Williston on Contracts § 4:22 (4th ed. May 2024 update) .................................. 18

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND STRIKE CLASS

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This case is about two plaintiffs—one a Jewish faculty member, the other a Jewish graduate student—who filed claims against the University of Southern California ("USC" or the "University") following recent campus protests by individuals who plaintiffs allege are "outside agitators" concerning the Israel-Hamas war.  Dkt. 1, Ex. A-7, First Amended Complaint ("FAC"), ¶¶ 1, 4.  The complaint must be dismissed in its entirety because plaintiffs have failed to allege facts showing that the University is liable for the speech and rogue acts of others, or that plaintiffs are entitled to any relief.

Plaintiffs offer very few allegations to support their specific civil rights, tort, and contract claims against the University.  The Faculty Plaintiff claims that protesters asked her if she wanted to participate in a "bake sale for Palestine," among other questions. *Id.* ¶¶ 28–29.  She also alleges to have been "spat on by one of these thugs." Dkt. 1, Ex. A-9, *Errata* to FAC, Doc. No. 1-9.  The Student Plaintiff claims that she read offensive posters, and that a faculty member sent two notes to a department email list:  one asked for petition signatures; the other promoted a "Silent March."  FAC ¶¶ 43–45.  The complaint fails to assert a cognizable legal theory explaining how the speech by others is actionable at all—much less how any liability could be attributed to the University.  As for the spitting, plaintiffs have not—and cannot—plausibly allege that USC authorized or directed an unknown "thug" to spit on one of its faculty members.

None of plaintiffs' allegations come close to establishing the elements of plaintiffs' civil rights claims, which require USC to *intentionally* violate their expressly protected rights (Bane Act), and to do so based on plaintiffs' religious identities (Unruh and Ralph Acts).  And none of plaintiffs' allegations show that USC *specifically intended* to further any tortious conduct against plaintiffs, thus dooming plaintiffs' aiding-and-abetting theory.  Moreover, the Faculty Plaintiff's tort claims

are barred by California's workers compensation laws.  And the Student Plaintiff fails to allege basic elements of her battery (no touching), assault (no reasonable fear of contact), and contract claims (no contract, no breach, no damages).

Plaintiffs' histrionic references to the "Hamas-supporting Biden Administration" (FAC ¶ 1),  the "Soros Foundation" (*id*. ¶ 4), and "radical Democrat Left Wing political action groups" (*id*.), demonstrate an intent to litigate political issues and extend the scope of this dispute.  But those conclusory and over-the-top allegations do not relieve plaintiffs of the burden to allege facts that—if proven— would give rise to liability to these plaintiffs for the specific claims they have brought. Because plaintiffs have failed to meet that burden, the complaint must be dismissed with prejudice.

In the alternative, the Court should strike plaintiffs' class allegations.  Plaintiffs make no attempt to show why they would be adequate representatives, or that their claims are even suitable for class treatment.  Indeed, their own allegations undercut their ability to proceed with a class action, and their proposed classes are impermissibly overbroad as to encompass unharmed individuals.

## BACKGROUND

## I.  PLAINTIFFS' ALLEGATIONS

Plaintiffs, who filed this case under pseudonyms, purport to be "a Jewish Professor employed by and at USC" (the "Faculty Plaintiff") and "a [Jewish] hybrid Physical Therapy student at USC's health science campus" who "doesn't travel to campus very often" (the "Student Plaintiff").[2]  FAC ¶¶ 21, 32, 35.  At this stage of the

---

[2]  The hybrid physical therapy program is a graduate-level program that combines opportunities for online and in-person learning.  RJN at 1, 3.  USC's 79-acre health sciences campus is seven miles from the "Main campus" south of downtown where plaintiffs allege the protests took place.  *Id*. at 1–2; *see* FAC ¶¶ 1, 3, 52  (noting "pro-Hamas rallies" at "Bovard Hall," the Los Angeles "main" campus administration building).

USC does not now take a position on plaintiffs' ability to proceed anonymously.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND STRIKE CLASS

case, the Court assumes the truth of only well-pleaded factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## A.  The Faculty Plaintiff

The Faculty Plaintiff alleges that she experienced offensive speech and conduct from individuals on campus protesting the Israel-Hamas war.  FAC ¶¶ 28–29.  She purports to have been "accosted" on the way to her office "by protestors" asking "Are you a Zionist" and "Do you support the Israeli death war machine?"  *Id*. ¶ 28.  The Faculty Plaintiff claims that she heard similar comments from protestors for three weeks before she was one day "spat on by one of these thugs."  *Errata* to FAC.[3]  As a result, the Faculty Plaintiff chose to work remotely for an unspecified time.  FAC ¶ 28.

The Faculty Plaintiff also alleges that protestors "heckled" her while she crossed a parkway on the main campus.  *Id*. ¶ 29.  The protestors asked if she supports "the Zionist entity," and she "refused" to engage with them.  *Id.*  Later that day, a protestor asked the Faculty Plaintiff "if [she] wanted to participate in a 'bake sale for Palestine' to help feed children that Israel is intentionally starving."  *Id*.

The Faculty Plaintiff claims that these incidents caused her emotional distress.  *Id*. ¶ 30.  She does not allege that the protestors knew that she was Jewish or that she reported any of this to USC.

## B.  The Student Plaintiff

The Student Plaintiff's allegations focus on USC's selection of its Class of 2024 valedictorian.  *Id*. ¶¶ 37–50.  The Student Plaintiff asserts that the valedictorian has "strong antisemitic beliefs," shown by "publish[ing] several statements advocating for 'the complete abolishment of the state of Israel' on the grounds of 'ethnic

---

[3] This spitting allegation does not appear in the FAC.  During the parties' meet-and-confer, plaintiffs' counsel claimed the omission was erroneous and subsequently served an "*Errata*" to the FAC containing this allegation.  *See* Dkt. 1, Ex. A-9.  USC assumes this allegation appears in the FAC for purposes of this motion.

1  cleansing and apartheid.'"  *Id*. ¶¶ 40–41.  By selecting a valedictorian who has

2  expressed these beliefs, the student says, the University has itself "encouraged" an

3  anti-Jewish "narrative."  *Id*. ¶¶ 39, 41.  At the same time, the Student Plaintiff faults

4  the University for organizing a commencement ceremony that did not include a

5  speech from the valedictorian.  *See id*. ¶¶ 41–43; *see also id*. ¶ 28.

6      The Student Plaintiff identifies three incidents following the valedictorian

7  selection that she says caused her to "no longer feel safe on campus."  *Id*. ¶ 43.  *First*,

8  the student "encountered several posters" on campus that advocated for the

9  valedictorian.  *Id*.  These posters contained a hashtag slogan, a picture of the

10  valedictorian, and the names of her major and minor.  *Id*.  Because of those posters,

11  the Student Plaintiff alleges she "grew fearful that [she] could no longer feel safe on

12  campus without USC's intervention."  *Id*.  *Second*, the Student Plaintiff alleges that

13  an unidentified professor sent out an email that "asked everyone in the department to

14  sign a petition" in support of the valedictorian.  *Id*. ¶ 44.  The same professor then

15  sent another email encouraging students to attend a "Silent March" supporting the

16  valedictorian.  *Id*. ¶ 45.  *Third*, the student alleges that a classmate "asked me what

17  my opinion was on the topic of USC's decision to take [the valedictorian's] speech

18  away."  *Id*. ¶ 50.  Like the Faculty Plaintiff, the Student Plaintiff does not allege that

19  she reported any of these events to USC or that USC knew about them.

20      As a result of these incidents, the Student Plaintiff alleges that she experienced

21  emotional distress.  *Id*. ¶ 54.  She claims that one of her classmates knows that she is

22  Jewish, but that she otherwise kept her Jewish identity to herself.  *Id*. ¶¶ 50–51.

## II.  OTHER ALLEGATIONS

24      The allegations described above are about these plaintiffs.  Those are the

25  purported "facts" that matter.  The rest of the complaint consists of scattershot and

26  conclusory claims disconnected from plaintiffs and their claims.  For instance,

27  plaintiffs allege that USC was under "investigation into allegations of antisemitism"

28  in connection with the resignation of a member of its student government nearly four

years ago. *Id.* ¶ 24. Unrelated "allegations about allegations" of antisemitism years in the past cannot save plaintiffs' defective claims. *See Fed. Trade Comm'n v. Walmart Inc.*, 664 F. Supp. 3d 808, 825 (N.D. Ill. 2023) ("Allegations about allegations" are either not actionable or "not alleged with particularity."); *cf. Conde v. Sensa*, 259 F. Supp. 3d 1064, 1070 (S.D. Cal. 2017) ("[U]nproven state-court allegations may not validly support a plaintiff's cause of action in this Court.").

Plaintiffs similarly complain that protestors were arrested yet "all released without bail," but plaintiffs do not allege that USC had anything to do with the way that public prosecutors exercised their prosecutorial discretion, or that they were injured by those decisions. FAC ¶¶ 8–10. Nor do plaintiffs identify any University policies that applied unequally to them. *Id.* ¶¶ 14, 16. Events in China (*id.* ¶ 16), the views of "the Soros Foundation" (*id.* ¶ 4), "Democratic dark-money political action groups" (*id.* ¶ 8), and the political stance of the "Hamas-supporting Biden Administration" (*id.* ¶ 1) are even further afield.

Still other allegations are focused purely on the viewpoints of students and others. Plaintiffs complain, for instance, that some students were "sporting Palestinian flags and other terrorist garb" (*id.* ¶ 9), that protestors criticized USC for alleged financial investments related to Israel (*id.* ¶ 26), and that some faculty characterized Israel as an "oppressor state" (*id.* ¶ 24). Plaintiffs make no attempt to explain why the viewpoints of others are actionable here (or whether plaintiffs even heard or saw these viewpoints being expressed).

Moreover, plaintiffs attempt to incorporate YouTube videos into the complaint that contradict their conclusory allegations. *Id.* ¶¶ 3, 7–9. For instance, plaintiffs simply assert that USC "aided, abetted, and encouraged Campus Terrorists to paint swastikas" on USC's own property. *Id.* ¶ 7. But the clip they cite instead shows that a single swastika was found on campus, that it was *immediately* removed by USC,

and that USC issued a statement condemning antisemitism. *Id.* (Video at 2:30–2:45).[4]
*See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (courts may consider
documents mentioned by a complaint as "incorporated by reference" in the 12(b)(6)
posture) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.
2002) (noting that the district court considered interview tapes as incorporated by
reference)).

Still other links do not even purport to depict events at USC—they describe
events at an entirely different university, the University of California, Los Angeles
("UCLA").  FAC ¶ 3 (including a "You Tube video of 'Anti-Israel protestors' . . . at
***UCLA*** Campus" and citing a Yahoo News link to an article about UCLA) (emphasis
in FAC).  No wonder that many of the complaint's generic allegations are copied and
pasted from an entirely different complaint filed by plaintiffs' counsel days earlier
against UCLA.  *See* RJN, Ex. A.  For instance, the allegations of at least FAC ¶¶ 2,
4–6, 13–14, 16, and 20 are copied *verbatim* from Exhibit A to the RJN.  And at least
FAC ¶¶ 1, 3, 7–12, 15, and 17–19 are copied with minor changes:  USC's name has
been swapped in, or YouTube links have been deleted or altered.  Events at another
university do not support plaintiffs' conclusory assertions about USC.

## ARGUMENT

Rule 12(b)(6) requires dismissal of a complaint that "does not make out a
cognizable legal theory or does not allege sufficient facts to support a cognizable legal
theory."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir.
2011).  Plaintiffs must allege *facts* that show a plausible entitlement to relief.  *Id.*
"[A]llegations that are merely conclusory, unwarranted deductions of fact, or
unreasonable inferences" carry no weight.  *Augustus v. Cnty. of Los Angeles*, No.
2:20-cv-11255-FLA, 2023 WL 2799117, at *3 (C.D. Cal. 2023) (quotation marks
omitted).  "[I]nsisting upon some specificity in pleading" is particularly appropriate

---

[4] NBCLA Video, available at
https://www.youtube.com/watch?v=XqbZtOuKVVo  (last accessed July 10, 2024).

here, where plaintiffs aim to open up a "massive factual controversy," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007), including alleged coercion by a Presidential administration and machinations by outside, "dark-money" groups, *see* FAC ¶¶ 1, 8.

# I.    PLAINTIFFS' CLAIMS MUST BE DISMISSED

## A.    Plaintiffs' civil rights and intentional tort claims fail because plaintiffs do not allege USC had the requisite specific intent to violate their civil rights or authorize violence against them

Plaintiffs lead with claims for civil rights violations (Counts 1–3), alongside intentional tort claims (Counts 6 and 7).  To state a claim under these California civil rights statutes or that USC "aided and abetted" an intentional tort, plaintiffs must allege that USC had a specific wrongful intent to harm or discriminate against these plaintiffs.  Plaintiffs' allegations fall far short of these requirements.

*1. Civil rights claims.*  The Bane Act (Count 1) prohibits "interfere[nce] by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual . . . of rights secured by the Constitution or laws of the United States" and State of California.  Cal. Civ. Code § 52.1(a).  The Unruh Act (Count 2) promises "full and equal accommodations . . . in all business establishments" to individuals with listed protected characteristics, including religion.  *Id*. § 51(b).  And the Ralph Act (Count 3) bars "violence, or intimidation by threat of violence" against a person based on those same protected attributes.  *Id*. § 51.7(b)(1).

Recognizing that tort and employment law protect against run-of-the-mill misconduct, the legislature targeted the Bane, Unruh, and Ralph Acts at egregious deprivations of enumerated rights and discriminatory animus.  *See, e.g.*, *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040, 1043 (9th Cir. 2018) (explaining that the Bane Act "was enacted . . . to address hate crimes," and the "underlying violation" must be "sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief.") (quotation marks omitted).  Consistent with their text and legislative purpose, all three statutes capture only ***intentional*** deprivations of civil rights or ***intentional***

7

discrimination. *See Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 958–59 (2012) (Bane Act); *Brandstetter v. City of Riverside*, No. 520CV01866-FLA, 2023 WL 5493817, at *6 (C.D. Cal. 2023) (Bane Act requires a "'specific intent to violate' a constitutional [or statutory] right.") (quoting *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022)); *see also Harris v. Cap. Growth Invs. XIV*, 52 Cal. 3d 1142, 1175 (1991) (Unruh Act requires plaintiff to "plead and prove intentional discrimination in public accommodations . . . A disparate impact analysis or test does not apply."), *superseded by statute on other grounds as stated in Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 664–65 (2009).

Alleging specific intent is a high bar.  Plaintiffs must plead and prove that USC's "act of interference" with a civil right was itself "deliberate or spiteful." *Shoyoye*, 203 Cal. App. 4th at 959; *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 801–02 (2017); *Harris*, 52 Cal. 3d at 1175; *Gabrielle A. v. Cnty. of Orange*, 10 Cal. App. 5th 1268, 1291 (2017) (Ralph Act claims require "discriminatory motive").  As a result, plaintiffs cannot merely allege that they were deprived of a civil right or effectively treated differently.  *See Est. of Miller v. Cnty. of Sutter*, No. 22-cv-577, 2020 WL 6392565, at *19 (E.D. Cal. 2020) (rejecting Unruh Act claims at the pleading stage).  Simply put, plaintiffs must plausibly allege that the University specifically intended to deprive the plaintiffs of a protected right (for the Bane Act claim) on the basis of religion (for the Ralph and Unruh claims).

**2. Intentional Tort Claims.**  Plaintiffs seek to hold USC liable for assault and battery by "outside agitators" based on an aiding and abetting theory.  *See* FAC ¶¶ 95–107.  But as with the civil rights claims, California law requires a defendant to *specifically* intend to facilitate an assault or battery—that is, to provide aid both "(1) With knowledge of the unlawful purpose of the perpetrator, and (2) With the intent or purpose of committing or encouraging or facilitating" the wrong.  *Casella v. SouthWest Dealer Servs., Inc.*, 157 Cal. App. 4th 1127, 1140–41 (2007) (quotation marks omitted); *see also, e.g., Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225

Cal. App. 4th 1451, 1475–76 (2014) (aiding and abetting "necessarily requires a defendant to reach a **conscious decision** to **participate in tortious activity** for the purpose of assisting another in performing a wrongful act. . . .") (emphasis added and quotation marks omitted); *accord United States v. Hansen*, 599 U.S. 762, 771 (2023) (it is well established that encouragement and abetting "require an intent to bring about a particular unlawful act"). "Mere knowledge" that wrongful conduct "is being committed and the failure to prevent it does not amount to aiding and abetting"— specific intent and assistance are required. *Casella*, 157 Cal. App. 4th at 1140–41 (quotation marks omitted).

**3. Plaintiffs' Allegations.** Plaintiffs cannot state a civil rights claim or an intentional tort claim. There are no allegations that USC, itself, specifically intended for any protestor to deprive plaintiffs of their rights. There are no allegations that USC specifically intended for any protestor to ask plaintiffs questions, invite plaintiffs to a bake sale, or ask them to sign a petition. And, unsurprisingly, there are *no* allegations that USC specifically intended for a protestor to spit at one of its faculty members. Even more, plaintiffs do not allege that they ever reported these incidents to USC—thus, there is no allegation that USC even knew about these particular incidents let alone had specific intent to bring them about. Furthermore, there are no allegations that USC did anything intentionally to these two plaintiffs because they are Jewish. For instance, there are no allegations that USC knew the Student Plaintiff is Jewish, and the Student Plaintiff affirmatively alleges she kept her faith to herself on campus (except one friend). FAC ¶¶ 49–50. All this dooms plaintiffs' civil rights and intentional tort claims.

Plaintiffs' claims cannot be saved by pointing to the numerous (copied and conclusory) allegations in the complaint that are *not* specific to them. Conclusory allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680; *see also, e.g.*, *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (assertions that plaintiff "was denied 'full and equal access,'" that defendant "failed

to provide accessible service counters," and that plaintiff "personally encountered" inaccessibility are too conclusory to state civil rights claims); *Mujica v. AirScan Inc.*, 771 F.3d 580, 592 (9th Cir. 2014) (facts, not conclusions, must support allegations that plaintiffs "aided and abetted and conspired").  Specific intent cannot be inferred from generic claims about the "Soros Foundation," the "Hamas-supporting Biden Administration," "DEI quotas," and unrelated investigations.  *E.g.*, FAC ¶¶ 1, 3, 4, 24.

By focusing on allegations about the views and acts of others—"students and other individuals" (FAC ¶¶ 25, 40–41, 43, 50), "student groups" (*id.* ¶ 26), "faculty" and "speakers" (*id.* ¶ 24, 44–45), and protestors (*id.* ¶¶ 28–29, 52)—plaintiffs repeat the core flaw in *Iqbal*, the key precedent on well-pled facts.  Like plaintiffs here, the *Iqbal* plaintiff alleged that he was the subject of discriminatory treatment because of his religion—a claim that required him to plead not just differential consequences, but discriminatory intent.  *See* 556 U.S. at 666, 668–69, 686.  As here, the *Iqbal* plaintiff's allegations focused on "various other defendants" not before the Court, who "may" have acted against him for "impermissible reasons."  *Id.* at 682–83.  But even if that were the case, the Supreme Court explained, the purportedly impermissible intentions and acts of others are not grounds for imputing any form of discriminatory intent to the defendants actually before the Court—supervisory government officials.  *See id*.

That is exactly what plaintiffs attempt to do.  Plaintiffs expressly seek to draw a line from, on the one hand, the alleged act of a "thug" (*Errata* to FAC) and the subjective views of certain protestors, students, and faculty (FAC ¶¶ 28, 39–41, 24–26, 44–45); to, on the other hand, the conclusion that USC intended real harm to members of its own community.  That leap is illogical and nonsensical.  The acts *of others* do not support a plausible inference that USC intended to deprive its students of a protected right, that USC harbored discriminatory intent, that USC intended for this particular faculty member to be assaulted, or that USC even knew about these incidents.  In other words, such allegations do not show—as required—that USC

10

specifically intended for this conduct to be directed at plaintiffs, or that USC did so "with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by [a clearly delineated] right." *Cornell*, 17 Cal. App. 5th at 803. Nor do they show that USC acted with the "intent or purpose of committing or encouraging or facilitating" an assault or battery on a faculty member. *Casella*, 157 Cal. App. 4th at 1140–41.

Plaintiffs allege that USC's selection of a valedictorian with offensive social media posts effectively "encouraged" the protestors. FAC ¶¶ 28, 37–41. But that selection does not reflect specific intent by USC to deprive faculty members or other students of equal civil rights, or to subject them to physical harm. The only plausible inference from the selection of a valedictorian is that the recipient met the criteria for that award. "As between that 'obvious alternative explanation' for the [selection], and the purposeful, invidious discrimination [plaintiffs] ask[] us to infer, discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at 682; *see also Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014). Nor can USC be held liable for every offensive viewpoint expressed on campus. Academic environments host a wide variety of viewpoints—and those cannot all plausibly be imputed to the University as an institution. *See Rust v. Sullivan*, 500 U.S. 173, 200 (1991); *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 627 (E.D. Va. 2016). That any particular viewpoint was uttered on campus is insufficient as a matter of law to demonstrate that the University intended to harm its own students and faculty.[5]

---

[5] California's Leonard Law forbids private universities from making or enforcing a rule that subjects an enrolled student to disciplinary sanctions solely on the basis of speech protected by the First Amendment. *See* Cal. Educ. Code § 94367(a); *see also Matal v. Tam*, 582 U.S. 218, 246 (2017) ("Speech that demeans on the basis of . . . religion . . . is hateful; but the proudest boast of our free speech jurisprudence is that we protect the freedom to express the thought that we hate.") (quotation marks omitted).

Fishing around for other theories, plaintiffs also baldly assert that the University "listen[ed]" to protestors' demands, thus "encourag[ing]" them, and supplied them with "ammunition that the mob subsequently used against LAPD." FAC ¶¶ 7, 15. As to the former, listening to another's opinions is not evidence of a shared aim. As to the latter, that conclusory allegation is untethered from any conduct that allegedly harmed plaintiffs (and it is outrageous and implausible). Plaintiffs' numerous other theories fail: USC does not control criminal charging decisions (FAC ¶¶ 8–9), "outside vendors" selling pro-Palestinian merchandise to the "gullible" do not show that USC intended to harm faculty or students (*id*. ¶ 9), and the absence of protests against China and Somalia (*id*. ¶ 16) say nothing about any specific intent by USC to harm these two plaintiffs.

Plaintiffs simultaneously undermine any allegations of intent by pointing to an allegedly *hostile* relationship between USC and the protestors—not a cooperative one based on the shared intention of harming plaintiffs here. The court "need not accept" "internally inconsistent" allegations as true under Rule 12(b)(6). *Wuxi Multimedia, Ltd. v. Koninklijke Philips Electronics, N.V.*, No. 04-cv-1136, 2006 WL 6667002, at *9 (S.D. Cal. 2006); *see also Eclectic Props.*, 751 F.3d at 999 (Ninth Circuit "taking into account the evidence in [p]laintiffs' own complaint that undermines their allegation"). According to plaintiffs, agitators protested USC, accusing it of being "complicit in violence" against Palestinians, and demanding that it divest from Israel. FAC ¶ 26. Perhaps most notably, the complaint alleges that USC *supported* the LAPD when it "clear[ed] the Encampment" of protestors and "arrest[ed] 93 people on suspicion of trespassing." *Id*. ¶ 8. And a video incorporated by the complaint further show that, of course, USC condemned antisemitism. *See Id.* ¶ 7 (Video at 2:30–2:45) and footnote 4. The Court is not required to accept plaintiffs' theory as plausible (and it is not) when it is expressly contradicted by their own allegations.

Because plaintiffs fail to sufficiently plead facts from which the Court—in light of "judicial experience and common sense"—may infer that USC specifically

1  intended harm toward these two plaintiffs, the civil rights and intentional tort claims
2  must be dismissed. *Iqbal*, 556 U.S. at 679.

3    **B.  Plaintiffs' civil rights and tort claims fail for additional reasons**

4      **1.  *Bane Act (Count 1)***

5        A Bane Act plaintiff "must allege both a constitutional [or statutory] violation
6  and a specific intent to violate" that right. *McGowan v. Weinstein*, 505 F. Supp. 3d
7  1000, 1017 (C.D. Cal. 2020).  But both plaintiffs fail to identify any particular
8  constitutional or statutory right that USC supposedly violated (*see* FAC ¶¶ 63–69).
9  That is fatal.

10       Nor does the Student Plaintiff allege a Bane Act "threat of violence."  She
11 identifies no specific threats against her, no objectively reasonable fear of violence,
12 and no apparent ability to carry out an actionable threat.  That is not enough to state a
13 claim. *See Smith v. Cnty. of Santa Cruz*, No. 20-CV-00647-BLF, 2020 WL 6318705,
14 at *10 (N.D. Cal. 2020), *aff'd*, 2022 WL 2287429 (9th Cir. 2022).  Indeed, Cal. Civ.
15 Code § 52.1(k) reinforces that speech "is not sufficient to support an action" under
16 the Bane Act unless it "specific[ally]" threatens violence.  The Student Plaintiff makes
17 no attempt to explain how seeing a poster (FAC ¶ 43), being invited to a march (*id.*
18 ¶ 45), being invited to sign a petition (*id.* ¶ 44), or asked an opinion by a friend (*id.*
19 ¶ 50) amounts to a specific threat of violence.  And to the extent the Faculty Plaintiff
20 seeks to rely on being asked to participate in a bake sale and other questions from the
21 protester (*id.* ¶¶ 28–29), she similarly cannot make out a Bane Act "threats" claim.

22    **2.  *Unruh Act (Count 2)***

23       The Faculty Plaintiff cannot assert an Unruh Act claim against USC because
24 the Unruh Act does not apply to an employer-employee relationship. *E.g.*, *Alcorn v.*
25 *Anbro Engineering, Inc.*, 2 Cal. 3d 493, 500 (1970); *Rojo v. Kliger*, 52 Cal. 3d 65, 77
26 (1990) ("[T]he Unruh Civil Rights Act has no application to employment
27 discrimination.").  That ends her claim.

28

13

The Student Plaintiff's allegations fail to show a denial of "full and equal accommodations." Cal. Civ. Code § 51(b). The Student Plaintiff does not articulate facts showing that she "present[ed] . . . herself to a business with an intent to use its services but encounter[ed] an exclusionary policy or practice that prevents . . . her from using those services." *Davis v. Lab. Corp. of Am. Holdings*, No. 20-cv-0893, 2022 WL 1682416, at *928 (C.D. Cal. 2022) (quotation marks omitted); *see also Nia v. Bank of Am., N.A.*, 603 F. Supp. 3d 894, 906 (S.D. Cal. 2022). Based on the Student Plaintiff's allegations, it would be hard to exclude her based on her religion: the student does not allege that anyone at USC—other than her friend—even knew that she was Jewish. *See* FAC ¶¶ 50–51.

In any event, the Student Plaintiff's allegations fail to show how seeing a poster or two emails—which *invited* the student to sign a petition and attend a march—excluded her from her classes on the Health Sciences Campus or through an online medium. To the extent that the Student Plaintiff seeks to rest her Unruh Act claim on events on the "Main" campus (see *id.* ¶ 52), she does not allege that she ever even traveled to the main campus during the protest, *see id*. ¶ 35, nor do her allegations lead to a plausible conclusion that she would have been excluded had she done so. Accordingly, the Student Plaintiff has not alleged facts sufficient to establish a violation of the Unruh Act.

### 3. *Ralph Act (Count 3)*

"Under the Ralph Act, a plaintiff must establish the defendant threatened or committed violent acts against the plaintiff or their property, and a motivating reason for doing so was a prohibited discriminatory motive." *Gabrielle A.*, 10 Cal. App. 5th at 1291. Like the Bane Act, a Ralph Act threat requires an objectionably reasonable perception of violence. *See Winarto v. Toshiba Am. Electronics Components, Inc.*, 274 F.3d 1276, 1289–90 (9th Cir. 2001). The Student Plaintiff does not describe any specific threats of violence against her. And given that neither plaintiff alleges that their Jewish identity was known (apart from the student's friend, *see* FAC ¶ 50),

neither could have been discriminated against *because of* her religion.  To be more specific: the Faculty Plaintiff does not allege that she told the "thug" that spat on her that she is Jewish, or that the "thug" knew that; rather, she alleges she repeatedly "refused to engage" with the protestors when they approached her. *Id.* ¶ 29.  Plaintiffs similarly do not allege that USC—the actual defendant here—ever knew of the specific incidents they complain about, and the Student Plaintiff does not allege that USC knew that she is Jewish (she alleges the opposite—that she kept it to herself on campus except one friend).

### 4. *Tort Claims (Counts 4, 6-7)*

#### a. **The Faculty Plaintiff's tort claims are barred by California's workers compensation law**

The Faculty Plaintiff's tort claims for negligence, assault, and battery (Counts 4, 6, and 7) are preempted by California workers' compensation exclusivity.  "[I]n lieu of any other liability whatsoever," Cal. Labor Code § 3600(a), employee plaintiffs must turn to workers' compensation for injuries that occur at a worksite and involve "risks inherent in the employment relationship." *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902–03 (2008).  Claims subject to workers' compensation exclusivity must be dismissed at the pleading stage. *E.g.*, *id*. (dismissing claims for negligent and intentional infliction of emotional distress against defendant university).  "The workers' compensation statutes must be liberally construed" with an eye toward "extending" workers' ability to recover for injuries without having to litigate fault. *Jones v. Regents of Univ. of Cal.*, 97 Cal. App. 5th 502, 508 (2023) (quotation marks omitted).

The Faculty Plaintiff's claims occurred at the worksite because she was "heckled" and "spat on" (*Errata* to FAC) on campus on the way to and from her office.  *See* FAC ¶¶ 28–29; *Jones*, 97 Cal. App. at 508 (workers' compensation was the exclusive remedy for staff member injured while riding a bike on campus after work).  Both emotional harms and physical assaults are considered inherent in the

employment relationship under California law.  Even "intentional, unfair or
outrageous" conduct causing emotional distress can be "a normal part of the
employment relationship." *Miklosy*, 44 Cal. 4th at 902.  And "emotional flareup[s]"
in workplace environments can lead to foreseeable workplace assaults, making even
intentional torts within the scope of employment. *Jones v. Dep't of Corr. & Rehab.*,
152 Cal. App. 4th 1367, 1384 (2007) (quotation marks omitted); *see also Robles v.
Agreserves, Inc.*, 158 F. Supp. 3d 952, 974 (E.D. Cal. 2016).  Thus, the Faculty
Plaintiff's exclusive remedy for her alleged tort injuries is workers' compensation,
not this lawsuit.

> **b.   The Student Plaintiff's tort claims fail because she alleges no
> physical harm and cannot bring a negligent infliction of
> emotional distress claim**

The Student Plaintiff does not allege any offensive or harmful touching.  And
an allegation of seeing posters and receiving emails seeking support for the
valedictorian does not plausibly demonstrate a reasonable fear of imminent bodily
harm. FAC ¶¶ 43–45.  Accordingly, the Student Plaintiff's assault and battery claims
(Counts 6 and 7) cannot proceed. *See, e.g.*, *Piedra v. Dugan*, 123 Cal. App. 4th 1483,
1495 (2004) (harmful or offensive touching is a necessary element of battery); *So v.
Shin*, 212 Cal. App. 4th 652, 668 (2013) (assault requires a reasonable belief of an
imminent harmful or offensive touching).

Without any actual physical harm alleged, the Student Plaintiff's negligence
claim (Count 4) is actually a claim for negligent infliction of emotional distress
("NIED").  *See* FAC ¶¶ 83–88.  The Student Plaintiff is outside of the set of well-
defined special relationships necessary to state an independent claim for NIED under
California law. *See generally Holliday v. Jones*, 215 Cal. App. 3d 102, 111 (1989).
Even if the Student Plaintiff had a special relationship with USC that allows an NIED
claim, seeing posters and receiving emails is not the kind of conduct that causes "a
reasonable [person], normally constituted, [to] be unable to adequately cope with the

mental stress engendered by the circumstances of the case." *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 928 (1980).

Nor does the Student Plaintiff attempt to establish that the University has a duty to shield students from harmful or offensive ideas. *Cf. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d at 627 (explaining how suppressing merely upsetting ideas in an academic setting would "frustrate the mission of the university"). And California law prohibits private universities from disciplining enrolled students for merely articulating offensive ideas. *See* Cal. Educ. Code § 94367. Imposing a novel duty to proscribe offensive speech would therefore contradict California public policy. *See Moon v. Guardian Postacute Servs.*, Inc., 95 Cal. App. 4th 1005, 1013 (2002) (declining to extend California's NIED jurisprudence unless consistent with public policy).[6] Moreover, plaintiffs fail to plausibly show that the University itself advanced any particular offensive viewpoint.

## C. Plaintiffs' remaining claims fail

### 1. *Breach of contract (Count 5)*

The Student Plaintiff has failed to plead at least three required elements of a breach of contract claim—"the contract," "breach," and "resulting damages to [the]

---

[6] Similarly, plaintiffs fail to show how negligence liability can or should be attributed to the University in the context of a campus protest. There can be no "liability on a protest leader or an organizer" for the wrongful acts of others "under a negligence theory." *Cider Riot, LLC v. Patriot Prayer USA, LLC*, 544 P.3d 363, 375 (Or. App. Ct. 2024) (*applying N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 920, 925–92 (1982) and *Counterman v. Colorado*, 600 U.S. 66, 79 (2023)); *Ford v. Mckesson*, No. 16-00742-BAJ-RLB, 2024 WL 3367216 at *14 (M.D. La. 2024) (explaining that imposing negligence liability for the acts of others at a protest is impermissible); *accord Lam v. Ngo*, 91 Cal. App. 4th 832, 845 (2001) (no vicarious liability for intentional torts at protests absent a specific intent to cause harm). Here, the University did not even organize the protest—it was merely the object of the protestors and the location where the protest occurred. Thus, it is even further removed from civil liability than those who organize or plan such events.

17

plaintiff."[7]  *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1173 (2016); *see also Augustus*, 2023 WL 2799117, at *5 (dismissing claim where plaintiff did not "plead *facts* from which the existence of [the policy at issue] can plausibly be inferred," including "the exact parameters of the policy.") (emphasis in original). *First*, the Student Plaintiff has not attached her contract to the complaint or alleged its terms with specificity.  A contract term "must be sufficiently definite to enable the courts to give it an exact meaning."  1 Williston on Contracts § 4:22 (4th ed. May 2024 update); *see also Zavatto v. Itzhaki*, No. B270579, 2017 WL 1021734, at *3 (Cal. Ct. App. 2017) (contract for a "complete remodel" of a property was indefinite, despite contract payments).  And whether a contract is "sufficiently definite . . . is a question of law."  *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006) (quotation marks omitted).  Here, the student merely asserts that she had a contract with the University requiring "a safe and sane environment" for study.  FAC ¶ 90.  That provides no objective criteria for which a court can reasonably measure whether the environment was sufficiently "sane" or "safe."

In any event, the Student Plaintiff does not allege a breach of contract or damages.  The Student Plaintiff does not show how an alleged encampment on main campus caused USC to breach any obligations to the Student Plaintiff—a "hybrid" student who has alleged she went only to the health science campus miles away from the main campus.  *Id.* ¶¶ 35–36.  Nor does the Student Plaintiff allege contract damages arising from any breach.  *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).

### 2.  *Declaratory and injunctive relief (Counts 8-9)*

California does not recognize an independent cause of action for injunctive or declaratory relief (Counts 8 and 9).  *See Neerman v. Cates*, No. CV 22-2751, 2022

---

[7] The complaint's allegation of paying "over $200,000 to attend four years" demonstrates that this claim is applicable only to the Student Plaintiff.  FAC ¶ 90.  To the extent the Faculty Plaintiff alleges this claim too, it fails for the same reasons.

WL 18278377, at *6 (C.D. Cal. 2022) (dismissing requests for injunctive and declaratory relief absent actionable claims). These are remedies, not claims. Without a valid cause of action, these "counts" must be dismissed.

## II. PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE DISMISSED OR STRICKEN

The foregoing shows that the complaint should be dismissed in its entirety. In the event that any claims survive, however, plaintiffs' class allegations must be stricken. "Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010); *Route v. Mead Johnson Nutrition Co*., No. CV 12-7350-GW, 2013 WL 658251, at *8 (C.D. Cal. 2013). Striking class allegations at the pleading stage "avoid[s] the expenditure of time and money that must arise from litigating spurious issues." *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (quotation marks omitted).

*First*, plaintiffs have made no attempt to plead the existence of any of the requirements for class certification, including that their claims are typical of the alleged class, that they are adequate representatives, that common issues exist, or that common issues predominate. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158, 160 (1982) (noting that where a complaint lacked any "specific presentation identifying questions of law or fact that were common . . . to the class," it was error for the district court to presume that plaintiff's claim was typical of the class and stating that "[s]ometimes the issues are plain enough from the pleadings. . ." ); *Trazo v. Nestle USA, Inc.*, No. 12-2292-PSG, 2013 WL 4083218, at *11 (N.D. Cal. 2013) (*reconsidered on other grounds*) (holding that a complaint must "make a prima facie showing that Fed. R. Civ. P. 23(a) and 23(b) can be satisfied" and striking class allegations where the face of the complaint failed to show typicality, ascertainability, or commonality); *Roberts v. Target Corp.*, No. 11-951-HE, 2012 WL 400030, at *1

19

(W.D. Okla. 2012) (granting motion to dismiss class allegations where complaint "contains no facts in support of any of the elements of a class action claim under Rule 23"); *Schilling v. Kenton Cnty., Ky.*, No. 10-143-DLB, 2011 WL 293759, at *7 (E.D. Ky. 2011) (dismissing class allegations for failing to define a class that could be ascertained in an objective manner and for failing to satisfy Fed. R. Civ. P. 23(a) prerequisites).

The Student Plaintiff, for instance, baldly asserts that she sues on behalf of similarly situated Jewish students. FAC ¶ 61 (at p. 17). But the complaint alleges that the Student Plaintiff is a hybrid graduate student who does not travel to the "main" campus (and evidently did not encounter any of the protest activity that took place there), that she is the *only* Jewish student in her hybrid class, and that her Jewish identity is not known to the campus community at large. *Id*. ¶¶ 34–36, 49–51. Moreover, as discussed above, the Student Plaintiff also does not adequately allege many elements of her claims. The complaint makes no attempt to explain why a hybrid graduate student who does not allege travel to the main campus and did not experience much of the conduct complained of is a typical and adequate representative for Jewish students at-large. That is facially insufficient.

*Second*, to the extent that plaintiffs purport to allege a class of all USC faculty and students who identify as Jewish, such a class would include countless individuals with no possible claim, including Jewish faculty and students who were not present on campus during the protests, who were not harmed by the protests, and, importantly, who supported or chose to participate in the protests. *See, e.g., Lyons v. Bank of Am., NA*, No. 11-1232-CW, 2011 WL 6303390, at *7 (N.D. Cal. 2011) (granting motion to strike where "the proposed class includes many members who have not been injured"); *Tietsworth*, 720 F. Supp. 2d at 1146 (striking class allegations where the proposed class included individuals who had no problems with the purportedly defective product); *Sanders*, 672 F. Supp. 2d at 991 (striking class allegations because the proposed class definition "necessarily includes individuals who did not purchase"

1  the product at issue or did not see the challenged advertising).

2  <center>**CONCLUSION**</center>

3  The Court should dismiss plaintiffs' complaint with prejudice in its entirety.  In

4  the alternative, plaintiffs' class allegations should be stricken.

5

6  Dated: July 15, 2024                    Respectfully submitted,

7

8                                          JONES DAY

9

10                                         By: */s/ Rasha Gerges Shields*
                                               Rasha Gerges Shields

11
                                           Attorneys for Defendant
12                                         UNIVERSITY OF SOUTHERN
                                           CALIFORNIA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<center>21</center>

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant University of Southern California, certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1 and Standing Order 6(c).


Dated: July 15, 2024                    Respectfully submitted,


                                        JONES DAY


                                        By: */s/ Rasha Gerges Shields*
                                            Rasha Gerges Shields

                                        Attorneys for Defendant
                                        UNIVERSITY OF SOUTHERN
                                        CALIFORNIA

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND STRIKE CLASS

# PROOF OF SERVICE

I, Diane Sanchez, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 South Flower Street, Fiftieth Floor, Los Angeles, CA 90071. On July 15, 2024, I served a copy of the within document(s):

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.

☒ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Attorney for Plaintiffs:

Michael E. Reznick, Esq.
LAW OFFICES OF MICHAEL E. REZNICK
283 Ocho Rios Way
Oak Park, CA 91377-5540
Email: reznagoura@aol.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 15, 2024, at Los Angeles, California.

_____
Diane Sanchez