Rasha Gerges Shields (Cal. Bar No. 218248)
rgergesshields@jonesday.com
Tyler J. Scott (Cal. Bar No. 341039)
tscott@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: +1.213.243.2719
Facsimile: +1.213.243.2539

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE JEWISH USC FACULTY MEMBER 2004 and DOE JEWISH USC STUDENT 1987, Individually And On Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>v.<br><br>Trustees of THE UNIVERSITY OF SOUTHERN CALIFORNIA, a private public benefit corporation; and DOES 1 through 100, inclusive,<br><br>          Defendants. | Case No. 2:24-cv-05712 FLA (SSC)<br><br>**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**<br><br>**Date:     August 16, 2024**<br>**Time:     1:30 p.m.**<br>**Place:    Courtroom 6B**<br>**Judge:   The Honorable**<br>**              Fernando L. Aenlle-Rocha**<br><br>FAC Filed: June 5, 2024<br>Action Removed: July 8, 2024 |

### REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, Defendant University of Southern California ("USC"), erroneously sued as "Trustees of THE UNIVERSITY OF SOUTHERN CALIFORNIA," hereby requests that this Court take judicial notice of the following document and facts in connection with its Motion to Dismiss Plaintiffs' First Amended Complaint and to Strike Class Allegations:

- **Exhibit A:** Complaint filed against the Regents of the University of California, Los Angeles ("UCLA") in *Nitka v. Regents*, No. 24STCV11971 (Cal. Super. Ct. May 13, 2024). A true and correct copy is attached hereto as Exhibit A.

- The USC Health Sciences Campus east of downtown Los Angeles is over seven miles from USC's "main" campus, south of downtown, known as the "University Park Campus." Bovard Hall is located in the University Park Campus. Sources: USC campus maps, available at https://maps.usc.edu; and Google maps, available at https://maps.app.goo.gl/XhczDuT34x42iLpK9.

- USC's Hybrid Physical Therapy program, the Hybrid Pathway Doctor of Physical Therapy (DPT), is a graduate-level program that combines the accessibility of online learning with in-person, hands-on immersion experiences at USC. Sources: USC Division of Biokinesiology and Physical Therapy, available at https://dpt.usc.edu/hybrid-dpt-program; Commission on Accreditation in Physical Therapy Education, *Master List of Accredited Programs for the Physical Therapist* 5 (2022), available at https://www.capteonline.org/programs/master-list.

For the reasons set forth herein, the Court can properly take judicial notice of the above document and facts.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Facts "generally known within the trial court's territorial jurisdiction" or "readily determined from sources whose accuracy cannot be reasonably questioned" are subject to judicial notice. Fed. R. Evid. 201(b). When either standard is met, a party requests notice, and the court is provided with the relevant information, Rule 201(c)(2) provides that notice shall be taken. Alternatively, a court may take judicial notice of facts on its own. Fed. R. Evid. 201(c)(1). Pursuant to Rule 201(b) and (c), USC respectfully requests that the Court take notice of **Exhibit A** and the above-mentioned facts.

The Court may "take judicial notice of court filings and other matters of public record." *E.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006) (taking notice of plaintiffs' filings in other actions); *Marcus v. Rouillard*, No. CV 19-8057-GW-AGRX, 2022 WL 22573481, at *4 n.6 (C.D. Cal. 2022), *aff'd* 2024 WL 1042992 (9th Cir. Mar. 11, 2024) (taking "judicial notice of the filings and rulings in other lawsuits"); *St John v. Toyota Motor Corp.*, No. 10-ml-02151-JVS-FMOx, 2013 WL 5775072, at *2 (C.D. Cal. 2013) (noticing an Oklahoma state-court document). **Exhibit A** is a true and correct copy of the complaint in *Nitka v. Regents*, No. 24STCV11971 (Cal. Super. Ct. May 13, 2024), a matter of public record. Judicial notice is therefore appropriate.

Geographic distances are judicially noticeable under Rule 201(b)(1) and (2). Local landmarks are "generally known within the trial court's jurisdiction." Fed. R. Evid. 201(b)(1). And "[c]ourts may judicially notice locations using maps and satellite images." *Tesoro Ref. & Mktg. Co. LLC v. City of Long Beach*, 334 F. Supp. 3d 1031, 1042 (C.D. Cal. 2017) (citing *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) ("We take judicial notice of a Google map and satellite image as a 'source[] whose accuracy cannot reasonably be questioned,' at least for the purpose of determining the general location of the home.") (citation omitted)). The Court should therefore take judicial notice that USC's Health Sciences Campus is

2

1  over seven miles by public roads from the University Park Campus.

2      That USC's Hybrid Pathway Doctor of Physical Therapy program is a
3  graduate-level program is "readily determined from sources whose accuracy cannot
4  be reasonably questioned." Fed. R. Evid. 201(b)(2). Such facts are ascertainable and
5  verifiable from public sources—here, the program website and the accreditor's
6  website—whose accuracy cannot be reasonably questioned in this context. *See*
7  *Daghlian v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121, 1143 (C.D. Cal. 2006) (taking
8  judicial notice of the fact that DeVry University is a non-WASC regionally accredited
9  institution); *Caldwell v. Caldwell*, 2006 WL 618511, at *4 (N.D. Cal. 2006), *modified*
10  *at* 2006 WL 734405 (N.D. Cal. 2006) ("The court agrees with the proposition that, as
11  a general matter, websites and their contents may be proper subjects for judicial
12  notice."). The Court should therefore judicially notice that USC's Hybrid DPT
13  program is a graduate-level program.

14                                  **CONCLUSION**

15      For the foregoing reasons, USC respectfully requests that, in connection with
16  its Motion to Dismiss Plaintiffs' First Amended Complaint and to Strike Class
17  Allegations, the Court take judicial notice of **Exhibit A** and the above-mentioned
18  facts.

19

20

21  Dated: July 15, 2024                    Respectfully submitted,

22

23                                          JONES DAY

24

25                                          By: */s/ Rasha Gerges Shields*
                                                Rasha Gerges Shields
26
                                            Attorneys for Defendant
27                                          UNIVERSITY OF SOUTHERN
                                            CALIFORNIA
28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant University of Southern California, certifies that this brief contains 530 words, which complies with the word limit of L.R. 11-6.1 and Standing Order 6(c).

Dated: July 15, 2024                    Respectfully submitted,

                                        JONES DAY


                                        By: */s/ Rasha Gerges Shields*
                                            Rasha Gerges Shields

                                        Attorneys for Defendant
                                        UNIVERSITY OF SOUTHERN
                                        CALIFORNIA

4

# Exhibit A

Michael E. Reznick, Esq. State Bar No. 116126
LAW OFFICES OF MICHAEL E. REZNICK
A Professional Corporationsta
283 Ocho Rios Way
Oak Park, California 91377-5540
Tel: (818) 437-5630
Email: reznagoura@aol.com

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/13/2024 11:16 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

Attorney for Plaintiffs LIANA NITKA,
Individually And On Behalf Of All
Others Similarly Situated

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| LIANA NITKA, Individually And On Behalf Of All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>Regents of THE UNIVERSITY OF CALIFORNIA, LOS ANGELES ("UCLA"), a public nonprofit corporation; DOES 1 through 100, inclusive,<br><br>Defendants. | **CASE NO.: 24STCV11971**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF FOR:**<br><br>1) **VIOLATION OF THE BANE ACT [California Civil Code section 52.1]**<br>2) **VIOLATION OF THE UNRUH ACT [California Civil Code section 51]**<br>3) **VIOLATION OF THE RALPH ACT [California Civil Code section 51.7]**<br>4) **NEGLIGENCE**<br>5) **BREACH OF CONTRACT**<br>6) **ASSAULT**<br>7) **BATTERY**<br>8) **DECLARATORY RELIEF**<br>9) **INJUNCTIVE RELIEF** |

Plaintiffs LIANA NITKA, individually and on behalf of all others similarly situated, for their complaint against defendants REGENTS OF THE UNIVERSITY OF CALIFORNIA LOS ANGELES ("UCLA"), a public nonprofit corporation, and DOES 1 through 100, allege as follows:

1

## INTRODUCTION AND FACTS RELEVANT TO ALL CAUSES OF ACTION

1.      In the Spring of 2024 -- fearful of demonstrations sprouting up at other campuses, repercussions from "diversity and equity" leaders and the cutting off of university funding by the Hamas-supporting Biden Administration -- the Regents of the University of California, Los Angeles ("UCLA"), (collectively "Defendant University") invited, encouraged, aided, abetted, permitted, allowed, and subsequently appeased, enabled and negotiated with violent, sword and other weapon-wielding, Jew-hating Hamas-supporting campus terrorists antisemites (the "Campus Terrorists") who infiltrated and overtook its Los Angeles campus (the "Encampment"), setting up tents and occupying UCLA property under the Defendant University's watchful eyes.

2.      The Campus Terrorists' intent and the avowed purpose of the Encampment -- clear to most reasonable persons with common sense - was to create and sow division through acts of disruption, chaos and dissension on the Defendant University's campus.  Among other things, the Campus Terrorists sought to and in fact did disrupt classes, overtook University buildings and property, and most importantly, terrorized and victimized blameless Jewish Students and Faculty in a rein of terror under the hoax, guise, and "cover" of engaging in peaceful protests to support fictitious victims of the Israeli government's alleged "Palestinian Genocide."  The hoax was enabled by and perpetrated under the Defendant University's watchful eyes to such an extent that the Jewish Students and Faculty were so fearful for their lives and safety that they could not appear in the Defendant University's "town square" or anywhere else on campus without being verbally or physically assaulted by the Campus Terrorists, as well as the Campus Terrorists' student supporters lulled in by the false sense of security afforded to them by the Defendant University's "appeasement" policy of coddling the Campus Terrorists.  Jewish Students and Faculty were touched without their consent and spat on by the Campus Terrorists if they dared to cross into the Encampment.  Their fear was and still is genuine and palpable.  The fear was and is

Exhibit A – Page 7

made worse by the Defendant University's encouragement of the offensive conduct for weeks on end before finally taking steps of remediation.

3.     Alternatively, Jewish Students and Faculty were told by the Defendant University to work remotely from home, or remain in their offices or dorms for their "own safety."  Classes and commencement exercises were cancelled as the Defendant University continued to appease, coddle and negotiate with the Campus Terrorists. Jewish Students and Faculty, (including the Plaintiffs herein) were not allowed to attend classes as usual or give lectures or grade papers on site and could not walk safely to class or their offices on campus without being assaulted by the Campus Terrorists. ("Video shows anti-Israel protesters block Jewish student from getting to class; UCLA responds" https://www.foxnews.com/us/video-shows-anti-israel-protesters-block-jewish-student-getting-class-ucla-responds)

4.     Meanwhile, other Hamas-leaning and supporting faculty members hired by Defendant University to abide by DEI quotas continued to encourage students attending classes to participate in the chaos and disruption created by the Campus Terrorists by offering such students extra credit and better grades for participating, all with the knowledge and consent of the Defendant University.

5.     At all times herein mentioned, the Defendant University also knew or should have known that nearly half of the Campus Terrorists creating, managing and equipping the Encampment and causing the harm to Jewish Students and Faculty, creating the chaos and disruption and overtaking the Defendant University's buildings and property, were and still are in fact paid outside agitators rather than genuine students attending classes at the Defendant University who were and are instigated and funded by wealthy Democrat Party donors and radical Democrat Left Wing political action groups, including the Rockefeller Brothers Fund, Tides Center, Soros

Exhibit A – Page 8

Foundation and Popular Front for the Liberation of Palestine ("PFLP"), all done under the

Defendant University's watch.  (New York Post, various articles, April – May 2024).

6.      Far from "peaceful protests" and the "free speech" narrative promulgated by the

Democrat-party controlled media, Democrat congressmen and the Democrat Party itself, the

dangerous hate-filled, violent, and anti-Semitic speech included rote comments repeated ad

nauseum through megaphones that were so offensive to any Jew that it offends them to hear it,

eliciting memories of the Holocaust and October 7, 2023 -- slogans that include "Death to Israel"

(the only *Jewish* nation state in the world and a common refrain of Iranian fanatics and their

proxies), and not surprisingly, "Death to America."  Violent, hate-filled speech is not only

offensive and hurtful, it is dangerous and not protected by the First Amendment.

7.      The purpose and intent of the Campus Terrorists was not to peacefully protest but to

terrorize, intimidate, assault, and shame Jewish Students and Faculty members and interfere with

their right to freely travel to and from classes, offices, and otherwise accessing other facilities at

the Defendant University by threats, intimidation, and coercion.  All of this was done to harm

Jewish Students and Faculty members and create the equivalent of a hostile work environment,

with the knowledge, consent, and blessings of the Defendant University.

8.      The Campus Terrorists' purpose was encouraged, and aided and abetted by the Defendant

University.  The Defendant University invited Hamas-supporting groups to speak at UCLA

notwithstanding the rampant anti-Semitism spewed by such groups; encouraged Hamas-leaning

and -supporting faculty members to spew anti-Semitism and hatred of Jews and the State of

Israel, the only Jewish country in the world ("UCLA made med students attend lecture given by

Hamas supporter" https://nypost.com/2024/04/04/us-news/ucla-made-med-students-attend-

lecture-given-by-hamas-supporter/).

9.      Defendant University allowed the Campus Terrorists to continue their anti-Semitic campaign against the Defendant University's large Jewish student body and faculty unabated until [APRIL 24 FOR USC/MAY 5 FOR UCLA], when the Defendant University finally allowed the Los Angeles Police Department ("LAPD") to clear the Encampment and arrested [93 people for USC/over 200 for UCLA] people on suspicion of trespassing ("UCLA struggles to recover after 200 arrested, pro-Palestinian camp torn down" https://www.yahoo.com/news/ucla-declares-unlawful-assembly-poised-012857681.html). Plaintiffs are informed and believe that the Defendant University has refused to press charges and that none of the offending Campus Terrorists – arrested or otherwise – suffered any consequences, further enabling anti-Semitism to fester and spread throughout Defendant University's UCLA campus even after the removal of the Encampment.  For example, as of May 7, 2024, Hamas-supporting protests were continuing at the Defendant University's UCLA campus, with Palestinian flags and students or outside supporters sporting Palestinian flags and other terrorist garb, including green Hamas headbands and Keffiyahs [within sight of Ackerman Union] ("See aftermath of UCLA protest encampment in front of Royce Hall" https://www.youtube.com/watch?v=7zyuWu0dKGs).

10.     Despite Defendant University's call for LAPD's belated intervention, the offending Campus Terrorists were all released without bail to launch their attack again spurred on by outside agitators funded by the Rockefeller Center and other Jew-hating organizations, such as Tides and George Soros.

11.     The Defendant University, one of America's leading universities, has for decades been one of the worst centers of academic anti-Semitism in the United States. Since October 7, 2023, when Hamas terrorists invaded Israel and slaughtered, tortured, raped, burned, and mutilated 1200 people – including infants, children, and the elderly ·  anti-Semitism at Defendant University has been particularly severe and pervasive. Defendant University faculty and students

have openly lauded Hamas' October 7 atrocities as astounding, awesome, and great feats. Mobs of pro-Hamas students and faculty have marched by the hundreds to Defendant University's UCLA campus shouting antisemitic slogans, including calls for genocide, such as: Jews will not defeat us; there is only one solution, intifada revolution; we will honor our martyrs; resistance is justified; by any means necessary; from the river to the sea and in Arabic, from water to water Palace Dean will be Arab ("UCLA faculty protest at Hammer Museum gala, decrying treatment of pro-Palestinian students" https://www.yahoo.com/news/ucla-faculty-protest-hammer-museum-051834174.html).

12.    These mobs have occupied Defendant University's buildings, promoted violence against and restricted access to Jewish Students and Faculty members, caused cancellation of classes and commencement exercises, and harassed and assaulted Jewish Students and Faculty members on campus ("Rioters have accomplished nothing but interfere in students' finals and graduations" https://www.yahoo.com/news/letters-editor-world-much-evil-100019233.html) ('UCLA student slams university for 'encouraging violence,' turning campus into 'war zone': 'This is a disgrace'" https://www.foxnews.com/media/ucla-student-slams-university-encouraging-violence-turning-campus-war-zone-disgrace).

13.    Jewish Students and Faculty members have been spat at and faculty physically assaulted, threatened and targeted on campus and social media with epitaphs such as death to Jews. Defendant University has helped promulgate anti-Semitism in its courses and dismissed and intimidated students who object. What is most striking about all of this is Defendant University's abject failure and deliberate refusal to act to stop and deter this outrageous anti-Semitic conduct and discipline the students and faculty who perpetrated it. In fact, the Defendant University encouraged the conduct by its appeasement policy in the face of hate speech, dangerous

6

1  misconduct in other actions that it knew or should have known would create the worst and most

2  insidious hostile anti-Semitic work environment.

3  14.    The Defendant University's anti-Semitism manifests itself in a double standard invidious

4  to Jewish Students and Faculty members. Defendant University selectively enforces its policies to

5  avoid protecting Jewish Students and Faculty members from harassment, hires professors who

6  support anti-Jewish violence and spread anti-Semitic propaganda, and ignores Jewish Students

7  and Faculty pleas for protection. Defendant University permits students and faculty to advocate

8  without consequence, the murder of Jews and the destruction of Israel, the only Jewish country in

9  the world.

10  15.    Plaintiffs and other similarly situated Jewish Student and Faculty members, and numerous

11  others have explicitly and repeatedly warned Defendant University that its severe and pervasive

12  hostile anti-Semitic environment harms Jewish Students and Faculty members. In fact, Defendant

13  University has been aware of its anti-Semitism problem for years, but its response has been

14  utterly ineffective and clearly unreasonable in tolerating and even enabling anti-Semitism.

15  Defendant University has abjectly failed to enforce its policies and discipline those responsible

16  for turning Defendant University's UCLA campus into a severely hostile environment for its

17  Jewish Students and Faculty members, including the Individual Plaintiffs and other similarly

18  situated Jewish Student and Faculty members.  When, in clear violation of Defendant

19  University's policies, a mob of students overtook a campus building to further their anti-Semitic

20  agenda, Defendant University's response was not to remove and discipline them, but to enable

21  them to conceal their identities by supplying them with supplies and ammunition that the mob

22  subsequently used against LAPD ("Law enforcement sent to UCLA following attack on

23  encampment" https://ktla.com/news/california/law-enforcement-restores-order-at-ucla-following-

24  attack-on-encampment/) ("College Protests: Police On Campus at Columbia and UCLA"

7

https://www.bloomberg.com/news/articles/2024-05-01/ny-police-amass-near-columbia-as-adams-tells-protesters-to-leave).

16.     Defendant University's longtime practice when it comes to anti-Semitism—of refusing to enforce its own policies against discrimination and harassment—ensured that Hamas' October 7 terrorist attack would enormously intensify the anti-Jewish abuse on campus. Shockingly, numerous students and faculty members at Defendant University have openly endorsed Hamas and the horrific October 7 massacre of Israelis it perpetrated even though: Hamas, since its founding in 1987, has perpetrated numerous suicide bombings and other terrorist attacks against civilians; Hamas vows to kill and destroy Jews and Israel; the U.S. State Department has designated Hamas as a Foreign Terrorist Organization; and Hamas repeatedly proclaims its determination to repeat the October 7 atrocities until its genocidal aims are achieved. Many of Defendant University's students and faculty support Hamas and condemn Israel for defending itself against Hamas' terrorist attacks—but they are never heard to condemn, let alone rally against, Syria and Yemen, which have killed hundreds of thousands of Arab civilians, or Pakistan, which is currently expelling almost two million Afghan Muslims, or China, which has imprisoned its Muslims in reeducation camps, or countries including Somalia and Nigeria, where Christians are regularly murdered ("Campus chaos and anti-Israel rhetoric reveal stark failures of today's higher education" https://www.foxnews.com/lifestyle/campus-chaos-anti-israel-rhetoric-reveal-stark-failures-today-higher-education).

17.     Subjected to intense anti-Jewish vitriol, including from their own professors and Defendant University, the Individual Plaintiffs and other Jewish Students and Faculty members have been deprived of the ability and opportunity to fully participate in Defendant University's educational and other programs and have been placed at severe emotional and physical risk. Defendant University's double standard extends to depriving Jewish Students and Faculty

Exhibit A – Page 13

members equal time to express contrasting pro-Jewish views ("UCLA silent on approving anti-jihad campus speaker event amid campus protests" https://www.foxnews.com/media/ucla-silent-approving-anti-jihad-campus-speaker-event-amid-campus-protests).

18.     In short, Defendant University has permitted endemic antisemitism to exclude Jewish Students and Faculty members from full and equal participation in, and to deprive them of the full and equal benefits of, their educational experience at Defendant University, and has invidiously discriminated against them by, among other things, failing to protect them in the same way Defendant University has protected other groups all based on their race, ethnicity, religion, citizenship, and/or national origin. That Defendant University has done so for many years and continues to do so to this day further confirms that it has responded to anti-Semitism with at best deliberate indifference, that Defendant University cannot be left to its own devices, and that its response has been clearly ineffective and clearly unreasonable ("UCLA Chancellor Gene Block Criticized for Slow Action After Week of Chaos, Violence on Campus" https://www.wsj.com/us-news/ucla-chancellor-gene-block-criticism-protests-80c6ba2b) ("Fights break out, firecrackers thrown at pro-Palestine tents at UCLA" https://www.foxla.com/news/firecrackers-thrown-at-pro-palestine-encampment-at-ucla-multiple-brawls-break-out).

19.     As alleged herein, Defendant University's actions, including its deliberate indifference to, and indeed enabling of, anti-Semitism on its campus, constitute an egregious violation of California's Bane, Unruh, and Ralph Civil Rights Acts (California Civil Code sections 51, 52.1 and 51.7), not to mention create a dangerous condition of public property – the Defendant University's UCLA Campus itself, which proximately caused the assault and battery perpetrated by the mob on Plaintiffs

20.     Defendant University must now be compelled to implement institutional, far-reaching, and concrete remedial measures. Defendant University must also pay damages to Plaintiffs—who

Exhibit A – Page 14

have been robbed of their college and graduate school experience—to compensate them for the hostility they have been forced to endure as a consequence of Defendant University's unlawful conduct.

THE PARTIES

21.     Plaintiff LIANA NITKA ("Liana") is a Jewish – Israeli Senior University Student expecting to graduate in May 2024.

22.     Liana is suing herein individually and on behalf of all others similarly situated, as more particularly set forth in the "Class Action Allegations" set forth herein below.

23.     The following is Liana's brief personal diary of her own highly offensive and obnoxious individual anti-Semitic experiences at Defendant University:

Before October 7:

24.     The first incident that occurred was in October/November 2022 in my Anthro 4-Culture & Communication class where my TA stated, "Zionists are white supremacists." This was when we were learning about Israeli/Mizrahi music origins. Another incident was in February 2023 when my TA for my Cluster 60B class-America in the 60s, wore a "Free Palestine" shirt while teaching my section. In June 2023, I was in my lounge and noticed that someone drew a depiction of Hitler with a swastika on the lounge board. When I reported it to the housing department, they did nothing despite claiming to "investigate the particular incident."

After October 7:

25.     Professor Maylei Blackwell taught my fall quarter 2023 class: Chicana/o & Central American Studies M144 also under the titles of Gender Studies M144 and Labor Studies M144. This class is called "Women's Movement in Latin America" and, as the title suggests, was a course designed to teach about feminism in the Latin American region. During class on 11/13/23, Professor Blackwell added to her lecture an extra credit assignment to attend the meeting called "The Genocidal Assault on

10

Exhibit A – Page 15

Palestine." This is an issue for [Israeli] students like me who don't align with this position since she only offered extra credit to those who aligned with her position on the conflict and claimed that it "dealt with feminism." Another issue that arises is that she was blatantly attacking Zionist identity during class, even though the course subject does not align with the topic of the Israel-Palestine conflict.

26.     Towards the end of the winter quarter of 2024, 03/20/24, a large figure of a pig depicting Jews/Zionists was placed near the entrance of one of the Engineering buildings. USAC (UCLA student government) member and cultural affairs commissioner, Alicia Verdugo, who is known to use her social media platform to depict the blood libel stereotype of Jews and celebrate the massacre of October 7, placed this figure.

27.     During the spring quarter of 2024, 04/29/2024, my Labor Studies 101-Social Movements in Los Angeles TA, Anna Robinson-Sweet, posted an alternative opportunity for the class to join the Palestinian solidarity encampment that took place on the Royce quad area. This announcement promoted the illegal encampment activities that occurred during the week of the 29th and encouraged students to participate in an activity that promoted hate speech.

28.     On 05/02/2024, the Labor Studies Department, signed by Tobias Higbie and Chris Zepeda-Millan, sent an email that addressed the encampment situation. In the email they used language such as "peaceful protesters" and have claimed that the "sweep of the protest camp last night was, in our opinion, wholly unnecessary." Despite the illegality of the encampment and so-called "peaceful protesters," barring Jewish students from their classes implies bias on behalf of the Labor Studies department of UCLA in supporting illegal measures taken on campus to protest.

29.     Defendant University is a California state-owned University, public nonprofit corporation controlled by its Board of Regents, known as the Regents of the University of California.

30.     The true names and capacities of defendants named herein as "DOES 1 through

11

100, inclusive," are presently unknown to Plaintiffs. Plaintiffs will amend this Complaint to insert their true identities as soon as they are ascertained.

30. The true names and capacities of defendants named herein as "DOES 1 through 100" are presently unknown to Plaintiffs. Plaintiffs will amend this Complaint to insert their true identities as soon as they are ascertained.

31. Each defendant is the agent of his or her co-defendant and in doing the things complained of herein was acting withing the scope of such agency.

## CLASS ACTION ALLEGATIONS

32. This is a class action filed pursuant to the provisions of Code of Civil Procedure section 382, which provides in pertinent part:

> "[W]hen the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

33. Liana sues in her individual capacity as a Jewish Student who suffered harm as a result of Defendant University's conduct and as a representative on behalf of all other similarly situated Jewish University Students.

34. Plaintiffs will seek leave of Court to amend this Complaint to also include a subclass of Jewish Faculty members.

35. The class is ascertainable and sufficiently numerous. Plaintiff is informed and believes there are thousands of similarly situated Jewish Defendant University Students.

36. The Faculty Member subclass is also ascertainable and sufficiently numerous. There are over 7,000 full-time faculty members and a substantial number are similarly situated Jewish faculty members.

37. The Jewish Student and Faculty members share the same common interest of wanting to be safe and free from campus terrorism and anti-Semitism, and safe and free from other harm,

12

including assault and battery.  Plaintiffs also have common interests of freedom of travel, access, and passage.

38. Judicial economy and efficiency will be best served by treating and certifying this matter as a class action given the numerosity of Plaintiffs, common issues of fact and law involved, and related issues.

39. This case is not subject to removal to federal court under the Class Action Fairness Act because the State of California is a party to the action. Additionally, this matter presents a home state or local controversy involving California law and California and Los Angeles based students.

FIRST CAUSE OF ACTION FOR VIOLATION OF THE BANE CIVIL RIGHTS ACT (CALIFORNIA CIVIL CODE SECTIONS 52.1) AGAINST DEFENDANT UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

40. At all times herein mentioned, Defendant University had a duty to protect Plaintiffs from physical and psychological and emotional harm on Campus and to protect Plaintiffs from discrimination and anti-Semitism.  Plaintiffs also had the right to practice their Jewish faith and in so doing to be free while on campus from threats, intimidation, or coercion, .

41. The essence of a Bane Act claim (California Civil code section 52.1) is that the defendant, by improper means – threats, intimidation, or coercion – tried to or did prevent the plaintiff from doing something he or she had the right to do under the law (attend school discrimination-free and free from physical harm and terrorism) or to force the plaintiff to do something he or she was not required to do under the law (such as unlawfully force Plaintiffs to study remotely while terrorists ran amok at the Defendant University). *Venegas v. County of Los Angeles* (2004) 32 Cal. 4th 820, 841-43; *Austin B. v. Escondido Union Sch. Dist.* (2007) 149 Cal. App. 4th 860, 883.

42. In this case, Defendant University improperly permitted a dangerous condition to exist on the Defendant University's UCLA Campus by enabling, encouraging, permitting, negotiating with, and aiding and abetting the Campus Terrorists, as alleged herein above, endangering the life, liberty, and property and dignity of Jewish Students and Faculty members.

43. At all times herein mentioned, Defendant University interfered with Plaintiffs' civil rights by creating a dangerous condition on campus and encouraging and enabling the Campus Terrorists and permitting them to set up the Encampment to threaten Jewish Students and Faculty for the purpose of committing or threatening to commit violent acts against them.

44. At all times herein mentioned, Plaintiffs reasonably believed that if they exercised their Jewish faith or identified themselves as being Jewish or Israeli, the Campus Terrorists would commit violence against them or their property.

45. The Campus Terrorists, with the permission and consent of Defendant University, injured Plaintiffs and their property for the purpose of preventing them from exercising their right to freedom of religion, faith and race, or to retaliate against them for having exercised such rights.

46. Defendant University violated the Bane Act by preventing Plaintiffs from gaining free access to a safe environment that non-Jewish Students and Faculty have. The Defendant University created a hostile working environment as a result of the jew-hating vitriol spewed by the Campus Terrorists and allowed to continue on Campus.

47. Plaintiffs were harmed as a direct and proximate result of Defendant University's violation of the Bane Act.

48. Defendant University's conduct – and in particular its knowledge and consent of the Campus Terrorists' avowed purpose and its decision to enable, encourage, aid, abet, negotiate with and

14

appease the Campus Terrorists and allow the Encampment to continue and the antisemitism to fester and grow for weeks on end -- was a substantial factor in bringing about Plaintiffs' harm.

## SECOND CAUSE OF ACTION FOR VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (CALIFORNIA CIVIL CODE SECTIONS 51, 52) AGAINST DEFENDANT UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

49. Plaintiffs reincorporate paragraphs 1 through 48 of this Complaint as though fully set forth at length herein.

50. At all times herein mentioned, the Defendant University denied Plaintiffs equal accommodations, advantages, facilities, privileges and services that other similarly situated University Students and Faculty enjoy simply because they are Jewish or Israeli.

51. Defendant University's conduct, as alleged herein, denied, aided and abetted, incited a denial of or made a distinction that denied full and equal accommodations, advantages, facilities, privileges and services to Jewish Students and Faculty members.

52. A motivating reason for Defendant University's conduct was its perception and the perception of the Campus Terrorists that Plaintiffs are Jewish.

53. Plaintiffs' Jewish faith and race and Israeli origin was a motivating reason for the conduct of the Campus Terrorists and Encampment that Defendant University allowed and permitted to continue for weeks on end.

54. Plaintiffs were harmed as a result of Defendant University's conduct.

55. Defendant University's conduct was a substantial factor in causing Plaintiffs' harm.

Exhibit A – Page 20

THIRD CAUSE OF ACTION FOR VIOLATION OF THE RALPH CIVIL RIGHTS ACT (CALIFORNIA CIVIL CODE SECTION 51.7) AGAINST DEFENDANT UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

56. Plaintiffs reincorporate paragraphs 49 through 55 of this Complaint as though fully set forth at length herein.

57. At all times herein mentioned, the Campus Terrorists committed acts of violence or threatened to commit acts of violence against Plaintiffs herein because of their religion and race.

58. Defendant University had actual knowledge of the violence and threats but allowed and permitted the Campus Terrorists to continue to threaten violence and commit acts of violence against Plaintiffs for weeks on end before standing up to them, encouraging, appeasing and negotiating with the Campus Terrorists and allowing the Encampment to remain on Campus in plain view of the Jewish Students and Faculty members.

59. The motivating and avowed purpose of the Campus Terrorists and Encampment was to spew antisemitism epitaphs at Jewish Students and Faculty and commit violence or make threats of violence to Jewish Students and Faculty.

60. Plaintiffs were harmed as a result of Defendant University's conduct and encouragement of the discriminatory practices and threats of violence.

61. Defendant University's conduct was a substantial factor in bringing about Plaintiffs' harm.

FOURTH CAUSE OF ACTION FOR NEGLIGENCE AGAINST DEFENDANT UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

62. Plaintiffs reincorporate paragraphs 56 through 61 of this Complaint as though fully set forth at length herein.

Exhibit A – Page 21

63. At all times herein mentioned, Defendant University had a duty of care to provide a safe and sane environment and workspace for Jewish Students and Faculty members.

64. Beginning in or about Spring of 2024 and continuing to the present time, Defendant University created, permitted, allowed, enabled and condoned a dangerous condition to occur on University property, as more particularly alleged herein above.

65. Defendant University breached its duty of care to Jewish Students and Faculty members by allowing the Campus Terrorists to continue on with their reign of terror for weeks on end before capitulating on or about May 5, 2024, when they called LAPD in to remove the Encampment.

66. As a direct and proximate result of Defendant University's negligence and breach of its duty of care to provide a safe and sane environment and workspace for Jewish Students and Faculty members, Plaintiffs were harmed.

67. Defendant University's negligence was a substantial factor in bringing about the harm sustained by Plaintiffs.

FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DEFENDANT UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

68. Plaintiffs reincorporate paragraphs 62 through 67 of this Complaint as though fully set forth at length herein.

69. Plaintiffs paid over $200,000 to attend four years at Defendant University in consideration for a reasonable expectation that they would be able to study in a safe and sane environment and workplace at the Defendant University.

70. At all times herein mentioned, Defendant University had a contractual duty to provide a safe and sane environment and workspace for Jewish Students and Faculty members.

17

71. Beginning in or about Spring of 2024 and continuing to the present time, Defendant University breached its contractual duty to Plaintiffs by creating, permitting, allowing, enabling and condoning a dangerous condition to occur on University property, as more particularly alleged herein above.

72. At all times herein mentioned, Plaintiffs performed all conditions they were required to perform with respect to their contract with Defendant University and paid the Defendant University the tuition required.

73. As a direct and proximate result of Defendant University's breach of its contractual obligations to Plaintiffs, Plaintiffs have been harmed.

### SIXTH CAUSE OF ACTION FOR ASSAULT AGAINST DEFENDANT UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

74. Plaintiffs reincorporate paragraphs 62 through 73 of this Complaint as though fully set forth at length herein.

75. At all times herein mentioned, the Campus Terrorists' conduct and the actions permitted and encouraged by Defendant University, as alleged herein, intended to cause harmful and offensive contact with Plaintiffs.

76. At all times herein mentioned, Plaintiffs reasonably believed that the Campus Terrorists were about to touch them in a harmful or offensive manner and in fact threatened to touch them in a harmful manner, screaming slogans like "Death to Israel," "Death to Jews," Death to America." The Defendant University encouraged the Campus Terrorists to continue spewing hate-filled threats at Jewish Students and Faculty members by allowing the Encampment and takeover of University property.

77. At all times herein mentioned, it reasonably appeared to Plaintiffs that the Campus Terrorists were about to carry out their threats.

18

78. Plaintiffs did not consent to the conduct of the Campus Terrorists or the Encampment.

79. As a direct result of the conduct of Defendant University, Plaintiffs were harmed.

80. Defendant University's conduct was a substantial factor in causing Plaintiffs' harm.

SEVENTH CAUSE OF ACTION FOR BATTERY AGAINST DEFENDANT

UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

81. Plaintiffs reincorporate paragraphs 74 through 80 of this Complaint as though fully set forth
at length herein.

82. At various times from April 2024 through May 5, 2024, the Campus Terrorists touched or
caused Plaintiffs to be touched with the intent to harm or offend them.

83. Plaintiffs never consented to the harmful and offensive touching.

84. The harmful and offensive touching was allowed, permitted, encouraged and made possible
by the Defendant University's conduct, as alleged herein above.

85. Plaintiffs were harmed as a result of the harmful and offensive touching.

86. A reasonable person in Plaintiffs' situation would have been offended by the touching by the
Campus Terrorists.

EIGHTH CAUSE OF ACTION FOR DECLARATORY RELIEF AGAINST DEFENDANT

UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

87. Plaintiffs reincorporate paragraphs 81 through 86 of this Complaint as though fully set forth
at length herein.

88. An actual controversy has arisen and now exists between Plaintiffs and Defendant University
in that Plaintiffs contend that Defendant University has created a dangerous condition of
public property and further contends that Defendant University encourages, permits, aids,
abets, appeases and condones rampant unlawful antisemitism and discrimination to occur on

its campus against Jewish Students and Faculty members, whereas Defendant denies such contentions.

89. A judicial declaration is necessary and appropriate at this time so that the parties can ascertain their respective rights and liabilities.

NINTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF AGAINST DEFENDANT

UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

90. Plaintiffs reincorporate paragraphs 87 through 90 of this Complaint as though fully set forth at length herein.

91. The statutory scheme contemplated by Civil Code sections 51 et seq. gives the Court the power to fashion an injunction to remedy future discriminatory practices as necessary.

92. Plaintiffs herein seek a temporary restraining order, preliminary and permanent injunction:

- to enjoin and prevent Defendant University from continuing to create and sponsor a dangerous condition of public property;

- to enjoin and prevent Defendant University from continuing to support antisemitic and discriminatory conduct on campus, as well as Defendant University's continuing encouragement and rampant support for the Campus Terrorists, Hamas and other Jew-hating organizations and groups; and

- to enjoin and prevent outside funding by antisemitic groups and organizations who require the Defendant University to march to beat of an antisemitic drummer as opposed to the laws forbidding antisemitism and discrimination.

WHEREFORE, Plaintiffs pray for judgment as follows:

**On the First, Second, Third, Fourth, Fifth and Seventh Causes of Action:**

1. For damages in an amount in excess of the jurisdictional limits of this Court to be shown at the time of trial in accordance with proof;

20

Exhibit A – Page 25

**On the Eighth Cause of Action:**

2. For a judicial declaration setting forth the respective rights and liabilities of the parties;

**On the First, Second, Third and Ninth Causes of Action:**

1. For a temporary restraining order, preliminary and permanent injunction:

- to enjoin and prevent Defendant University from continuing to create and sponsor a dangerous condition of public property;

- to enjoin and prevent Defendant University from continuing to support antisemitic and discriminatory conduct on campus, as well as Defendant University's continuing encouragement and rampant support for the Campus Terrorists, Hamas and other Jew-hating organizations and groups; and

- to enjoin and prevent outside funding by antisemitic groups and organizations who require the Defendant University to march to beat of an antisemitic drummer as opposed to the laws forbidding antisemitism and discrimination.

**On All Causes of Action:**

1. For reasonable attorney's fees;

2. For the costs of suit incurred; and

3. For such other and further relief as the Court deems just and proper.

DATED: May 9, 2024                    LAW OFFICES OF MICHAEL E. REZNICK
                                      A Professional Corporation


                                      By:_____
                                         Michael E. Reznick
                                      Attorney for Plaintiffs LIANA NITKA, Individually
                                      And on Behalf of All Others Similarly Situated

21

# PROOF OF SERVICE

I, Diane Sanchez, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 South Flower Street, Fiftieth Floor, Los Angeles, CA 90071. On July 15, 2024, I served a copy of the within document(s):

**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.

☒    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Attorney for Plaintiffs:

Michael E. Reznick, Esq.
LAW OFFICES OF MICHAEL E. REZNICK
283 Ocho Rios Way
Oak Park, CA 91377-5540
Email: reznagoura@aol.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 15, 2024, at Los Angeles, California.

_____
Diane Sanchez