Bryan Christopher Castaneda, Esq. State Bar No. 275095
bryanchristophercastenada@gmail.com
LAW OFFICES OF MICHAEL E. REZNICK
A Professional Corporation
283 Ocho Rios Way
Oak Park, California 91377-5540
Tel: (818) 437-5630 - reznagoura@aol.com

Attorney for Plaintiffs DOE JEWISH USC FACULTY MEMBER 2004 and DOE JEWISH USC STUDENT 1987, Individually And On Behalf Of All Others Similarly Situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE JEWISH USC FACULTY MEMBER 2004, *et al.*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, *et al.*,<br><br>　　　　Defendants. | Case No. 2:24-cv-05712-FLA (SSCx)<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF COURT'S ORDER TO SHOW CAUSE RE REMANDING CASE BACK TO THE LOS ANGELES COUNTY SUPERIOR COURT FOR LACK OF SUBJECT MATTER JURISDICTION; DECLARATION OF MICHAEL E. REZNICK IN SUPPORT THEREOF** |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs herein, individually and on behalf of all others similarly situated, hereby file this memorandum in support of the Court's Order to Show Cause re remanding this case back to the Los Angeles County Superior Court for lack of subject matter jurisdiction under the Class Action Fairness Act ("CAFA") or under any other federal statutory scheme.

I. **THE UNIVERSITY OF SOUTHERN CALIFORNIA ("USC" OR "DEFENDANT") CANNOT ESTABLISH THAT THE "MATTER IN CONTROVERSY EXCEEDS THE SUM OF $5,000,000, EXCLUSIVE OF INTEREST AND COSTS"**

The First Amended Complaint ("FAC") in this case does not allege an amount in controversy but rather alleges that the Plaintiffs merely seek "damages in an amount in excess of the jurisdictional limits of this [Los Angeles County Superior] Court." (FAC at 26:22-23).

"Where the complaint does not specify the amount of damages sought, the removing defendant must provide evidence that it is 'more likely than not' that the amount in controversy" satisfies the federal diversity jurisdictional amount requirement." ["$5 million" under CAFA] (See Order to Show Cause ("OSC") at 1:28). *Abrego v. Dow Chem Co.*, 443 F. 3d 676, 683 (9th Cir. 2006).

Since it appears evident from the prayer and four corners of the FAC that the Jewish Plaintiffs who allege they were and are "harmed" are not seeking "damages" in excess of $5 million but rather equitable relief "to enjoin and prevent Defendant University from continuing to create and sponsor a dangerous condition on public property . . . from continuing encouragement and rampant support for the Campus Terrorists, Hamas and other Jew-hating organizations and groups . . . and . . . to enjoin and prevent outside funding by antisemitic groups and organizations who require the Defendant University to march to the beat of an antisemitic drummer as opposed to the laws forbidding antidiscrimination" (FAC at 26:8-19), Defendant asserts in its Notice of Removal (the "Notice") that "it is clear here, "'the potential liability exceeds $5 million' and the amount in controversy requirement under CAFA is satisfied" based upon identifying USC's alleged cost of compliance with the remedies sought by Plaintiffs. (Notice at 6:3-18).

Defendant's assertion that the amount in controversy or "potential liability" in this case

"exceeds $5 million'" is entirely speculative and mere conjecture. Plaintiffs submit that it is just as likely and even more likely than not that the actual cost of correcting USC's behavior would be less than the cost of a postage stamp or phone call. Indeed, all that USC needs to do to provide Plaintiffs with the remedies sought is to stop sponsoring terrorism, enabling and encouraging off campus agitators to set up dangerous encampments in the public square or otherwise endanger and harm Jewish Students and Faculty and change its current hiring practices.

Since USC cannot establish by a preponderance of the evidence that the amount in controversy alleged in the FAC or otherwise exceeds $5 million exclusive of interest and costs, the Court should remand the case back to the Superior Court on this ground alone.

## II.    THE TWO PROPOSED CLASSES DO NOT EXCEED 100 MEMBERS

Contrary to the assertions of USC, the two proposed classes do not exceed 100 members to meet the CAFA threshold jurisdictional requirement.

Despite Defendant's attempt to reframe the class definition, the two proposed subclasses in fact are not comprised of "all" Jewish Students and "all" Jewish Faculty members who attend or work for USC. Rather, the proposed subclasses are comprised of similarly situated Jewish Students and Faculty Professors *"who suffered damages and harm as a result of Defendant University's conduct"* (FAC at 17:21-2618:1-2) (emphasis added).

As more particularly set forth in the attached Declaration of lead attorney Michael E. Reznick ("Reznick Declaration"), the potential subclasses are far more likely to contain fewer than 100 class members in light of the substantial difficulty he had in attracting any Jewish Students or Faculty to participate in the case as potential class members in the first place because of apathy or lack of interest, fear of retribution, reprisal or a hostile work environment, sympathy or actual support for the outside agitators and/or feelings that any damage and harm sustained was trivial or transitory. (Reznick Decl., para. 2).

### III. DEFENDANT CANNOT ESTABLISH MINIMAL DIVERSITY

For purposes of diversity jurisdiction, one is considered a citizen of the state in which he is domiciled. *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). In this context, citizenship and domicile are synonymous, *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555 (5th Cir. 1985). But domicile and residence are not necessarily synonymous, *Mississippi Choctaw v. Holyfield*, 490 U.S. 30, 109 S. Ct. 1597, 104 L. Ed. 2d 29, 46 (1989), for domicile is the combination of physical presence in a place (residence) and a certain state of mind, that is, the intent to remain there. *Id.* There is no minimum period of residence required. *Morris v. Gilmer*, 129 U.S. 315, 328 (1889). The requisite intention is to remain at that place for an unlimited or indefinite period of time. *Freeman*, 754 F.2d at 555; *Crowley*, 710 F.2d at 678. Residence and intent are inextricable elements of domicile. If unaccompanied by the necessary intent, residence alone is not determinative of citizenship. *Gilbert v. David*, 235 U.S. 561, 569-70, 59 L. Ed. 360, 35 S. Ct. 164 (1914). For the same reason, the "mere mental fixing of citizenship is not sufficient." *Walden v. Broce Construction Company*, 357 F.2d 242, 245 (10th Cir. 1966).

The determination of diversity jurisdiction is generally made from the Complaint. *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972). When the allegations are challenged, the party asserting diversity jurisdiction has the burden of proving them by a preponderance of the evidence. *Mid-Continent Pipe Line Co. v. Whiteley*, 116 F.2d 871, 873 (10th Cir. 1941); *see McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 80 L. Ed. 1135, 56 S. Ct. 780 (1936). This raises mixed question of law and fact for the trial court to decide. *Crowley*, 710 F.2d at 678. In determining diversity jurisdiction, domicile is assessed as of the date the complaint is filed. *Johnston v. Cordell National Bank*, 421 F.2d 1310, 1311 (10th Cir. 1970). If established at this critical time, it is immaterial that diversity is lost because of a subsequent change in domicile. *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 1 L. Ed. 2d 1205, 77 S.

Ct. 1112 (1957).

When the plaintiff has recently changed residence before filing suit, the courts have applied some additional rules in their determination. The question of a new domicile is determined by the same two factors of residence and intent to remain indefinitely, but the intent need not be to remain permanently. *See Crowley*, 710 F.2d at 678. It is enough to have a "floating intention" to stay indefinitely and also have the general desire to return to the former domicile at some undetermined point of time. *Crowley*, 710 F.2d at 678. It is not sufficient to have the existing intention to return upon the happening of a reasonably foreseeable event. *Gates v. Commissioner of Internal Revenue*, 199 F.2d 291, 294 (10th Cir. 1952). Consequently, it is often presumed a student attending an out-of-state university intends to return to his or her home state upon completion of studies. *Bradley v. Zissimos*, 721 F. Supp. 738, 939 n. 3 (E.D.Pa. 1989); *Lyons v. Salve Regina College*, 422 F. Supp. 1354, 1357 (D.R.I. 1976), *rev'd on other grounds*, 565 F.2d 200 (1st Cir. 1977), *cert. denied*, 435 U.S. 971, 56 L. Ed. 2d 62, 98 S. Ct. 1611 (1978). "It is in the light of this presumption that courts evaluate evidence which might, standing alone, indicate a contrary intention." *Bradley*, 721 F. Supp. at 739 n. 3 (citations omitted). Under the circumstances of a recent change in residence, courts have often looked to objective indicia of intent, such as the place of employment, driver's license, automobile registration, bank accounts, tax payments, location of personal property, and voting practices. *Lew v. Moss*, 797 F.2d at 750; *Abbott v. United Venture Capital, Inc.*, 718 F. Supp. 823, 826 (D.Nev. 1988). Statements of intent are accorded minimal weight relative to these objective factors. *Freeman v. Northwest Acceptance Corp.*, 754 F.2d at 556.

In this case, the DOE Jewish Faculty Professor has been "employed by and at USC" and has also been a resident and "citizen" of the State of California since the date of employment. (FAC at 10:15, Reznick Decl., para. 4). DOE Jewish Student is a sophomore who has attended

USC, a California university and college, residing off campus for the past two years. DOE Jewish Student also works in California, pays California taxes, votes in California pursuant to DOE Jewish Student's California voter registration requirements, was issued and holds a California drivers' license and auto registration and intends to continue to reside in California upon graduation from USC. (Reznick Decl., para. 4).

On the other hand, Defendant's scant "proof" of minimal diversity is simply a Registrar's declaration in its Notice stating that some Jewish USC students came from states other than California or from foreign countries.

Assuming arguendo the Registrar's declaration is true, it is established law that determining where a particular student came from is but one factor the Court must consider in determining whether USC has sustained its burden to establish "minimal diversity." USC must establish by a preponderance of the evidence diverse citizenship by objective indices of intent, such as place of employment, driver's license, automobile registration, bank accounts, tax payments, location of personal property and voting practices. *Lew, supra*, 797 F. 2d at 750.

Without first conducting "jurisdictional discovery" to determine the intent of other potential individual future class members, USC cannot establish "minimal diversity" in this case and its assertion that at least "one" class member is of diverse citizenship because he or she came from another state or country is entirely speculative.

**IV      THERE IS NO OTHER BASIS FOR FEDERAL JURISDICTION REQUIRING MANDATORY ABSTENTION OF THIS HOME STATE AND LOCAL CONTROVERSY**

This case is a "home state" or "local controversy" involving California university students and professors who allege that Defendant - a California university – violated California anti-discrimination laws by enabling and encouraging terrorists to run rampant on its campus

endangering the lives and safety of those Jewish Professors and Jewish Students who were actually harmed or damaged by the antisemitism. All of the statutory claims arise under California law. Moreover, Plaintiffs herein seek California remedies provided under California's statutory scheme for violations of the California Bane, Ralph and Unruh Acts. There is no jurisdiction under CAFA nor any other federal statute.

In addition, Defendant cannot establish "minimal diversity" under CAFA and it is more likely than not that at least two-thirds or more of the class members in fact are "citizens" of the State of California – the same citizenship as USC.

In cases removed from state court, a federal court *cannot* exercise jurisdiction over a "minimal diversity" class action if either:

- Two thirds or more of the class members (aggregating all proposed plaintiff classes) are citizens of the state in which the action was originally filed; or
- More than two thirds of the class members and at least one defendant are "citizens" of that state, and
- The principal injuries resulting from the alleged wrongdoing occurred there;
- "significant relief" is being sought from the local defendant whose alleged conduct forms a "significant basis" for plaintiffs' claims; and
- No other class action has been filed within the past three years.

(28 USC section 1332(d)(4); see *Hart v. FedEx Ground Package System, Inc.* (7th Cir. 2006) 457 F. 3d 675, 680; *Benko v. Quality Loan Service Corp.* (9th Cir. 2015) 789 F. 3d 1111, 1118-1119).

The "home state" exception to removal jurisdiction is based on comity; i.e., state courts must be allowed to handle class actions in which the transactions and most of the parties are local.

In this case, there is no reason for an exception to mandatory abstention.

IV     **CONCLUSION**

For each and all of the foregoing reasons and for the reasons stated in the OSC, the Court should remand this case to the Los Angeles County Superior Court forthwith.

DATED: July 26, 2024          LAW OFFICES OF MICHAEL E. REZNICK
A Professional Corporation


By: */s/Bryan Christopher Castaneda*
       Bryan Christopher Castaneda

Attorney for Plaintiffs DOE JEWISH USC FACULTY MEMBER 2004 and DOE JEWISH USC STUDENT 1987, Individually And On Behalf Of All Others Similarly Situated

## DECLARATION OF MICHAEL E. REZNICK

I, MICHAEL E. REZNICK, declare as follows:

1. I am an attorney licensed to practice law in the State of California. Except as otherwise stated I have personal knowledge of each of the facts stated herein and could and would competently testify thereto.

2. I prepared the First Amended Complaint ("FAC") in this action. I began my investigation and advocacy into stopping antisemitism on California college campuses the day after the massacre that occurred in Israel on October 7, 2023. Despite my own interest and public outcry, I was surprised to learn that no other interested parties came forward or contacted me with respect to filing potential claims for more than six months, until I met with the Jewish Professor identified in the FAC as "DOE 2004" after the events alleged in the FAC occurred in or about April 2024. I was not contacted by a single Jewish USC student about filing a claim against USC until June 2024, after the initial Complaint was filed. Accordingly, I amended the initial Complaint to add the USC Jewish Student identified in the FAC as "DOE 1987." While a certain number of potential class members (both Jewish students and Jewish faculty members) have informed me that they did not want to participate out of fear of reprisal or retribution, the vast majority of Jewish USC Students who have declined to participate in the lawsuit to date have done so out of apathy. Still other potential class members have declined to assert a claim because they support the protests or receive extra credit from professors who do support the protests. Finally, several potential class members did not want to participate because they believed that the harm or damage was trivial or transitory. Thus, despite USC's assertion of the existence of a large Jewish student body attending USC, the number of ready, willing and able potential class members who felt that they were "harmed and damaged" by the alleged antisemitism are more likely less than 20- 25.

9

3. DOE Jewish Faculty Member 2004 informed me before filing the Complaint that he or she is a California resident and has been a "citizen" of the State of California for the entire time of the Professor's employment at USC (over 12 years). DOE Jewish Student 1987 informed me that he or she is a California resident and intends to remain in California after graduation. DOE Jewish Student 1987 also informed me that he or she is employed in California, holds a California driver's license and automobile registration, maintains bank accounts at a California bank, pays California taxes and votes in California pursuant to the voter registration requirements. Jewish Student 1987 also owns personal property in California.

4. The FAC seeks *California* remedies and in particular equitable relief for Defendant's violation of the *California* Civil Code sections 51.00 et seq. under the California Bane, Ralph and Unruh Acts, not to mention California Civil Code claims for negligence, assault and battery. While statutory damages are available to prevailing parties – for example, $4,000 per day under the Unruh Act – the four corners of the FAC and prayer confirm that Plaintiffs in fact are seeking a change in USC's conduct – namely, to stop encouraging and enabling antisemitism on campus and terrorists to set up encampments in the public square, as opposed to "damages." The "damages and harm" can only be remedied if USC stops what it previously did that gave rise to the offensive conduct. Contrary to USC's assertion that its cost to comply with the "far reaching remedies" exceeds the CAFA $5 million threshold, the fact of the matter is that it is more likely that the cost of compliance will be less than the cost of a postage stamp or email if USC stops the behavior and conduct complained of or enters into a consent agreement to change what it has previously done that offends Jewish students and faculty.

I declare under penalty of perjury under the laws of the State of California and the

///

///

1 | United States of America that the foregoing is true and correct.

2 | Executed on July 24, 2024 at Oak Park, California.

/s/ Michael E. Reznick<br>
Michael E. Reznick