Rasha Gerges Shields (Cal. Bar No. 218248)
rgergesshields@jonesday.com
Tyler J. Scott (Cal. Bar No. 341039)
tscott@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: +1.213.243.2719
Facsimile: +1.213.243.2539

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE JEWISH USC FACULTY MEMBER 2004 and DOE JEWISH USC STUDENT 1987, Individually And On Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>Trustees of THE UNIVERSITY OF SOUTHERN CALIFORNIA, a private public benefit corporation; and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | Case No. 2:24-cv-05712 FLA (SSC)<br><br>**DEFENDANT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE WHY ACTION SHOULD NOT BE REMANDED FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>**(AMOUNT IN CONTROVERSY UNDER CAFA)** |

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant University of Southern California ("USC" or the "University") submits this response to the Court's Order to Show Cause ("OSC") "why this action should not be remanded for lack of subject matter jurisdiction because the amount in controversy does not exceed the jurisdictional threshold" of $5 million required by the Class Action Fairness Act ("CAFA"). Dkt. 9 at 3.

Plaintiffs—a Jewish faculty member and a Jewish graduate student—sued USC in connection with recent campus protests concerning the Israel-Hamas war. *See* Dkt. 1, Ex. A-7 (First Amended Complaint or "FAC"). The Court should reject plaintiffs' claims for the reasons stated in USC's motion to dismiss. Dkt. 10. **USC denies that it has any liability in this matter whatsoever**. That said, the Court must assume the merits of plaintiffs' claims when evaluating its jurisdiction under CAFA, including when calculating the amount-in-controversy ("AIC"). *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012).[1] The AIC "does not mean likely or probable liability; rather, it refers to *possible* liability." *Jauregui v. Roadrunner Trans. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (quotation marks omitted). Applying these required assumptions to plaintiffs' allegations, the AIC easily exceeds $5 million.

*First*, plaintiffs' possible civil rights damages satisfy the AIC requirement standing alone. With treble damages in play, Los Angeles juries have awarded—and the California Court of Appeal has upheld—damages awards as high as $180,000 per individual plaintiff for emotional distress arising from antisemitic discriminatory conduct. *See Paletz v. Adaya*, No. B247184, 2014 WL 7402324, at *3 (Cal. Ct. App. 2014) (upholding Unruh Act damages arising from antisemitic discrimination at a hotel pool). With a minimum class of 100—and in all likelihood thousands of Jewish students at USC—the AIC is easily satisfied by possible civil rights damages for the

---

[1] Post-removal dismissal for failure to state a claim, as USC seeks (*see* Dkt. 10), does not divest the Court of subject matter jurisdiction. *See, e.g.*, *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 382 (D.N.J. 2021).

students alone. Faculty claims and statutory attorney's fees push the AIC even higher.

*Next*, the putative student class seeks contract damages because they were allegedly "robbed of their college and graduate school experience" which cost "$200,000" each. FAC ¶¶ 20, 90. Of course, USC denies this. But if plaintiffs were—as they claim—*entirely* deprived of their college experience despite paying tuition, a bare-minimum class of 100 Jewish students results in a potential contract damages exposure of $20 million on top of the possible civil rights damages. To be more conservative, if only the spring semester tuition is considered for the minimum class of 100, there is at least $3.4 million at stake just for breach of contract.

*Third*, plaintiffs seek sweeping forms of injunctive relief, including enjoining the University from accepting "outside funding" from certain named and unnamed organizations. *Id.* ¶ 113; *see also id.* ¶¶ 4, 10. The cost of complying with this request alone would be substantial. USC is a non-profit, public benefit institution that relies extensively on grants and the generosity of its donors. Precluding USC from applying for grants or receiving donations from certain named and unnamed organizations would likely cause USC to lose millions of dollars in funding. In particular, recent donations from organizations related to those expressly named by plaintiffs in the FAC exceed $2.8 million. Many of these organizations give donations on a recurring basis. It is reasonable (and conservative) to value the University's cost to comply with plaintiffs' requested donation ban at a minimum of $2.8 million. It could be much more if plaintiffs' ban includes donations by other groups that plaintiffs consider to be "wealthy Democrat Party donors." *Id.* ¶ 4.

While this case should be dismissed on the merits, it easily meets CAFA's $5 million floor based on plaintiffs' allegations, even with conservative assumptions about the size of the class, the damages plaintiffs seek, and the cost of plaintiffs' requested injunctions. The Court should not remand.

**RELEVANT BACKGROUND**

Plaintiffs are "a Jewish Professor employed by and at USC" (the "Faculty

Plaintiff") and a Jewish "hybrid Physical Therapy student." *Id*. ¶¶ 21, 32, 35.

Plaintiffs allege that in the spring of 2024, USC, "fearful of demonstrations" around the country, and losing funding from "the Hamas-supporting Biden Administration," "allowed" "Jew-hating Hamas-supporting campus terrorist[] antisemites" to build an on-campus "[e]ncampment." *Id*. ¶ 1. According to plaintiffs, many of these "Campus Terrorists" were "paid outside agitators" who were "instigated and funded" by, among other groups, the "Soros Foundation," "Rockefeller Brothers Fund," and the "Tides Center." *Id*. ¶ 4. Plaintiffs assert that these "Campus Terrorists" perpetrated a "rei[g]n of terror" (including "paint[ing] swastikas") that lasted "for weeks on end" placing Jewish students and faculty "at severe emotional and physical risk." *Id*. ¶¶ 2, 6, 17.

Plaintiffs claim they were targets of intentional discrimination and intentional torts by (or at least aided by) the University. *See id*. ¶¶ 63–82 (state civil rights claims under Bane, Unruh and Ralph Acts), 95–107 (intentional tort claims). Plaintiffs also claim that they were harmed by USC's negligence (*id*. ¶¶ 83–88), and that the University breached a contract with its students, who were "robbed of their college and graduate school experience" which cost them "over $200,000" each (*id*. ¶¶ 20, 89–94). All of this, plaintiffs say, caused them to experience severe emotional distress, fear, and anxiety. *Id*. ¶¶ 2, 5-6, 17, 30, 54. Plaintiffs seek "damages in an amount in excess of the jurisdictional limits" of the state court "to be shown at the time of trial," as well as attorney's fees. *Id*. p.26; *see also id*. ¶ 20. Plaintiffs also seek supposedly "institutional, far-reaching, and concrete" change at USC imposed through court-ordered injunctive relief, including barring the University from accepting "outside funding" by certain allegedly antisemitic donors. *Id*. ¶¶ 20, 113.

Plaintiffs purport to bring a class action—asserting claims on their own behalf as well as on behalf of *all* "Jewish Professors and Faculty members and Jewish Students." *E.g., id*. ¶ 63; *but see* Dkt. 10, at 19–21 (explaining why the class allegations should be stricken). Plaintiffs allege that USC has "over 7,000 full-time .

3

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE (AMOUNT IN CONTROVERSY UNDER CAFA)

. . faculty members" and that "a substantial number" are "Jewish faculty members." FAC ¶ 62. Plaintiffs' complaint does not specify the number of Jewish USC students.

On July 8, 2024, USC filed a Notice of Removal ("NR") pursuant to CAFA, supported by a declaration from its University Registrar, Frank Chang ("Chang Decl."). Dkt. 1 (NR); Dkt. 1-Ex. B (Chang Decl.); *see* 28 U.S.C. § 1332(d)(2). The Chang Declaration establishes that over 100 individual students enrolled in Spring 2024 had self-reported their religious affiliation as Jewish to the University. Chang Decl. ¶¶ 3–4; NR ¶ 14. This includes students from other states (*i.e.*, New York), and citizens of foreign countries (*i.e.*, Guatemala). Chang Decl. ¶ 4.

The Court's OSC is a "two-pronged inquiry into the facial and factual sufficiency of Defendant's demonstration of jurisdiction." OSC at 3. USC meets both tests, and a preponderance of the evidence shows that this case meets CAFA's requirements. *See Enomoto v. Seimens Industry, Inc.*, No. 22-56062, 2023 WL 8908799, at *2 (9th Cir. 2023) (question of whether challenge was facial or factual did not matter because defendant "met its burden either way").

## ARGUMENT

### I. LEGAL STANDARD

CAFA vests original jurisdiction in district courts over a putative class action when (1) the AIC exceeds $5 million, (2) minimal diversity is met with at least one putative class member, and (3) the putative class exceeds 100 members. 28 U.S.C. § 1332(d)(2), (5). The removing party bears the burden of proving these elements, *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682–83 (9th Cir. 2006), which "are the full extent of what subject matter jurisdiction demands," *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 n.1 (9th Cir. 2013). Once shown, the burden shifts to a party who seeks remand to demonstrate that a CAFA exception applies. *See id.* "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Op. Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). AIC is determined "at the time of removal." *Ibarra v. Manheim Invs. Inc.*, 775 F.3d 1193, 1197 (9th Cir.

4

2015). "[P]ost filing developments do not defeat jurisdiction if jurisdiction was properly invoked at the time of filing." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 929–30 (9th Cir. 2019) (plaintiff's stipulation that AIC was less than $5 million must be ignored).

The AIC is "simply the amount at stake in the underlying litigation." *Jauregui*, 28 F.4th at 994 (quotation marks omitted). "Importantly, that . . . does not mean likely or probable liability; rather, it refers to *possible* liability." *Id*. (quotation marks and alterations omitted). In other words, the AIC turns on the defendant's total potential "damages exposure"—not an estimate of likely damages. *Ibarra*, 775 F.3d at 1198. "[I]n assessing the amount in controversy, a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell*, 471 F. App'x at 648. In short, the defendant must only "plausibly show that it is reasonably possible that the potential liability exceeds $5 million." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 771–72 (9th Cir. 2020) (applying preponderance standard and reversing remand).

USC is entitled to rely on reasonable assumptions to meet its burden. *See Jauregui*, 28 F.4th at 993; *Greene*, 965 F.3d at 771 (defendant may use "chain of reasoning" to meet preponderance burden if the assumptions are "reasonable"). The Court applies a "maximum assumption" that "is reasonable in light of plaintiff's allegations." *Arias*, 936 F.3d at 925; *see also Mills v. Rescare Workforce Servs*., No. 2:20-cv-10860-FLA, 2022 WL 843461, at *3 (C.D. Cal. 2022) ("'An assumption may be reasonable if it is founded on the allegations of the complaint.'") (quoting *Arias* 936 F.3d at 925). Statutory attorney's fees available to plaintiffs and the costs of compliance with injunctions are included in the total AIC. *Fritsch v. Swift Trans. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

## II.  PLAINTIFFS' POSSIBLE DAMAGES EXCEED THE MINIMUM AIC

Plaintiffs' claims fail on the merits; no damages are likely. *See* Dkt. 10. But assuming the merits—as CAFA requires—USC's "*possible* liability" easily surpasses

$5 million. *Jauregui*, 28 F.4th at 994; *see Campbell*, 471 F. App'x at 648. The math is simple: the Court takes the size of the class and multiplies it by the potential damages for each member. *See Jauregui*, 28 F.4th at 994–95.[2]

### A. Plaintiffs' Class Size

Plaintiffs' putative class encompasses all "Jewish Professors and Faculty members and Jewish Students." *E.g.*, FAC ¶ 63; NR ¶ 14. As the Chang Declaration shows, over 100 students enrolled in Spring 2024—the time period in question—have self-identified to the University as Jewish. Chang Decl. ¶¶ 3–4; NR ¶ 14.

As explained below, even using the most conservative calculation of damages based on a minimum class size of 100 students, USC satisfies the AIC. However, this minimum class size of 100 does not include the Faculty Plaintiff nor the "substantial number" of the 7,000-plus full-time USC faculty members that plaintiffs claim are similarly situated. FAC ¶ 62. Further, there are likely many more Jewish students at USC than the 100-plus students who self-identified as Jewish to the University. USC Hillel—an independent organization described as "the center of Jewish Life at USC"—"engag[es] over 1,500 unique USC students each year" and estimates there are 4,000 Jewish students at USC. Request for Judicial Notice ("RJN") at 2, Ex. G.

### B. Plaintiffs' Potential Damages

As explained below, even assuming the *minimum* class size of 100, there is at least $5 million possibly at stake from civil rights damages and attorney's fees, contract damages, and the costs of complying with plaintiffs' requested injunctions.

**Civil Rights Damages**. Plaintiffs assert violations of California's Bane Act (Count 1), Unruh Act (Count 2), and Ralph Act (Count 3). Because violations of California's civil rights laws are targeted only at *egregious* and *intentional* acts, *see*

---

[2] The OSC raises only CAFA's AIC requirement. OSC at 3. The record already shows that the putative class has at least 100 members and that at least one member of the class is a citizen of foreign country and therefore diverse from USC (a citizen of California). *See* NR ¶ 14, 21–24; Chang Decl. ¶ 4.

*Reese v. Cnty. Of Sacramento*, 888 F.3d 1030, 1040, 1043 (9th Cir. 2018); FAC ¶19, violations can result in significant damages. All three acts entitle plaintiffs to recover damages under California Civil Code § 52, consisting of actual damages (including for emotional distress) *in addition to* statutory treble damages or a minimum statutory amount, whichever is greater. *See* Cal. Civil Code §52(a). Plaintiffs' civil rights claims, if successful, also include statutory attorney's fees. *Id*. §§ 52(a), 52.1(i).

The Court may consider evidence of emotional distress jury verdicts in other cases in estimating the AIC. *See, e.g., Reese v. Daikin Comfort Techs. Distribution, Inc*., No. 2:24-CV-00050-AB-MAR, 2024 WL 1580168, at *6 (C.D. Cal. 2024) (noting emotional distress verdicts ranging from $56,000 to $2.25 million and crediting the verdict in a roughly "analogous" case); *c.f. Greene*, 965 F.3d at 773 (defendant could "meet its burden" that amount of punitive damages was "reasonably possible" by citing a case using the same damages ratio).

In cases involving allegations of antisemitic discrimination, Los Angeles juries have awarded—and California appellate courts have upheld—significant damages awards for intentional violations of civil rights laws resulting in emotional distress. *Paletz v. Adaya* is illustrative. 2014 WL 7402324; *see also* No. SC110870, 2012 WL 6123494 (Cal. Super., L.A. Cnty. 2012) (Revised Judgment on Jury Verdict). There, 18 individual plaintiffs sued a hotel owner who shut down a pool party fundraiser supporting the Israeli Defense Forces because the plaintiff party attendees were Jewish. 2014 WL 7402324, at *1–2. Trial testimony showed that the defendant "made anti-Semitic remarks," stared at partygoers "for at least an hour and a half," and intentionally shut down the party "motivated by discrimination." *Id*. at *4.

The jury found for *all* the individual plaintiffs, awarding each of them between $26,000 and $180,000 in compensatory and statutory damages under the Unruh Act. *Id*. at *3. The mean award was $66,555 and the median award was $55,000. *See* 2012 WL 6123494, at *56–57 (pdf pages). The California Court of Appeal upheld, in relevant part, the compensatory and statutory damages under the Unruh Act. *See*

1  *id*. at *1–2, 9–10, 20–21.

2  However conclusory or implausible, plaintiffs' theory of the case must be accepted as true when assessing the AIC. And plaintiffs' allegations here are at least as severe as those in *Paletz*. Here, plaintiffs assert that protestors—encouraged by the University—called for "death to Jews" and "paint[ed] swastikas" in a "rei[g]n of terror" of "severe and pervasive" antisemitism. FAC ¶¶ 2, 7, 11, 17. And while the plaintiffs in *Paletz* were excluded on a single occasion, plaintiffs here claim to have been subjected to offensive conduct and mistreatment for "weeks on end." *Id.* ¶ 74.

Accepting as true plaintiffs' allegations, the damages awards in *Paletz* are a conservative estimate of the amount at stake here. Taking the minimum class size of 100 and applying the highest damages awarded in *Paletz* ($180,000), the total amount of possible civil rights damages here is $18 million. Applying the mean or median damages award from *Paletz*, the damages here would be $6.6 million or $5.5 million.

Here is a second, independent route to sufficient AIC: the Unruh Act allows recovery of a minimum statutory damages ($4,000) for "each and every offense" where "full and equal accommodations" are denied or deterred. Cal. Civ. Code §§ 51(b), 52(a); *see Johnson v. Cala Stevens Creek/Monroe, LLC*, 401 F. Supp. 3d 904, 913 (N.D. Cal. 2019) (awarding $12,000 in Unruh Act statutory damages for two denials and one deterrence). Plaintiffs allege that these Unruh Act violations "continue[d] for weeks on end" (FAC ¶ 74) and the Faculty Plaintiff asserts protestors engaged her for "three (3) weeks" (*id.* ¶ 28). Though USC disputes plaintiffs' allegations, if each member of the minimum class experienced just one violation per weekday for three weeks (15 instances), then CAFA's floor is met *solely* with statutory minimum damages ($4,000 x 15 x 100 = $6 million). The AIC rises to $16 million if all 4,000 Jewish students were subjected to just one violation. *See* FAC ¶¶ 3, 6 (asserting that all Jewish students experienced discrimination).

**Attorney's Fees**. Though USC denies liability here, each of the Bane, Unruh, and Ralph Acts entitle plaintiffs to attorney's fees if they prevail. Cal. Civ. Code

§ 52(a). Attorney's fees of 25% is a reasonable (and conservative) assumption. *See Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *13 (N.D. Cal. 2013) (for AIC under CAFA, adding 25% of the AIC on the claims for relief to account for attorneys' fees); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (citing cases where federal judges approved fee awards ranging from 30% to 33% and approving fees of 33% of award). This Court has found a defendant's assumption of 25% in attorney's fees "plausible" and a "reasonable estimate" for purposes of CAFA's AIC on a facial attack. *See Mills*, 2022 WL 843461, at *8–9. Attorney's fees increase the AIC even further above the $5 million threshold.

**Contract Damages**. While the possible civil rights damages are sufficient in two independent ways, plaintiffs' alleged contract damages further increase the AIC. Plaintiffs allege USC must "pay damages" because they and the class "have been robbed of their college and graduate school experience," for which they "paid over $200,000." FAC ¶¶ 20, 90. Elsewhere in the FAC, plaintiffs say that USC has been "one of the worst centers of academic anti-Semitism in the United States" for "decades" and "aware" of antisemitism "for years." *Id.* ¶ 11. USC, of course, ***strongly*** disagrees. But taking the plaintiffs' allegations at face value, as the Court should in this inquiry, $20 million in contract damages are possible for a class of 100.

But to be conservative, assume the breach of contract damages apply to only a shorter time period. USC's combined tuition and fees for the past academic year were $68,237 (RJN at 1, Exs. A, B), which is approximately $34,000 per semester or $8,500 per month. Taking only the spring semester for the minimum class of 100, the contract damages possible are $3.4 million. If the damages are solely for the time of the protests ("weeks on end" being a month), the contract damages possible are $850,000 for the minimum-sized class. *See* FAC ¶¶ 17, 28–29, 89–94; *cf. Camden v. Bucknell Univ.*, No. 4:23-CV-01907, 2024 WL 760232, at *5 (M.D. Pa. 2024) (crediting university for part of the semester prior to Covid disruptions in tuition refund litigation). Possible contract damages—alone—would be $34 million for a

class of 4,000 Jewish students for just one month (4,000 x $8,500).

## III. COST OF COMPLIANCE WITH INJUNCTION INCREASES AIC

Plaintiffs also ask the Court to "compel[]" USC "to implement institutional, far-reaching, and concrete remedial measures." FAC ¶ 20. While plaintiffs fail to specify precisely the injunction they want, at the very least they seek an order banning USC from accepting donations and grants from certain outside funders, including entities associated with the Soros Foundation, the Rockefeller Brothers, and the Tides Center, as well as unnamed "wealthy Democrat Party donors." *See id.* ¶¶ 4, 113.

The requested injunction would "preclude Defendant from accepting donations," a significant cost of compliance. *See United Poultry Concerns v. Chabad of Irvine*, No. CV 16-01810-AB, 2017 WL 2903263, at *3 (C.D. Cal. 2017) (estimating lost donations 10 years into the future to establish the AIC), *vacated and remanded on other grounds*, 743 F. App'x 130 (9th Cir. 2018). Publicly available information shows that between 2016 to 2023, USC received at least $2,830,000 from the sources that plaintiffs identify by name: $1.88 million from the Open Society Foundations, founded by George Soros, $250,000 from the Tides Foundation, and $700,000 from the Rockefeller Foundation. *See* RJN at 1–2, Exs. C, D, E, F.

Of course, the University is not entitled to any particular future donation. But just as past donations were indicative of the likely cost of compliance in *United Poultry*, the Court may use this figure as a reasonable and minimum estimate of the cost of enjoining the University from accepting future donations.

## IV. CONCLUSION

USC meets its burden to satisfy CAFA's AIC requirement, and USC has entirely satisfied its burden at this stage of the case. *See Kuxhausen*, 707 F.3d at 1140 n.1. Moreover, the Court's show cause order raised only the AIC issue. Should plaintiffs assert CAFA exceptions—where plaintiffs bear the burden—USC requests an opportunity to respond. *Id.* (once defendant meets its burden to show CAFA requirements, plaintiff has burden to prove exception applies for remand).

Dated: July 26, 2024

Respectfully submitted,

JONES DAY

By: */s/ Rasha Gerges Shields*
Rasha Gerges Shields

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE (AMOUNT IN CONTROVERSY UNDER CAFA)

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant University of Southern California, certifies that this brief is limited to 10 pages, as required by the Court's OSC (Dkt. 9), and that this brief contains 3,519 words, which complies with the word limit of L.R. 11-6.1 and Standing Order 6(c).

Dated: July 26, 2024                   Respectfully submitted,

                                       JONES DAY


                                       By: */s/ Rasha Gerges Shields*
                                           Rasha Gerges Shields

                                       Attorneys for Defendant
                                       UNIVERSITY OF SOUTHERN
                                       CALIFORNIA

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE (AMOUNT IN CONTROVERSY UNDER CAFA)