1  Rasha Gerges Shields (Cal. Bar No. 218248)
   rgergesshields@jonesday.com
2  Tyler J. Scott (Cal. Bar No. 341039)
   tscott@jonesday.com
3  JONES DAY
   555 South Flower Street, 50th Floor
4  Los Angeles, CA 90071
   Telephone: +1.213.243.2719
5  Facsimile: +1.213.243.2539
6
7  Attorneys for Defendant
   UNIVERSITY OF SOUTHERN CALIFORNIA
8
9             UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12  DOE JEWISH USC FACULTY MEMBER 2004 and DOE JEWISH USC STUDENT 1987, Individually And On Behalf of All Others Similarly Situated, | Case No. 2:24-cv-05712 FLA (SSC) |
| 13 14 | **DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S OPPOSITION TO MOTION TO REMAND** |
| 15                   Plaintiffs, | |
| 16 | |
| 17  v. | **Date:      September 6, 2024** |
| 18  Trustees of THE UNIVERSITY OF SOUTHERN CALIFORNIA, a private public benefit corporation; and DOES 1 through 100, inclusive, | **Time:      1:30 P.M.** |
| 19 | **Place:     Courtroom 6B** |
| 20 | **Judge:    The Honorable** |
| 21                   Defendants. | **Fernando L. Aenlle-Rocha** |

22
23
24
25
26
27
28

1

## <u>**TABLE OF CONTENTS**</u>

INTRODUCTION ................................................................................................ 1

RELEVANT BACKGROUND AND PROCEDURAL HISTORY ......................... 1

    I.    Plaintiffs' Allegations .............................................................. 1

    II.   USC's Removal and Subsequent Proceedings ............................. 2

ARGUMENT ....................................................................................................... 4

    I.    The Court has Subject Matter Jurisdiction Under CAFA .................... 5

        A.    The Putative Class Has at Least 100 Members ....................... 5

        B.    Minimal Diversity Is Satisfied ................................................ 8

        C.    The $5 Million AIC Is Satisfied .............................................. 9

    II.   Plaintiffs Do Not Show any CAFA Exception Applies .................... 17

        A.    CAFA's "Narrow" Exceptions Require Plaintiffs to Show
              Two-Thirds of the Class Members Are California Citizens ...... 17

        B.    Plaintiffs Cannot Meet Their Burden Because They
              Present No Evidence That Two-Thirds of the Class
              Members Are California Citizens ............................................ 18

CONCLUSION .................................................................................................. 21

DEFENDANT USC'S OPPOSITION TO MOTION TO REMAND

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

5
*Abrego Abrego v. The Dow Chem. Co.*,

6
    443 F.3d 676 (9th Cir. 2006) ................................................................. 4

7
*Altamirano v. Shaw Indus., Inc.*,

8
    2013 WL 2950600 (N.D. Cal. 2013) ..................................................... 13

9
*Anderson v. Starbucks Corp.*,

10
    556 F. Supp. 3d 1132 (N.D. Cal. 2020) ................................................. 17

11
*Arias v. Residence Inn by Marriott*,

12
    936 F.3d 920 (9th Cir. 2019) ................................................... 10, 15, 17

13
*Benko v. Quality Loan Serv. Corp.*,

14
    789 F.3d 1111 (9th Cir. 2015) ........................................................ 5, 17

15
*Bradley v. Zissimos*,

16
    721 F. Supp. 738 (E.D. Pa. 1989) ........................................................... 9

17
*Brew v. Univ. Healthcare Sys.*,

18
    No. CV 15-4569, 2015 WL 8259583 (E.D. La. 2015) ...................... 7, 8

19
*Broadway Grill, Inc. v. Visa Inc.*,

20
    856 F.3d 1274 (9th Cir. 2017) ............................................................... 5

21
*Campbell v. Vitran Exp., Inc.*,

22
    471 F. App'x 646 (9th Cir. 2012) ............................................. 1, 10, 16

23
*Cavalieri v. Avior Airlines C.A.*,

24
    25 F.4th 843 (11th Cir. 2022) ................................................................ 9

25
*Dart Cherokee Basin Op. Co., LLC v. Owens*,

26
    574 U.S. 81 (2014) ................................................................................. 4

27

28

DEFENDANT USC'S OPPOSITION TO MOTION TO REMAND

*Dougherty v. Drew Univ.*,
    534 F. Supp. 3d 363 (D.N.J. 2021) .......................................................................4

*Enomoto v. Siemens Industry, Inc.*,
    No. 22-56062, 2023 WL 8908799 (9th Cir. 2023) ..............................................5

*Field v. Swade*,
    No. CIV.A. 98-2271-EEO, 1998 WL 560003 (D. Kan. 1998) ...........................9

*Fritsch v. Swift Trans. Co. of Ariz., LLC*,
    899 F.3d 785 (9th Cir. 2018) ..............................................................................10

*Greene v. Harley-Davidson, Inc.*,
    965 F.3d 767 (9th Cir. 2020) ..............................................................10, 15, 16

*Hicks v. Grimmway Enters., Inc.*,
    No. 22-cv-2038, 2023 WL 3319362 (S.D. Cal. 2023) ...........................18, 20, 21

*Ibarra v. Manheim Invs., Inc.*,
    775 F.3d 1193 (9th Cir. 2015) ..........................................................................6, 7

*Jauregui v. Roadrunner Transportation Servs., Inc.*,
    28 F.4th 989 (9th Cir. 2022) .........................................................................10, 14

*Johnson v. Cala Stevens Creek/Monroe, LLC*,
    401 F. Supp. 3d 904 (N.D. Cal. 2019) ...............................................................12

*Jones v. Tonal Sys., Inc.*,
    No. 23-cv-1267, 2024 WL 400182 (S.D. Cal. 2024) ............................18, 20, 21

*Keene v. City & Cnty. of San Francisco*,
    No. 22-16567, 2023 WL 3451687 (9th Cir. 2023) ...............................................8

*King v. Great Am. Chicken Corp., Inc.*,
    903 F.3d 875 (9th Cir. 2018) .............................................................1, 9, 19, 20

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
    707 F.3d 1136 (9th Cir. 2013) ...............................................................4, 17, 18

DEFENDANT USC'S OPPOSITION TO MOTION TO REMAND

*Louisiana v. Am. Nat. Prop. Cas. Co.*,
    746 F.3d 633 (5th Cir. 2014) ................................................................. 6

*Mills v. Rescare Workforce Servs.*,
    No. 2:20-cv-10860-FLA, 2022 WL 843461 (C.D. Cal. 2022) ................... 10, 13

*Mondragon v. Cap. One Auto Fin.*,
    736 F.3d 880 (9th Cir. 2013) ................................. 1, 5, 9, 17, 18, 19, 20

*Moore v. Dnata US Inflight Catering LLC*,
    No. 20-cv-8028, 2021 WL 3033577 (N.D. Cal. 2021) ............................... 15, 16

*Paletz v. Adaya*, No. B247184,
    2014 WL 7402324 (Cal. Ct. App. 2014) ................................................. 11, 12, 15

*Paletz v. Adaya*, No. SC110870,
    2012 WL 6123494 (Cal. Super., L.A. Cnty. 2012) ..................................... 11, 12

*Reese v. Cnty. of Sacramento*,
    888 F.3d 1030 (9th Cir. 2018) .............................................................. 11

*Reese v. Daikin Comfort Techs. Distribution, Inc.*,
    No. 2:24-CV-00050, 2024 WL 1580168 (C.D. Cal. 2024) .................... 11, 12, 15

*Simer v. Rios*,
    661 F.2d 655 (7th Cir. 1981) ................................................................. 7

*Standard Fire Ins. v. Knowles*,
    568 U.S. 588 (2013) ............................................................................. 15

*United Poultry Concerns v. Chabad of Irvine*,
    No. CV 16-01810-AB, 2017 WL 2903263 (C.D. Cal. 2017) ...................... 14

*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) ................................................... 7

**STATUTES**

28 U.S.C. § 1332 .......................................................... 1, 4, 8, 17, 18

Cal. Civ. Code § 51 ............................................................................................ 12

Cal. Civil Code § 52 ............................................................................... 11, 12, 13

**OTHER AUTHORITIES**

Fed. R. Civ. Pro. 23 ........................................................................................... 11

DEFENDANT USC'S OPPOSITION TO MOTION TO REMAND

## <u>INTRODUCTION</u>

This case is properly in federal court under the Class Action Fairness Act ("CAFA"). Defendant University of Southern California ("USC" or the "University") has shown: (1) the putative class has more than 100 members; (2) there is minimal diversity between at least one member of the putative class and USC; and (3) the amount-in-controversy ("AIC") exceeds CAFA's $5 million floor. *See* 28 U.S.C. §§ 1332(d)(2), (5); Dkts. 1, 18, 21.

Plaintiffs now attempt to avoid federal court by walking back their claims and trying to shrink the putative class. But the allegations at the time of removal matter; plaintiffs' *post hoc* backtracking does not. Nor have plaintiffs mustered *any* evidence—none at all—to meet their burden to prove by a preponderance of the evidence that a CAFA exception applies.

USC has met its burden under CAFA. Plaintiffs have not. Such cases must stay in federal court. *See King v. Great Am. Chicken Corp., Inc.*, 903 F.3d 875, 877, 880 (9th Cir. 2018); *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 883–84 (9th Cir. 2013). Plaintiffs' remand motion should be denied.

## <u>RELEVANT BACKGROUND AND PROCEDURAL HISTORY</u>

USC reviews the relevant allegations and the previous filings related to CAFA jurisdiction below. As a preliminary matter, USC again ***rejects any liability in this matter whatsoever***: the Court should ultimately dismiss plaintiffs' claims on the merits. *See* Dkt. 10 (USC's motion to dismiss). That said, the Court must assume the merits of plaintiffs' claims when evaluating its jurisdiction under CAFA. *E.g.*, *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012).

## I. PLAINTIFFS' ALLEGATIONS

Plaintiffs—a Jewish faculty member and a Jewish graduate student—filed this putative class action against USC following recent protests over the Israel-Hamas war. Dkt 1, Ex. A-7, First Amended Complaint ("FAC"). Plaintiffs allege that in spring 2024, USC, "fearful of demonstrations" around the country and losing funding

1

from "the Hamas-supporting Biden Administration," "allowed" "Jew-hating Hamas-supporting campus terrorist[] antisemites" to build an on-campus "[e]ncampment." *Id.* ¶ 1.  According to plaintiffs, many of these "Campus Terrorists" were "paid outside agitators" "instigated and funded" by the "Soros Foundation," "Rockefeller Brothers Fund," and the "Tides Center," among other groups.  *Id.* ¶ 4.  Plaintiffs say the "Campus Terrorists" perpetrated a "rei[g]n of terror" that lasted "for weeks on end" placing Jewish students and faculty "at severe emotional and physical risk."  *Id.* ¶¶ 2, 6, 17.

Plaintiffs allege intentional violations of their civil rights and intentional torts by (or aided by) the University.  *See id.* ¶¶ 63–82 (civil rights claims under California's Bane, Unruh, and Ralph Acts), 95–107 (intentional tort claims).  Plaintiffs seek emotional distress "damages in an amount in excess of the jurisdictional limits" of the state court "to be shown at the time of trial" in addition to attorney's fees.  *Id.* pp. 26–27; *see also id.* ¶ 20.  Plaintiffs also assert that the University breached a contract with its students, who were "robbed of their college and graduate school experience," which cost them "over $200,000" each (*id.* ¶¶ 20, 89–94).  Plaintiffs demand "institutional, far-reaching, and concrete" change at USC through court-ordered injunctive relief, including barring the University from accepting "outside funding" by certain allegedly antisemitic donors.  *Id.* ¶¶ 20, 113.

Plaintiffs purport to bring this case as a class action—asserting claims on their own behalf and on behalf of all "Jewish Professors and Faculty members and Jewish Students."  *E.g., id.* ¶ 63.  *But see* Dkt. 10, at 19–21 (explaining why class allegations should be stricken).  Plaintiffs allege that USC has "over 7,000 full-time . . . faculty members" and that "a substantial number" are "Jewish faculty members."  FAC ¶ 62.  Plaintiffs' complaint does not specify the number of Jewish USC students.

## II.  USC'S REMOVAL AND SUBSEQUENT PROCEEDINGS

**Notice of Removal and Chang Declaration**.  On July 8, 2024, USC filed a Notice of Removal ("NR") pursuant to CAFA, supported by a declaration from its

University Registrar, Frank Chang.  Dkt. 1 (NR); Dkt. 1-Ex. B ("Chang Decl."). USC's Registrar is responsible for maintaining demographic information about the University's student body.  Chang Decl. ¶ 2.  USC does not require its students to disclose their religious affiliation to the University; the vast majority of students have not disclosed it.  *Id.* ¶¶ 3, 5.  That said, over 100 individual students enrolled at USC in spring 2024 have voluntarily self-reported as Jewish to the University.  *Id.* ¶ 4.  This includes students who are citizens of foreign countries (*i.e.*, Guatemala) and from states other than California (*i.e.*, New York).  *Id.*  USC's notice of removal addressed the other CAFA requirements including that, based on plaintiffs' own allegations, more than $5 million is at issue.  NR ¶¶ 12–24.

**The Court's Order to Show Cause**.  On July 12, 2024, the Court entered an order to show cause "why this action should not be remanded for lack of subject matter jurisdiction because the amount in controversy does not exceed the jurisdictional threshold" of $5 million required by CAFA.  Dkt. 9 at 3 ("OSC").

Two weeks later, the parties responded.  USC's response ("USC OSC Response") focused on the AIC and included a request for judicial notice on supporting facts.  *See* Dkts. 18, 19.  Plaintiffs' response purported to raise other issues in addition to AIC, including minimal diversity, class size, and a CAFA exception. Dkt. 17.  In particular, plaintiffs' response included a declaration from their counsel that candidly described his difficult search for "six months" to find a plaintiff to bring this case, which he attributes largely to class members' "apathy" or because they "believe[] the harm or damage was trivial or transitory."  *Id.* at 9–11 ("Reznick Decl.").

On July 31, 2024, USC objected to plaintiffs' OSC response and addressed those additional issues beyond AIC ("USC Objection"), including minimal diversity and class size.  Dkt. 21.

**Remand Motion**.  On August 8, 2024, plaintiffs filed the instant motion, which purports to incorporate their prior filings and responds to USC's jurisdictional

1  contentions.  Dkt. 25.  Plaintiffs argue that (i) USC cannot demonstrate the three
2  requirements for CAFA jurisdiction; and (ii) even if USC could demonstrate CAFA
3  jurisdiction, the Court must decline jurisdiction under the mandatory CAFA
4  exceptions outlined at 28 U.S.C. § 1332(d)(4).  *See* Dkt. 25, at 6–10.

5       This Opposition responds to plaintiffs' remand motion and expressly
6  incorporates by reference USC's Notice of Removal, OSC Response, Objection, and
7  all supporting documents.[1]

8  ## **ARGUMENT**

9       CAFA vests original jurisdiction in federal district courts over a putative class
10  action when: (1) the putative class exceeds 100 members; (2) at least one putative
11  class member is diverse from the defendant ("minimal diversity"), and (3) the AIC
12  exceeds $5 million.  28 U.S.C. § 1332(d)(2), (5).  USC, as the removing party, bears
13  the burden of proving these elements by a preponderance of the evidence.  *Abrego*
14  *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682–83 (9th Cir. 2006).  That is all
15  USC must show—these three elements "are the full extent of what subject matter
16  jurisdiction demands."  *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140
17  n.1 (9th Cir. 2013).  "[N]o antiremoval presumption attends cases invoking CAFA."
18  *Dart Cherokee Basin Op. Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

19       Once USC shows these three elements, this Court has subject matter
20  jurisdiction.  The burden then flips to the plaintiffs to show that the Court should
21  nevertheless remand the case to state court under a CAFA exception.  *See Kuxhausen*,
22  707 F.3d at 1140 n.1 ("The obligation to raise and prove" that an exception to CAFA
23  applies "rests on the party seeking remand.").  Plaintiffs must introduce proof from
24  which the Court may find, by a preponderance of the evidence, that a CAFA exception

---

26  [1] The future disposition of USC's motion to dismiss all of plaintiffs' claims and
27  to strike plaintiffs' class allegations (Dkt. 10) has no bearing on the Court's
   jurisdiction under CAFA.  *See, e.g.*, *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363,
28  382 (D.N.J. 2021).

applies. *Mondragon*, 736 F.3d at 883–84. CAFA exceptions are meant to be "narrow," because "CAFA's language favors federal jurisdiction over class actions." *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015) (quotation marks omitted); *see also Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017) (noting "Congress's intent to broaden federal court class action jurisdiction" with CAFA).

As discussed below, USC has shown that the three requirements of CAFA are satisfied. Plaintiffs, on the other hand, have failed to prove a CAFA exception. This case should thus stay in federal court, consistent with CAFA's text and purpose.[2]

## I.  THE COURT HAS SUBJECT MATTER JURISDICTION UNDER CAFA

### A.  The Putative Class Has at Least 100 Members

#### 1.  Over 100 USC Students Have Self-Identified as Jewish

Plaintiffs define their class as "Jewish Professors and Faculty members and Jewish Students" at USC. *E.g.*, FAC ¶ 61. Taking the students alone, more than 100 students enrolled at USC in the spring 2024 semester self-reported as Jewish to the University's Registrar. Chang Decl. ¶¶ 3–4. That, by itself, satisfies USC's burden to show class size under CAFA. *See* Dkt. 21, at 2–3. The "substantial number" of 7,000-plus full-time USC faculty members that plaintiffs claim are "similarly situated" increases that number even more. FAC ¶ 62. The record further shows that there are many more Jewish students at USC than the 100-plus students who voluntarily self-identified. USC Hillel—an independent organization described as "the center of Jewish Life at USC"—"engag[es] over 1,500 unique USC students each year" and estimates there are 4,000 Jewish students at USC. Dkt. 19, at 2.

---

[2] USC satisfies CAFA's requirements irrespective of whether plaintiffs' remand motion is characterized as a facial or factual attack. *See Enomoto v. Siemens Industry, Inc.*, No. 22-56062, 2023 WL 8908799, at *2 (9th Cir. 2023) (whether challenge was facial or factual did not matter because defendant "met its burden either way").

## 2.   Plaintiffs Cannot Redefine the Class to Avoid Federal Court

Plaintiffs' remand motion:

- does not dispute that over 100 students self-reported as Jewish to USC;

- does not dispute that USC Hillel interacts with 1,500 unique students per year;

- does not dispute that Hillel estimates there are 4,000 Jewish students at USC; and

- does not offer any competing estimate of the number of Jewish students at USC.

Rather, plaintiffs incorporate their arguments from their previously filed OSC response.  *See* Dkt. 25, at 8.

In that filing, plaintiffs asserted that the class is not comprised of all of USC's Jewish students and faculty members, but rather the subset of USC's Jewish student body and faculty "who suffered damages and harm as a result" of USC's alleged conduct.  Dkt. 17, at 3 (emphasis omitted).  Then, to estimate the size of this redefined class, plaintiffs rely on the Reznick Declaration, where plaintiffs' counsel states, to his "surprise," that it took "more than six months" to find a plaintiff willing to sue USC.  Reznick Decl. ¶ 2.  Plaintiffs' counsel estimates that the redefined class of Jewish students "harmed" is "likely less than 20–25" due to "apathy," or because some Jewish students and faculty "support the protests" or believe the "harm or damage was trivial or transitory."  *Id.*

Plaintiffs cannot avoid federal jurisdiction by redefining or shrinking the class after removal.  *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (CAFA jurisdiction is evaluated at the time of removal); *accord Louisiana v. Am. Nat. Prop. Cas. Co.*, 746 F.3d 633, 639 (5th Cir. 2014) (noting that "[e]very circuit that has addressed the question has held that post-removal events do not oust CAFA jurisdiction" and collecting cases).  As the complaint repeatedly states, plaintiffs seek

to represent a class of "Jewish Students and Jewish Professors and Faculty."  FAC ¶¶ 2 ("Plaintiffs, Jewish Students and Jewish Professors and Faculty"), 3 (same), 12 (same with typo), 13 (same), 63 ("Jewish Professors and Faculty members and Jewish Students"); *see id.* ¶ 4 ("Jewish Students and Faculty"), 6 (same), 14 (same), 15 (same), 17 (same), 18 (same), 63(c) (same), 64 (same), 72 (same), 80 (same), 84 (same), 86 (same), 91 (same), 97 (same) 109 (same); *see also id.* ¶ 8 (referencing "Defendant University's large Jewish student body and faculty"), 71 ("University Students and Faculty" that are "Jewish or Israeli"); *accord* NR ¶ 14 ("Jewish USC faculty members and Jewish students").

In fact, the Reznick Declaration itself described certain "Jewish students and Jewish faculty members" as "potential class members," even though those putative class members considered any harm from the protests "trivial or transitory," "support[ed] the protests," or were otherwise unharmed.  Reznick Decl. ¶ 2. Plaintiffs' *post hoc* attempt to narrow the class to "Jewish Students and Faculty Professors 'who suffered damages'" (Dkt 17, at 3 (emphasis omitted)) is thus inconsistent with the FAC and plaintiffs' attorney's own declaration, and precluded by Ninth Circuit precedent.  *See Ibarra*, 775 F.3d at 1197.

Plaintiffs' narrowing has other problems too.  The redefined class, for instance, would turn on whether each individual class member "felt that they were 'harmed.'" Reznick Decl. ¶ 2. But "[i]f a class definition includes a requirement . . . that depends instead upon each putative class member's feelings and beliefs, then there is no reliable way to ascertain class membership."  *Xavier v. Philip Morris USA Inc*., 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); *accord Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981).  Relatedly, when addressing whether CAFA is satisfied, courts have refused to accept such "failsafe" class definitions—that is, putative classes that turn on whether each member has a claim.  *E.g., Brew v. Univ. Healthcare Sys.*, No. CV 15-4569, 2015 WL 8259583, at *2–3 (E.D. La. 2015).  Accepting such a definition at this stage "would require the Court to consider whether each potential class member

was [damaged], or otherwise; it would compel [defendants] to admit [an element of] liability to be able to remove the case. Such a catch-22 definition lacks merit" and cannot be adopted "for determining federal jurisdiction." *Id.* at \*3.

USC has met its burden to show that the putative class, as defined by plaintiffs' complaint, has more than 100 members.

## B. Minimal Diversity Is Satisfied

Minimal diversity under CAFA is satisfied when a single putative class member is "a citizen or subject of a foreign state" and the defendant is a citizen of a U.S. state. 28 U.S.C. § 1332(d)(2)(B). Here, a USC student who is a citizen of Guatemala has self-identified as Jewish (Chang Decl. ¶ 4), and USC is a California citizen (NR ¶ 22). The Court can stop here. Minimal diversity is satisfied by the citizen of Guatemala alone—regardless of what plaintiffs have to say about the domicile of U.S.-citizen students. Independently, minimal diversity is also satisfied because the class includes citizens of states other than California, including New York. *See* Chang Decl. ¶ 4; 28 U.S.C. § 1332(d)(2)(A).

In the Remand Motion, plaintiffs do not dispute that: (i) a single foreign citizen in the class establishes minimal diversity under CAFA; and that, in fact (ii) one purported class member is a citizen of Guatemala and another is from New York. Rather, plaintiffs say that USC "cannot establish 'minimal diversity' by inferring citizenship of another state or country because some USC students or faculty members chose to identify as 'Jewish' when they applied for work or studying at USC." Dkt. 25, at 8. Plaintiffs' assertion is wrong for at least three reasons.

***First***, plaintiffs question whether class members can be identified by self-reporting as Jewish, but that is apparently how plaintiffs' counsel says he found out the plaintiffs are Jewish (*i.e.*, they told him during his months-long search for plaintiffs). *See* Reznick Decl. ¶ 2; *cf. Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at \*2 (9th Cir. 2023) ("[A]n assertion of a sincere religious belief is generally accepted."). If self-reporting does not work, plaintiffs

will never be able to show the class is ascertainable.

**Second**, USC is not "inferring" anything about the Guatemalan student's citizenship—it is reporting a fact from the office responsible for keeping such records. *See* Chang Decl. ¶ 2.  A citizen of Guatemala is a citizen of Guatemala, and that is enough.  *See Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 849–50 (11th Cir. 2022) (CAFA minimal diversity satisfied where there is "an unnamed plaintiff [who] is a citizen of the United States" and "a Venezuelan citizen" defendant).

**Third**, there is ample reason to infer that the USC student from New York remains a New York citizen.  In fact, plaintiffs themselves endorse a "presumption" that "a student who attends a university in a state other than the student's 'home' state" remains a domiciliary of the home state—not the state where their university is located.  Dkt. 17, at 5 (quoting *Bradley v. Zissimos*, 721 F. Supp. 738, 740 n.3 (E.D. Pa. 1989) (quotation corrected here)); *see also, e.g.*, *Field v. Swade*, No. CIV.A. 98-2271-EEO, 1998 WL 560003, at *2–3 (D. Kan. 1998) (applying this presumption). That is because a party "may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon*, 736 F.3d at 885.  And merely attending college out of state is insufficient to establish a new domicile.  *See, e.g.*, *Bradley*, 721 F. Supp. at 740 & n.3.  Thus, even "out-of-state student[s] working while attending college in California" with a "residential address in California" may be considered "citizens of other states" in the CAFA analysis.  *King*, 903 F.3d at 879; *see also Mondragon*, 736 F.3d at 884 (listing out-of-state students with California addresses as examples of individuals who are not California citizens for CAFA purposes).  Plaintiffs offer no facts that would justify a different approach here.

## C.  The $5 Million AIC Is Satisfied

Plaintiffs' claims fail on the merits; no damages are likely.  *See* Dkt. 10.  As explained in prior filings, however, USC has satisfied its burden to establish that its "possible liability" based on plaintiffs' claims and requests for relief exceeds the

1    $5 million threshold.  *See* Dkts. 18, 21.

2    **1.  The Standard for AIC Is "Possible Liability," Not Likely Liability**

3    The AIC is "simply the amount at stake in the underlying litigation." *Jauregui*

4    *v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022)

5    (quotation marks omitted).  "Importantly, that . . . does not mean likely or probable

6    liability; rather, it refers to possible liability." *Id.* (quotation marks and alterations

7    omitted).  "[I]n assessing the amount in controversy, a court must assume that the

8    allegations of the complaint are true and assume that a jury will return a verdict for

9    the plaintiff on all claims made in the complaint." *Campbell*, 471 F. App'x at 648.

10    In short, the defendant must only "plausibly show that it is reasonably possible that

11    the potential liability exceeds $5 million." *Greene v. Harley-Davidson, Inc.*, 965 F.3d

12    767, 771–72 (9th Cir. 2020) (applying preponderance standard and reversing

13    remand).

14    USC is entitled to rely on reasonable assumptions based on the complaint to

15    meet its AIC burden.  *See Jauregui*, 28 F.4th at 993; *Greene*, 965 F.3d at 771.  The

16    Court applies a "maximum assumption" that "is reasonable in light of plaintiff's

17    allegations." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019);

18    *see also Mills v. Rescare Workforce Servs.*, No. 2:20-cv-10860-FLA, 2022 WL

19    843461, at *3 (C.D. Cal. 2022) ("'An assumption may be reasonable if it is founded

20    on the allegations of the complaint.'") (quoting *Arias* 936 F.3d at 925).  Statutory

21    attorney's fees available to plaintiffs and the costs of compliance with injunctions are

22    included in the total AIC.  *Fritsch v. Swift Trans. Co. of Ariz., LLC*, 899 F.3d 785,

23    794 (9th Cir. 2018).

24    **2.  More Than $5 Million Is Possibly at Stake Here**

25    The math is simple: the Court takes the size of the class and multiplies it by the

26    potential damages for each member.  *See Jauregui*, 28 F.4th at 994–95.  As discussed

27    above, the putative class has at least 100 members (likely far more).  But even

28    assuming the minimum class size of 100, there is at least $5 million possibly at stake

10

from civil rights damages and attorney's fees, contract damages, and the costs of complying with plaintiffs' requested injunctions.

**Civil Rights Damages**.  Plaintiffs assert violations of California's Bane Act (Count 1), Unruh Act (Count 2), and Ralph Act (Count 3).[3]  Because violations of California's civil rights laws are targeted only at egregious and intentional acts, violations can result in significant damages.  *See Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040, 1043 (9th Cir. 2018); FAC ¶ 19.  All three Acts entitle plaintiffs to recover damages under California Civil Code § 52, consisting of actual damages (including for emotional distress) in addition to statutory treble damages or a minimum statutory amount, whichever is greater.  *See* Cal. Civil Code § 52(a).  Plaintiffs can also recover statutory attorney's fees.  *Id.* §§ 52(a), 52.1(i).

Contrary to plaintiffs' suggestion (Dkt 25, at 6), the Court may consider evidence of emotional distress jury verdicts in other cases in estimating the AIC.  *See, e.g.*, *Reese v. Daikin Comfort Techs. Distribution, Inc.*, No. 2:24-CV-00050-AB-MAR, 2024 WL 1580168, at *6 (C.D. Cal. 2024) (noting emotional distress verdicts ranging from $56,000 to $2.25 million and crediting the verdict in a roughly "analogous" case).

In cases involving alleged antisemitic discrimination, Los Angeles juries have awarded—and California appellate courts have upheld—significant damages for intentional violations of civil rights resulting in emotional distress.  *Paletz v. Adaya* is illustrative.  No. B247184, 2014 WL 7402324 (Cal. Ct. App. 2014); *see also* No. SC110870, 2012 WL 6123494 (Cal. Super., L.A. Cnty. 2012) (Revised Judgment on Jury Verdict).  There, 18 individual plaintiffs sued a hotel owner who shut down a

---

[3] Strangely, Plaintiffs fault USC for assuming "that Jewish Professor's and Jewish Student's claims are 'typical' of those in the class."  Dkt. 25, at 6.  But if plaintiffs' claims are atypical, this case should not be a class action at all.  *See* Fed. R. Civ. Pro. 23(a)(3).  While a proper CAFA analysis assumes the merits of the complaint's class allegations, the Court should note plaintiffs' admission that their claims are atypical.

pool party fundraiser supporting the Israeli Defense Forces because the plaintiff party attendees were Jewish.  2014 WL 7402324, at *1–2.  Testimony showed that the defendant "made anti-Semitic remarks," stared at partygoers "for at least an hour and a half," and shut down the party "motivated by discrimination."  *Id*. at *4.

The jury found for all the individual plaintiffs, awarding each of them between $26,000 and $180,000 in compensatory and statutory damages under the Unruh Act (*id.* at *3), with a mean award of $66,555 and a median of $55,000 (*see* 2012 WL 6123494, at *56–57).  The California Court of Appeal upheld these awards in relevant part.  *See* 2014 WL 7402324, at *1–2, 9–10, 20–21.

However conclusory or implausible, plaintiffs' theory of the case must be accepted as true when assessing the AIC.  And plaintiffs' allegations here are at least as severe as those in *Paletz*.  Here, assuming the merits, plaintiffs claim that protestors—encouraged by the University—called for "death to Jews" and "paint[ed] swastikas" in a "rei[g]n of terror" of "severe and pervasive" antisemitism resulting in serious emotional distress, fear, and anxiety.  *E.g.*, FAC ¶¶ 2, 7, 11, 17.  And while the plaintiffs in *Paletz* were excluded on a single occasion, plaintiffs here claim to have been subjected to offensive conduct and egregious mistreatment for "weeks on end."  *Id.* ¶ 74.  Accepting as true plaintiffs' allegations, the damages awards in *Paletz* are a conservative estimate of the amount at stake here: $18 million taking the highest Paletz award for the minimum class ($180,000 × 100), or $6.6 million or $5.5 million applying the mean or median, respectively.

Here is a second, independent route to sufficient AIC: the Unruh Act allows recovery of minimum statutory damages ($4,000) for "each and every offense" where "full and equal accommodations" are denied or deterred.  Cal. Civ. Code §§ 51(b), 52(a); *see Johnson v. Cala Stevens Creek/Monroe, LLC*, 401 F. Supp. 3d 904, 913 (N.D. Cal. 2019) (awarding $12,000 in Unruh Act statutory damages for two denials and one deterrence).  Plaintiffs allege that these Unruh Act violations "continue[d] for weeks on end" (FAC ¶ 74) and the Faculty Plaintiff asserts protestors engaged her for

12

"three (3) weeks" (*id.* ¶ 28).  Although USC disputes plaintiffs' allegations, if each member of the minimum class experienced just one violation per weekday for three weeks (15 instances), then CAFA's floor is met solely with statutory minimum damages ($4,000 × 15 × 100 = $6 million).  Of course, this number could be much, much higher in light of Hillel's estimated 4,000 Jewish students on campus.

**Attorney's Fees**.  Though USC denies liability here, each of the Bane, Unruh, and Ralph Acts entitles plaintiffs to attorney's fees if they prevail.  Cal. Civ. Code § 52(a).  Attorney's fees of 25% is a reasonable (and conservative) assumption.  *See Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *13 (N.D. Cal. 2013) (for AIC under CAFA, adding 25% of the AIC on the claims for relief to account for attorney's fees); *Mills*, 2022 WL 843461, at *8–9 (defendant's assumption of 25% in attorney's fees "plausible" and a "reasonable estimate" for purposes of CAFA's AIC on a facial attack).  Attorney's fees increase the AIC even further above the $5 million threshold.

**Contract Damages**.  While the possible civil rights damages are sufficient in two independent ways, plaintiffs' alleged contract damages further increase the AIC. Plaintiffs allege USC must "pay damages" because they and the class "have been robbed of their college and graduate school experience," for which they "paid over $200,000."  FAC ¶¶ 20, 68.  Elsewhere in the FAC, plaintiffs say that USC has been "one of the worst centers of academic anti-Semitism in the United States" for "decades" and "aware" of antisemitism "for years."  *Id.* ¶¶ 11, 15.  USC, of course, strongly disagrees.  But taking the plaintiffs' allegations at face value, as the Court should in this inquiry, $20 million in contract damages are possible for a class of 100.

But, to be conservative, assume the breach of contract damages apply to only a shorter time period.  USC's combined tuition and fees for the past academic year were $68,237 (Dkt. 19, at 1 & Exs. A, B), which is approximately $34,000 per semester or $8,500 per month.  Taking only the spring semester for the minimum class of 100, the contract damages possible are $3.4 million.  If the damages are solely for the time of the protests ("weeks on end" being a month), the contract damages possible are

1   $850,000 for the minimum-sized class.  *See* FAC ¶¶ 17, 28–29, 89–94.

2   **Costs of Compliance**.  Plaintiffs also ask the Court to "compel[]" USC "to

3   implement institutional, far-reaching, and concrete remedial measures."  FAC ¶ 20.

4   While plaintiffs fail to precisely specify the injunction they want, at the very least they

5   seek an order banning USC from accepting donations and grants from certain outside

6   funders, including entities associated with the Soros Foundation, the Rockefeller

7   Brothers, and the Tides Center, as well as unnamed "wealthy Democrat Party donors."

8   *See id.* ¶¶ 4, 113.

9   The requested injunction would "preclude Defendant from accepting

10  donations," a significant cost of compliance.  *See United Poultry Concerns v. Chabad*

11  *of Irvine*, No. CV 16-01810-AB, 2017 WL 2903263, at *3 (C.D. Cal. 2017)

12  (estimating lost donations 10 years into the future to establish the AIC), vacated and

13  remanded on other grounds, 743 F. App'x 130 (9th Cir. 2018).  Publicly available

14  information shows that between 2016 to 2023, USC received at least $2,830,000 from

15  grantors that plaintiffs identify by name: $1.88 million from the Open Society

16  Foundations, founded by George Soros, $250,000 from the Tides Foundation, and

17  $700,000 from the Rockefeller Foundation.  *See* Dkt. 19, at 1–2 & Exs. C, D, E, F.

18  Of course, the University is not entitled to any particular future donation.  But

19  just as past donations were indicative of the likely cost of compliance in *United*

20  *Poultry*, the Court may use this figure as a reasonable and minimum estimate of the

21  cost of enjoining the University from accepting future donations.

22  **3.  Plaintiffs' Arguments That the AIC Is Below $5 Million Fail**

23  Plaintiffs *do not* contend that it is *impossible* for the University's liability to be

24  greater than $5 million.  *See* Dkt. 25, at 6–7.  That is dispositive because "*possible*

25  liability" is the test for AIC.  *Jauregui*, 28 F.4th at 994 (quotation marks omitted).

26  The Court can stop there.

27  If the Court continues, there is no dispute about the types of relief plaintiffs

28  seek here.  Though plaintiffs suggest what they really want is an injunction, plaintiffs

concede that they seek damages too. Dkt. 25, at 6–7. They also admit that they seek attorney's fees, and do not dispute that courts have included 25% attorney fee awards in the AIC. *Id.* Plaintiffs also claim a right to $4,000 *per day per person* in statutory violations on their Unruh Act claims (*see* Reznick Decl. ¶ 4) and that complying with their requested injunction will cost USC money (Dkt 26, at 6–7). In short, there is no dispute about the inputs into AIC.

Now take plaintiffs' arguments in the Remand Motion in order.

**First**, plaintiffs claim that the verdicts in *Paletz* are "inapposite" and "rank hearsay" without explanation. Buzzwords are not argument; the Court should consider the verdicts for the reasons already stated. *See Reese*, 2024 WL 1580168, at *6; *Paletz*, 2014 WL 7402324, at *1–4.

**Second**, Plaintiffs walk back their requests for relief. As discussed, the FAC seeks far reaching reforms imposed by court order and damages for allegedly egregious conduct. Plaintiffs' motion, however, claims to seek damages "not . . . in excess of $5 million" (Dkt. 17, at 2) and reforms that "would be less than the cost of a postage stamp or phone call" (*id*. at 3) or "[l]ess than $1,000" (Dkt. 25, at 7). Once more, the CAFA inquiry looks to plaintiffs' complaint, not its post-removal assertion that plaintiffs seek damages under the CAFA floor. *See Arias*, 936 F.3d at 928 (noting "post-filing developments do not defeat jurisdiction" and finding plaintiff's stipulation that she sought less than $5 million was "irrelevant to CAFA analysis") (quotation marks omitted); *Standard Fire Ins. v. Knowles*, 568 U.S. 588, 590 (2013) (district court should "ignore" stipulation under AIC threshold when assessing AIC). And once again, the AIC question focuses on the maximum *possibility* of damages, not whether plaintiffs have offered a reasonable *post hoc* "reading" in an attempt to limit their own allegations (Dkt 25, at 6). *See Greene*, 965 F.3d at 771–73; *Arias*, 936 F.3d at 925.

**Third**, plaintiffs also assert that USC's AIC calculation improperly assumes a "100% violation rate." Dkt 25, at 7. Plaintiffs cite *Moore v. Dnata US Inflight*

*Catering LLC*, No. 20-cv-8028, 2021 WL 3033577 (N.D. Cal. 2021), a wage-and-hour case about employee waiting time penalties and wage statement claims. *Id.* at *1–2. There, the court found that the defendant could not assume a 100% violation rate because the complaint alleged that the employer violated the labor laws only "at times" and "on occasion," with "consistent[]" allegations that the violations "may have happened to only some of [defendant's] employees." *Id.* at *2 (quotation marks omitted). In other words, "the complaint's overarching allegations [were] of sporadic and intermittent practices." *Id.*

The wage-and-hour context is far removed from this case, and plaintiffs' overarching allegations are anything but "sporadic and intermittent" complaints. *Id.* USC is not *assuming* a 100% violation rate: it "look[s] to the complaint," *Greene*, 965 F.3d at 771, and takes its allegations at face value, *Campbell*, 471 F. App'x at 648. The complaint does *not* allege that its allegations apply only to some Jewish students or faculty—or that the alleged antisemitism was episodic. Just the opposite: Plaintiffs say that USC's Jewish students and faculty members—as a whole and without limitation—were subject to a "rei[g]n of terror," faced with "swastikas" and "severe and pervasive" antisemitism for "weeks on end" causing them emotional distress, fear, and anxiety. FAC ¶¶ 2–3, 5–6, 17. Similarly, plaintiffs complain of "endemic antisemitism" excluding "Jewish Students and Faculty members" from "their educational experience" at USC, requiring "institutional [and] far-reaching" measures. *Id.* ¶¶ 18–20. These are not sporadic wage-and-hour violations; plaintiffs claim (again, incorrectly) relentless antisemitism across the board.

To be clear, USC's calculation does *not* assume those allegations apply to every Jewish student and faculty member (*i.e.*, a true 100% violation rate). All the University assumes, reasonably, is that plaintiffs' own allegations apply to at least 100 Jewish students and faculty. That is the class size USC uses to calculate AIC

1  above.[4]  Of course, after removal, plaintiffs effectively attempt to withdraw their

2  allegations of "endemic" antisemitism, claiming that many Jewish students and

3  faculty members were not harmed or do not care about this case.  *See* Reznick Decl.

4  ¶ 2.  But backtracking in the face of removal is "irrelevant."  *Arias*, 936 F.3d at 928.

5  USC has demonstrated numerous independent routes to meeting CAFA's AIC

6  floor.  Plaintiffs do not, and cannot, overcome that showing.

7  **II.  PLAINTIFFS DO NOT SHOW ANY CAFA EXCEPTION APPLIES**

8  **A.  CAFA's "Narrow" Exceptions Require Plaintiffs to Show Two-Thirds of**

9  **the Class Members Are California Citizens**

10  Once USC has established CAFA subject matter jurisdiction, the burden flips

11  to plaintiffs to introduce evidence showing that one of CAFA's "narrow" exceptions

12  applies by a preponderance of the evidence.  *Kuxhausen*, 707 F.3d at 1140 n.1

13  (plaintiffs' burden); *Mondragon*, 736 F.3d at 883 (preponderance); *Benko*, 789 F.3d

14  at 1116 ("narrow").  In a brief section at the end of their motion, plaintiffs assert that

15  the Court should "decline to exercise jurisdiction under the 'home state' or 'local

16  controversy' exception" to CAFA.  Dkt. 25, at 8 (citing 28 U.S.C. § 1332(d)(4)).

17  Section 1332(d)(4) articulates two separate tests.  *See* § 1332(d)(4)(A), (B).  If

18  a plaintiff shows that either is satisfied, a court "shall decline" to exercise CAFA

19  jurisdiction.  *Id*.  Both tests, however, share a requirement: A plaintiff seeking remand

20  must show that "greater than two-thirds of the members of all proposed plaintiff

21  classes in the aggregate are citizens of [California]."  § 1332(d)(4)(A)(i)(I);

22  § 1332(d)(4)(B); *see also* Dkt. 25, at 8.  In other words, the § 1332(d)(4) exceptions

23  invoked by plaintiffs apply *only* if they "demonstrate by a preponderance of the

24

25  [4] The other case plaintiffs cite, *Anderson v. Starbucks Corp*., 556 F. Supp. 3d

26  1132 (N.D. Cal. 2020), is much closer to this case.  There, the court found CAFA's

27  AIC satisfied and rejected remand because the plaintiffs alleged that Starbucks expected its managers, as a general matter, to use their cell phones for work, but had

28  a policy to not reimburse them for their cell phone charges.  *Id.* at 1137–38.

evidence that . . . at least two thirds of proposed class members in aggregate are California citizens" as of the date of removal. *Jones v. Tonal Sys., Inc.*, No. 23-cv-1267, 2024 WL 400182, at *1 (S.D. Cal. 2024); *see Mondragon*, 736 F.3d at 883.[5] Here, however, plaintiffs fail to make any showing whatsoever concerning citizenship of the absent class members.

## B. Plaintiffs Cannot Meet Their Burden Because They Present No Evidence That Two-Thirds of the Class Members Are California Citizens

Plaintiffs' class consists of USC's Jewish students and faculty. *E.g.*, FAC ¶ 61. Plaintiffs concede, as they must, that the class contains both California citizens and non-California citizens. *See* Dkt. 25, at 8–10. Accordingly, it is plaintiffs' affirmative burden to put "*facts in evidence* from which the district court may make findings regarding class members' citizenship" to demonstrate that a CAFA exception applies. *Mondragon*, 736 F.3d at 885 (reversing remand and finding plaintiff "failed to satisfy his burden of proof" where he "fail[ed] to produce any evidence regarding citizenship" of the absent class members) (emphasis added).

Plaintiffs devote just a single sentence to meeting this burden. Plaintiffs assert, citing nothing, that "it is more reasonable than not to assume that at least two-thirds of the Jewish Professor class members and Jewish Students are in fact residents of the State of California." Dkt. 25, at 9. Plaintiffs make no attempt whatsoever to establish

---

[5] Once more, it is *plaintiffs'* "obligation to raise and prove" that a CAFA exception applies. *Kuxhausen*, 707 F.3d at 1140 n.1. Here, plaintiffs raise only the "mandatory" exceptions to CAFA jurisdiction. Plaintiffs do not raise any other CAFA exception and have not attempted to meet the elements of the statutory balancing test permitting discretionary abstention. *See* 28 U.S.C. § 1332(d)(3); *see also Hicks v. Grimmway Enters., Inc.*, No. 22-cv-2038, 2023 WL 3319362, at *11 (S.D. Cal. 2023). That "discretionary home-state exception" is not at issue here. *See* Dkt. 25 at 8–10. In any event, it would fail for the same reason as the mandatory exceptions: plaintiffs have not shown the citizenship of *any* absent members of the putative class. *See Grimmway*, 2023 WL 3319362, at *11 (denying remand where no CAFA exception could apply because plaintiff made no showing concerning citizenship of absent class members).

the citizenship of any absent class member, and cite no evidence concerning any absent class member's citizenship.[6]    In other words, plaintiffs offer only an assumption about the class members' citizenship, relying on nothing more than their class definition.

The Ninth Circuit has explicitly rejected plaintiffs' approach *twice*.

***First***, in *Mondragon*, the Ninth Circuit considered a putative class of consumers who purchased and registered cars in California.   736 F.3d at 883. Attempting to show that two-thirds of the class members are California citizens, the plaintiff "rel[ied] entirely on his proposed class definitions, arguing that the court should infer from those definitions that more than two-thirds of the class members were citizens of California." *Id.* at 882.  The Ninth Circuit noted that the plaintiff's requested inference from the class definition was "understandable" and even "likely." *Id.* at 884.  But the court then presented a series of hypothetical people who met the class definition but were not California citizens, including "out-of-state students" and "other temporary residents who maintained legal citizenship in other states," as well as "persons who live in California but are not U.S. citizens." *Id.*[7]

The Ninth Circuit held that mere conjecture of the likely citizenship of the class was insufficient:  a plaintiff must affirmatively put "facts in evidence from which [a district court] may make findings regarding class members' citizenship for purposes of CAFA's local controversy exception." *Id*.  Without such facts and evidence, the court explained, it was simply "guesswork" as to what percentage of the class was California citizens, and "[a] jurisdictional finding of fact should be based on more than guesswork." *Id*.  Ultimately, the court refused to apply the local controversy

---

[6] The only known citizenships of any absent class members are: (i) the Guatemala citizen and (ii) the student from New York, as reflected in the Chang Declaration.  *See* Chang Decl. ¶ 4.

[7] For CAFA jurisdiction purposes, a class member cannot be a California citizen without also being a U.S. citizen.  *See King*, 903 F.3d at 879.

exception because "[t]here is simply no evidence in the record to support a finding that the group of citizens outnumbers the group of non-citizens by more than two to one." *Id*.

**Second**, in *King*, the Ninth Circuit reprised its analysis in *Mondragon*. *King*, 903 F.3d at 877–80. There, the class consisted of employees "in the State of California" who worked at the defendant's fast food restaurants. *Id.* at 876. The parties stipulated that "at least two-thirds of the putative class members had last-known addresses in California." *Id.* at 879. Still, the Ninth Circuit found that stipulation insufficient for the plaintiff to meet her burden to show that two-thirds of the class were California citizens. *Id.* at 879–80. As in *Mondragon*, the court emphasized that the class definition encompassed non-California citizens like "out-of-state student[s] working while attending college in California" and foreign citizens living in California. *Id.* at 879. The court conceded that the "impression" that two-thirds of the class was California citizens was "easy to understand," for a number of reasons, including that "[j]obs at fast food restaurants are not likely to attract employees commuting great distances." *Id.* at 880. But "[t]he problem is that this impression rests on guesswork," and "[t]here was no evidence to support a factual finding that the proportion of California citizens was greater than two-thirds." *Id.*

That is precisely the problem here: Plaintiffs present *no evidence* whatsoever as to the citizenship of any of the absent class members—let alone evidence that would allow the Court to find that California citizens outnumber non-California citizens two-to-one. Plaintiffs' class clearly includes "out-of-state student[s] . . . attending college in California" and foreign citizens living in California. *Id.* at 879. Plaintiffs' conclusory guess is insufficient for this Court to make any findings about the aggregate class citizenship. Thus, the exceptions invoked by plaintiffs cannot be applied. *Mondragon*, 736 F.3d at 884; *Grimmway*, 2023 WL 3319362, at *11–12 (rejecting survey data that pertained to California residents as a whole, not the class itself, which consisted of both California and non-California citizens); *Jones*, 2024

WL 400182, at *2 (inference that purchasers of product who communicated with defendant from California were also California citizens was "guesswork" without evidence).

**CONCLUSION**

The Court should deny plaintiffs' motion to remand this case to state court.[8]

Dated: August 16, 2024              Respectfully submitted,

JONES DAY

By: */s/ Rasha Gerges Shields*
      Rasha Gerges Shields

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

---

[8] Plaintiffs do not request jurisdictional discovery. That is likely because they know it would be futile. The vast majority of USC students have not reported their religious affiliation to the Registrar, and USC has no other systematic data concerning religious affiliations for its students. *See* Chang Decl. ¶¶ 3–5; *Grimmway*, 2023 WL 3319362, at *14–15 ("jurisdictional determinations should be made largely on the basis of readily available information") (quotation marks omitted); *Jones*, 2024 WL 400182, at *4 (rejecting jurisdictional discovery because the result would invite the court to "guess" about whether it demonstrates the domiciles of absent class members).

1

**CERTIFICATE OF COMPLIANCE**

2     The undersigned, counsel of record for Defendant University of Southern

3  California, certifies that this brief contains 6983 words, which complies with the word

4  limit of L.R. 11-6.1 and Standing Order 6(c).

5

6  Dated: August 16, 2024                Respectfully submitted,

7

8                                        JONES DAY

9

10                                       By: */s/ Rasha Gerges Shields*
                                             Rasha Gerges Shields
11

12                                       Attorneys for Defendant
                                         UNIVERSITY OF SOUTHERN
13                                       CALIFORNIA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT USC'S OPPOSITION TO MOTION TO REMAND