Rasha Gerges Shields (Cal. Bar No. 218248)
rgergesshields@jonesday.com
Tyler J. Scott (Cal. Bar No. 341039)
tscott@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: +1.213.243.2719
Facsimile: +1.213.243.2539

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE JEWISH USC FACULTY MEMBER 2004 and DOE JEWISH USC STUDENT 1987, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>Trustees of THE UNIVERSITY OF SOUTHERN CALIFORNIA, a private public benefit corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:24-cv-05712 FLA (SSC)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' SECOND *EX PARTE* APPLICATION**<br><br>**[NO HEARING SET]**<br><br>**Judge:   The Honorable Fernando L. Aenlle-Rocha** |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

I.    PROCEDURAL BACKGROUND ................................................................... 2

II.   THE COURT SHOULD DENY THE *EX PARTE* APPLICATION ............... 4

III.  THE PROPOSED OPPOSITION IS FUTILE .................................................. 6

IV.  THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO FILE ANOTHER AMENDED COMPLAINT ......................................................... 9

CONCLUSION ........................................................................................................... 10

CERTIFICATE OF COMPLIANCE ......................................................................... 12

# INTRODUCTION

Two Jewish plaintiffs filed this case against defendant University of Southern California ("USC" or the "University") following recent campus protests over the Israel-Hamas war. Plaintiffs allege violations of the Bane, Unruh, and Ralph Acts, as well as tort and breach of contract claims.

On July 15, 2024, within one week of removing the case to this Court, USC moved to dismiss plaintiffs' complaint with prejudice in its entirety because all of plaintiffs' claims fail as a matter of law. Dkt. 10. The parties (and Court) agreed to continue the hearing on that motion until September 20, 2024. That gave plaintiffs an additional month to respond to the motion. But plaintiffs did not oppose the motion by the deadline of August 30, 2024. USC properly filed a reply brief in support of its motion on September 6, explaining that plaintiffs had filed no opposition. The hearing remains scheduled for September 20.

Plaintiffs have now filed an *ex parte* application, asking the Court to excuse plaintiffs' failure to oppose USC's Motion to Dismiss because their counsel "mis-calendar[ed] the due date." Dkt. 35, at 3. Plaintiffs ask the Court to accept a proposed opposition brief attached to their application (the "Proposed Opposition") and to push back the long-scheduled hearing on the Motion to Dismiss. *Id.* at 2. "In the alternative," Plaintiffs ask for leave to amend their complaint. *Id.*[1]

The Court should deny the *ex parte* application in its entirety. USC filed the Motion nearly three months ago, the hearing is imminent, and plaintiffs had ample time to oppose the Motion. Simply missing deadlines after so much time is not "good cause."[2] *See, e.g.*, *LaNier v. United States*, No. 15CV360-BAS(BLM), 2017 WL

---

[1] Plaintiffs filed their first *ex parte* application on September 10. Dkt. 31. USC opposed it within 24 hours. Dkt. 32. The Court then struck that application. Dkts. 33-34. Plaintiffs then re-filed it as their second application. Dkt. 35. The substance of plaintiffs' two applications are identical – the second only adds a proposed order.

[2] Plaintiffs claim "Defendant's counsel has not indicated whether she will (footnote continued)

1
DEFENDANT USC'S OPPOSITION TO PLAINTIFFS' SECOND *EX PARTE* APPLICATION

951040, at *4 (S.D. Cal. 2017) ("Plaintiff's other proffered reason for missing the deadline, that he simply forgot there was a deadline, also fails to demonstrate reasonable diligence."). And plaintiffs make no attempt to establish excusable neglect. *E.g.*, Fed. R. Civ. P. 6(b)(1)(B) (stating "the court may, for good cause, extend the time on motion made after the time has expired *if the party failed to act because of excusable neglect*.") (emphasis added); *Mireles v. Paragon Sys., Inc.*, No. 13-CV-122-L, 2014 WL 575713, at *2 (S.D. Cal. 2014).

Even if the Court were to accept the Proposed Opposition, it is futile. The Proposed Opposition ignores—and thus concedes—numerous dispositive flaws in the operative complaint raised by USC. In the few instances where it purports to address USC's arguments, it simply summarizes the operative complaint's inadequate allegations and declares them sufficient. The Court should grant USC's Motion.

Finally, the Court should deny plaintiffs' request to file a third complaint in this case. Plaintiffs claim they can allege that USC had the intent to violate plaintiffs' civil rights, but do not explain what allegations they would add, why those allegations would help state a claim, or why they left those allegations out of their first two complaints. To avoid remand, plaintiffs also want to narrow their class definition from all Jewish students and faculty at USC to only a subset of that group. But as USC has explained twice before, and explains again below, plaintiffs cannot avoid federal court by changing their class definition.

I.   **PROCEDURAL BACKGROUND**

Plaintiffs filed their original complaint on May 15, 2024 and their amended

---

oppose" the application. Dkt. 31, at 2. That is incorrect. Eight hours before plaintiffs filed the original *ex parte* application, USC informed plaintiffs that it would not agree to their requested stipulations. *See* Ex. A. Plaintiffs repeat this language in their re-filed second application, even though USC filed an opposition to the first application. Further, Plaintiffs' "notice" of their application was woefully deficient; it sought stipulations to avoid an application but provided no information about when or whether an application would be filed.

complaint on June 5, 2024 in state court. *See* Dkt. 1. Plaintiffs assert claims for violations of the Bane, Unruh and Ralph Acts (Counts I-III), and they allege that USC aided and abetted intentional torts for assault and battery (Counts VI and VII). Plaintiffs also bring claims for negligence (Count IV), breach of contract (Count V*)*, a "declaration" (Count VIII), and an "injunction" (Count IX).

The parties met and conferred about the grounds for USC's Motion to Dismiss on July 3, 2024. *See* Dkt. 10 at Notice. After removal, USC filed the Motion to Dismiss on July 15, 2024. *Id.* On July 19, 2024, the parties stipulated to move the hearing on USC's Motion to Dismiss to September 20, 2024. *See* Dkt. 14. A few days later, the Court entered that stipulation and set the hearing for September 20. *See* Dkt. 16. This schedule made plaintiffs' opposition due on August 30, 2024 (*see* C.D. Cal. L.R. 7-9) and gave plaintiffs an additional month to respond to the motion to dismiss. The same day the opposition was due—August 30—the Court entered an order in connection with plaintiffs' remand motion that reminded the parties that it "expects the parties to continue litigating this action diligently." Dkt. 28.

August 30 came and went with nothing from plaintiffs. On September 6, 2024, USC submitted its reply in support of the Motion to Dismiss, demonstrating that the Motion to Dismiss should be considered fully briefed and that the Ninth Circuit is clear that dismissal with prejudice in the instant circumstances is well within the Court's authority. *See* Dkt. 29. Plaintiffs do not contest the district court's authority to dismiss the complaint with prejudice in accordance with the local rules and background principles of forfeiture. *See* Dkt. 35.

On September 6, 2024, counsel for plaintiffs, Mr. Reznick, emailed USC's counsel and said he "mis-calendared [his] clients' response time" on the Motion to Dismiss and asserted that he "was not aware that [his] clients' opposition in fact was due until [USC's] reply papers were received via ECF today." *See* Ex. A. Plaintiffs asked for USC to stipulate to the relief that plaintiffs seek in this application by September 9, 2024. *Id.* On September 9, USC declined, noting the Motion to Dismiss

3

has been pending for a long time, the fees USC spent already to prepare its reply, and the prejudice to USC from continuing the hearing yet again. *Id.*

Plaintiffs filed their first *ex parte* application on September 10 at 1:17am. Dkt. 31. The Proposed Opposition appears as both part of that application (*see id*. at Ex. A) and as a standalone docket entry (*see* Dkt. 30). Plaintiffs also filed a declaration from Mr. Reznick, where he states that he is "counsel of record for Plaintiffs," and that he "was solely responsible for filing a late opposition to Defendant's motion to dismiss as a result of mis-calendaring the due date." Dkt. 31, at 4. USC immediately opposed it. Dkt. 32. After the Court struck that first application (*see* Dkts. 33-34), plaintiffs refiled the same document as their second application, this time with a proposed order. Dkt. 35. USC now re-files this opposition.

## II.   THE COURT SHOULD DENY THE *EX PARTE* APPLICATION

Plaintiffs fail to meet their burden to show good cause and excusable neglect to extend a deadline already passed. *See Mireles*, 2014 WL 575713, at *2; Fed. R. Civ. P. 6(b)(1)(B); *see also* Initial Standing Order, Dkt. 8, at 17 ("A request to continue . . . deadlines that have already expired constitutes a presumptive lack of due diligence."). There is no good cause: plaintiffs fail to satisfy the stringent standard for obtaining *ex parte* relief under the Court's Initial Standing Order (Dkt. 8), and *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995). And plaintiffs say nothing about excusable neglect – that is reason alone to deny the application.

**No good cause exists to grant the *ex parte* application.** The Court's Standing Order provides that *ex parte* applications are "solely for extraordinary relief and should be used with discretion." *See* Initial Standing Order, Dkt. 8, at 15. And to justify *ex parte* relief: plaintiffs must establish (i) "that [plaintiffs'] cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (ii) "[plaintiffs are] without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect."

4

*Mission Power Eng'g*, 883 F. Supp. at 492; *see also In re Intermagnetics America, Inc.*, 101 B.R. 191 (C.D. Cal. 1989) ("*[E]x parte* applications are not intended to save the day for parties who have failed to present requests when they should have . . . ."). Plaintiffs cannot meet this burden.

A "mis-calendaring" mistake under these circumstances is not good cause. Plaintiffs did not file late; they simply missed the deadline (and not by minutes or hours, but by days). In fact, Mr. Reznick was not even aware that he missed the deadline until USC filed its reply. *See* Ex. A. Mr. Reznick states in his declaration that he was "solely responsible for filing a late opposition to Defendant's motion to dismiss" (Dkt. 35, at 4), but Mr. Reznick has been suspended from practice in the Central District of California. *See In re Michael Reznick*, No. 2:23-ad-1 PSG (C.D. Cal. May 8, 2023) at Dkt. 7 (Order of Suspension following reciprocal disciplinary review by the Central District of California); *see also In re Disciplinary Proceeding of Michael E. Reznick*, No. 2:22-mp-104-BB (Bankr. C.D. Cal. Dec. 29, 2022) at Dkt. 27. A mistake by counsel who is "solely responsible" for preparing a brief but who has been suspended from practice before this Court cannot be "good cause."[3]

The Court has reminded the litigants that it "expects the parties to continue litigating this action diligently." Dkt. 28. Plaintiffs have not followed the local rules or the Court's directive and their purported "emergency" is self-created.

**Plaintiffs make no attempt to show excusable neglect**. Plaintiffs had more than enough time to file their reply but simply failed to do so. USC filed its Motion to Dismiss within seven days of removal and the motion has been pending for eight

---

[3] Plaintiffs' filings with this Court, including the *ex parte* application, are signed by Bryan Christopher Castaneda. However, Mr. Reznick has now filed two declarations with this Court suggesting he is the counsel who is actually representing plaintiffs in this action. *See* Dkt. 17 (detailing his struggle to find plaintiffs to bring these claims against USC); Dkt. 35, at 4 (he is "solely responsible" for filing a late opposition to USC's Motion to Dismiss). The application is silent as to why Mr. Castaneda did not timely file an opposition to USC's Motion.

weeks now. Dkt. 10. Plaintiffs seem to blame their mistake on other pending issues (*see* Dkt. 35 at ¶ 2), but concede that they stipulated to the September 20, 2024 hearing date on USC's Motion (*id.*). That gave them an extra month to respond to the Motion to Dismiss, and calculation of briefing schedules is straightforward. Plaintiffs do not attempt to show excusable neglect—in fact, they negate any such finding by conceding it was a calendaring mistake. And now, USC has incurred more fees in preparing another brief in light of plaintiffs' failure. USC respectfully requests the Court award USC the fees for both briefs. *See* Initial Standing Order, Dkt. 8 at 15 ("Sanctions may be imposed for misuse of *ex parte* applications.").

### III.   THE PROPOSED OPPOSITION IS FUTILE

In its Motion, USC showed that all of plaintiffs' claims fail for multiple reasons, and that its class allegations should be struck. *See* Dkt. 10. The Proposed Opposition focuses on whether plaintiffs have plausibly alleged the specific intent required for their civil rights claims and their aiding-and-abetting theory for the intentional torts. *See* Dkt. 30, at 1–3. The Proposed Opposition ignores entirely—and therefore concedes—the remaining dispositive reasons for dismissing many of the claims. USC addresses each of plaintiffs' claims in turn, replying to plaintiffs' arguments where applicable and noting the dispositive flaws plaintiffs do not address.

**Civil Rights and Intentional Tort Claims.** USC's Motion to Dismiss established that to state a claim under the Bane, Unruh, and Ralph Acts, or that USC "aided and abetted" an assault or battery, plaintiffs must plausibly allege that USC had a specific wrongful intent to harm or discriminate against these plaintiffs. Dkt. 10, at 7–13 (reviewing the caselaw). Plaintiffs now concede that they must meet that high bar and argue that they have met it. *See* Dkt. 30, at 1–2. Plaintiffs are wrong.

In its Motion to Dismiss, USC showed that plaintiffs' allegations specific to these two plaintiffs are limited to: (i) questions asked by protestors and "heckling" that was ignored; (ii) viewing posters supporting USC's valedictorian; (iii) invitations to join protests; and (iv) one unreported incident where a protestor spat on the faculty

member. Dkt. 10, at 3–4. Plaintiffs have no allegations that USC intended for any of the unnamed "campus terrorists" to say anything specific to **these two plaintiffs** or do anything specific to **these two plaintiffs**. *Id.* at 3–4, 9. Plaintiffs do not allege that USC knew that these specific incidents involving these two plaintiffs occurred (or even that the protestors knew plaintiffs are Jewish). *Id.*

As USC demonstrated, plaintiffs cannot allege that USC had the specific intent using generic and conclusory allegations about what other students or faculty said or did to other people (or unconnected allegations about the "Soros Foundation," the "Hamas-supporting Biden Administration," "DEI quotas," and unrelated investigations). *Id.* at 9–13. Yet in the Proposed Opposition, plaintiffs simply repeat that error. They gesture at general and conclusory allegations disconnected from these specific plaintiffs. Dkt. 35, at 2 (arguing that it is sufficient to simply allege "USC *intentionally and purposefully* aided, abetted, encouraged, facilitated and enabled a mob of pro-Hamas terrorist students and outside agitators to take over and operate its campus.") (emphasis by plaintiffs). They similarly assert in the Proposed Opposition that "USC aided and abetted the Campus Terrorists" through its "long-stating policies and procedures"—never mind telling the Court *what* these policies were or even bothering to identify a particular allegation in the complaint. *Id*. A conclusory response to USC's Motion to Dismiss cannot and does not save plaintiffs' conclusory and implausible allegations. Dkt. 10, at 9–13.

Moreover, plaintiffs say nothing about the other independent and dispositive reasons for why their complaint fails. That is enough for dismissal with prejudice. *E.g.*, *Rintoul v. Old Dominion Freight Line, Inc.*, No. 3:21-CV-1733-JR, 2024 WL 2974469, at *2 (D. Or. June 13, 2024) ("[F]ailure to respond to an argument on its merits is grounds for deeming that argument abandoned or conceded."); *Ramirez v. Ghilotti Bros.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases).

Plaintiffs, for instance, do not respond to the following arguments:

- Plaintiffs do not identify, as the Bane Act requires, any particular

7

DEFENDANT USC'S OPPOSITION TO PLAINTIFFS' SECOND *EX PARTE* APPLICATION

constitutional/statutory right that USC supposedly violated. Dkt. 10, at 13.

- The Student Plaintiff fails to allege any Bane Act threat of violence. *Id*.
- The Faculty Plaintiff cannot make out a Bane Act "threats" claim. *Id*.
- The Unruh Act does not apply to the Faculty Plaintiff's allegations because it does not provide relief in the employer-employee context. *Id*.
- The Student Plaintiff's Unruh Act claim fails because the allegations do not show a denial of full and equal access on the basis of religion. *Id*. at 14.
- The Student Plaintiff's Ralph Act allegations do not show an objectively reasonable perception of bias, and neither plaintiff's allegations show that they were discriminated against *because of* religion. *Id*. at 14–15.
- The Faculty Plaintiff's intentional tort claims are barred by California's workers compensation exclusivity. *Id*. at 15–16.

**Negligence, Contract, and Other Claims.** USC's Motion to Dismiss similarly established that plaintiffs' negligence, breach of contract, "declaration," and "injunction" claims must be dismissed. Plaintiffs offer *no argument* to the contrary, asserting merely that, "[t]he allegations in the FAC also assert valid common law claims" and "Plaintiffs have alleged . . . the factual elements of proof needed to establish each claim." That is not argument, and it is insufficient to demonstrate why plaintiffs' claims may proceed. *E.g.*, *Rintoul*, 2024 WL 2974469, at *2; *Ramirez v. Ghilotti Bros.*, 941 F. Supp. 2d at 1210 & n.7. For example, plaintiffs fail to respond to the following arguments:

- The Faculty Plaintiff's negligence claim is preempted by workers' compensation exclusivity. Dkt. 10, at 15–16.
- The Student Plaintiff does not show the special relationship necessary to impose negligent infliction of emotional distress liability under California law. *Id.* at 16–17. In addition, the Student Plaintiff has not shown the necessary harm, or that the University has a duty to shield students from harmful or offensive ideas. *Id.*

8

- The plaintiffs have not alleged a contract with definite terms, nor have they demonstrated breach or contract damages. *Id.* at 17–18.

- Claims for an injunction or declaration are not freestanding. *Id.* at 18–19.

In sum, USC has explained why plaintiffs' claims must be dismissed. In turn, plaintiffs (i) parrot their inadequate allegations, and (ii) fail to respond to multiple dispositive arguments advanced by USC. That is insufficient to avoid dismissal.[4]

## IV. THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO FILE ANOTHER AMENDED COMPLAINT

In the application, plaintiffs claim their allegations are sufficient but request "in the alternative" leave to file an amended complaint—their third—in order (i) to narrow their class definition "to California citizens" and (ii) to "cure any other substantive or procedural defects," including "the intent that the Court finds wanting." Dkt. 35, at 2, 5. The Court should not permit another amendment for either reason.

First, plaintiffs' counsel is candid about why he wants to narrow the class definition: his declaration states that he wants to "negat[e] even 'minimal' diversity" under CAFA to deprive the Court of subject matter jurisdiction. Dkt 35, at 4. As USC showed twice in the briefing on plaintiffs' remand motion, plaintiffs cannot re-define or shrink the class after removal to avoid federal jurisdiction. *See* Dkt. 21; *Ibarra v. Manheim Invs. Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (CAFA jurisdiction is evaluated at the time of removal); *accord Louisiana v. Am. Nat. Prop. Cas. Co.*, 746 F.3d 633, 639 (5th Cir. 20214) ("[e]very circuit that has addressed the question has held that post-removal events do not oust CAFA jurisdiction" and collecting cases). Plaintiffs' proposed new class definition cannot defeat CAFA jurisdiction. And it does not cure the class certification problems identified by USC.

Second, the Court has discretion to deny leave where plaintiffs "did not propose

---

[4] Plaintiffs direct just one sentence in the Proposed Opposition to the request in USC's Motion to Dismiss to strike the class allegations. *See* Dkt. 30, at 4. That sentence does not address the substance of USC's arguments.

any new facts or legal theories for an amended complaint and therefore gave the [district court] no basis to allow an amendment." *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (district court did not abuse discretion where plaintiffs "did not explain how they would cure the deficiencies" in the existing complaint); *see also San Francisco Patrol Special Police Officers v. City and Cty. Of San Francisco*, 13 Fed.Appx. 670, 675 (9th Cir. 2001) (affirming district court denial of leave to amend where the "opposition to the defendants' motion to dismiss includes only a cursory discussion of what the proposed amended complaint would allege"). A district court's "discretion to deny such leave [to amend] is particularly broad when"—as here—"the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (cleaned up).

Plaintiffs do not attach a proposed amended complaint. Plaintiffs say **nothing** in the Proposed Opposition about what they would add in a third complaint or why it was not alleged before. Nor do they explain why any new allegations would make a difference or overcome the numerous dispositive flaws that plaintiffs do not bother to address in the Proposed Opposition. *See Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012) ("[A] party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile."). This failure is particularly glaring in these circumstances because plaintiffs have first-hand knowledge of what happened to them—if they had more facts to support their claims, they should have already provided them in the operative complaint (or the complaint before that). *C.f. In re Blue Earth*, 836 Fed. Appx. 564, 566 (9th Cir. 2020) (affirming denial of leave to amend when facts were available to plaintiffs); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (affirming denial of leave to amend "since it was clear that the plaintiffs had made their best case and had been found wanting.").

## CONCLUSION

For these reasons, the Court should deny plaintiffs' *ex parte* application and the parties should proceed to the hearing on USC's Motion to Dismiss as scheduled.

Dated: September 12, 2024

Respectfully submitted,

JONES DAY

By: */s/ Rasha Gerges Shields*
    Rasha Gerges Shields

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant University of Southern California, certifies that this brief contains 3,551 words, which complies with the word limit of L.R. 11-6.1 and Standing Order 6(c).

Dated: September 12, 2024                    Respectfully submitted,

JONES DAY

By: */s/ Rasha Gerges Shields*
    Rasha Gerges Shields

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

# Exhibit A

## Shields, Rasha G.

| | |
|---|---|
| **From:** | Shields, Rasha G. |
| **Sent:** | Monday, September 9, 2024 5:32 PM |
| **To:** | Reznagoura |
| **Cc:** | Bryan Christopher Castaneda; Scott, Tyler J. |
| **Subject:** | RE: Meet and Confer - Request to Stipulate to Continue MTD Hearing to Avoid Ex Parte Application |

Dear Michael,

Thank you for your email. USC has already expended substantial time and fees complying with the court's current schedule, which included having to file a motion to dismiss within one week of removal. The motion to dismiss has now been pending for several weeks, and we have also had to draft and file a reply brief. Further delays and changes to the schedule at this point would prejudice USC. Accordingly, we cannot agree to your proposed stipulations.

Thank you,

Rasha Gerges Shields (bio)
Partner
**JONES DAY® - One Firm Worldwide℠**
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Office: +1.213.243.2719
Email: rgergesshields@jonesday.com

---

**From:** Reznagoura <reznagoura@aol.com>
**Sent:** Friday, September 6, 2024 3:18 PM
**To:** Shields, Rasha G. <rgergesshields@jonesday.com>
**Cc:** Bryan Christopher Castaneda <bryanchristophercastaneda@gmail.com>
**Subject:** Meet and Confer - Request to Stipulate to Continue MTD Hearing to Avoid Ex Parte Application

> **This Message Is From an External Sender**
>
> If you are concerned about the message's content, highlight the email in your inbox and click "Report Suspicious" in the Outlook ribbon -or- contact 6Help.

Dear Rasha:

Please be advised that with the flurry of remand OSCs, motions and replies, I mis-calendared my clients' response time on your MTD after we entered into the stipulation and order thereon to continue the hearing in light of the pending OSC. I was not aware that my clients' opposition in fact was due until your reply papers were received via ECF today.

To avoid filing an ex parte application for leave to file a late opposition, please let me know if you will stipulate to allow my clients to file a late opposition and/or stipulate to continue the hearing (subject to consent by the court) so that a proper opposition can be filed.

Please let me know by the close of business on Monday, September 9, 2024.

Alternatively, please let me know if your client will stipulate to an amended Complaint that alleges the extant claims but limits the Plaintiffs to California Jewish Students and Faculty Members harmed by the alleged USC actions and inactions.

Thank you in advance for your professional courtesy and cooperation.

**LAW OFFICES OF MICHAEL E. REZNICK**
**A PROFESSIONAL CORPORATION**
**LOS ANGELES • NEW YORK • CHICAGO**

283 Ocho Rios Way
Oak Park, California 91377

21700 Oxnard Street, Suite 1160
Warner Center, California 91367

295 Madison Ave., 12th Floor
New York, New York 10017

40 E. Chicago Ave., Suite 386
Chicago, Illinois 60611-2026

Tel:     818.888.5900
Fax:    818.888.5947
Cell:    818.437.5630

www.MichaelReznickLaw.com