Bryan Christopher Castenada, Esq. State Bar No. 275095
LAW OFFICES OF MICHAEL E. REZNICK
A Professional Corporation
283 Ocho Rios Way
Oak Park, California 91377-5540
Tel: (818) 437-5630
Email: reznagoura@aol.com

Attorney for Plaintiffs DOE JEWISH USC FACULTY
MEMBER 2004 and DOE JEWISH USC STUDENT
1987, Individually And On Behalf Of All Others
Similarly Situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE JEWISH USC FACULTY MEMBER 2004 and DOE JEWISH USC STUDENT 1987, Individually And On Behalf Of All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>Trustees of THE UNIVERSITY OF SOUTHERN CALIFORNIA ("USC"), a private benefit corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | **CASE NO.: 2:24-cv-05712-FLA- (SSCx)**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF FOR:**<br><br>1) **VIOLATION OF THE BANE ACT [California Civil Code section 52.1]**<br>2) **VIOLATION OF THE UNRUH ACT [California Civil Code section 51]**<br>3) **VIOLATION OF THE RALPH ACT [California Civil Code section 51.7]**<br>4) **NEGLIGENCE**<br>5) **BREACH OF CONTRACT**<br>6) **ASSAULT**<br>7) **BATTERY**<br>8) **DECLARATORY RELIEF**<br>9) **INJUNCTIVE RELIEF** |

Plaintiffs DOE JEWISH FACULTY MEMBER 2004 and DOE JEWISH USC

STUDENT 1987, individually and on behalf of all others similarly situated, for their complaint

against defendants TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA

("USC"), a private public benefit corporation, and DOES 1 through 100, allege as follows:

INTRODUCTION AND FACTS RELEVANT TO ALL CAUSES OF ACTION

1.      In the Spring of 2024 -- fearful of demonstrations sprouting up at other campuses, repercussions from "diversity and equity" leaders and the cutting off of university funding by the Hamas-supporting Biden Administration -- the Trustees of the University of Southern California ("USC"), (collectively "Defendant University") invited, encouraged, aided, abetted, permitted, allowed, and subsequently appeased, enabled and negotiated with violent, sword and other weapon-wielding, Jew-hating Hamas-supporting campus terrorists antisemites (the "Campus Terrorists") who infiltrated and overtook its Los Angeles campus (the "Encampment"), setting up tents and occupying USC property under the Defendant University's watchful eyes.

2.      The Campus Terrorists' intent and the avowed purpose of the Encampment – clear to most reasonable persons with common sense - was to create and sow division through acts of disruption, chaos and dissension on the Defendant University's campus.  Among other things, the Campus Terrorists sought to and in fact did disrupt classes, overtook University buildings and property, and most importantly, terrorized and victimized blameless Jewish Students and Faculty in a rein of terror under the hoax, guise, and "cover" of engaging in peaceful protests to support fictitious victims of the Israeli government's alleged "Palestinian Genocide."  The hoax was enabled by and perpetrated under the Defendant University's watchful eyes to such an extent that Plaintiffs, Jewish Students and Jewish Professors and Faculty were so fearful for their lives and safety that they could not appear in the Defendant University's "town square" or anywhere else on campus without being verbally or physically assaulted by the Campus Terrorists, as well as the Campus Terrorists' student supporters lulled in by the false sense of security afforded to them by the Defendant University's "appeasement" policy of coddling the Campus Terrorists.  Plaintiffs, Jewish Students and Jewish Professors and Faculty were touched without their consent and spat on by the Campus Terrorists if they dared to cross into the Encampment.  Their fear was and still is genuine and palpable.  The fear was and is made worse by the Defendant University's

2

encouragement of the offensive conduct for weeks on end before finally taking steps of remediation.

3.      Alternatively, Plaintiffs, Jewish Students and Jewish Professors and Faculty were told by the Defendant University to work remotely from home, or remain in their offices or dorms for their "own safety." Classes and commencement exercises were cancelled as the Defendant University continued to appease, coddle and negotiate with the Campus Terrorists. Jewish Students and Jewish Professors and Faculty (including the Plaintiffs herein) were not allowed to attend classes as usual or give lectures or grade papers on site and could not walk safely to class or their offices on campus without being assaulted and accosted by the Campus Terrorists. (See You Tube video of "Anti-Israel protesters" blocking Jewish students from getting to class at **UCLA** Campus) (but an accurate depiction of what the Campus Terrorists did to Plaintiffs herein during their siege prior to LAPD's removal of the Encampment and are still doing to Jewish Professor and other Jewish Faculty members). Among other things, the Campus Terrorists demanded and are still demanding suitable answers to the question, "Are you a Zionist?" before allowing Plaintiffs passage or access to common areas on USC's Campus, all under the watchful eyes of the Defendant University. (https://www.yahoo.com/news/zionist-checkpoints-ucla-encampment-provoked-113331619.html; https://www.youtu.be/v7ibgdWRMkg; https://www.yutu.be/G8YdzrM). Meanwhile, other Hamas-leaning and supporting faculty members hired by Defendant University to abide by DEI quotas continued to encourage students attending classes to participate in the chaos and disruption created by the Campus Terrorists by offering such students extra credit and better grades for participating, all with the knowledge and consent of the Defendant University. Plaintiffs, Jewish Students and Jewish Professors and Faculty are regularly exposed to pro-Hamas propaganda and posters "calling all students, faculty and staff" to attend pro-Hamas rallies on USC Campus property, such as Bovard Hall. These

pro-Hamas rallies, endangering Plaintiffs, Jewish Students and Jewish Professors and Faculty, are encouraged by and acquiesced to by Defendant University.

4.      At all times herein mentioned, the Defendant University also knew or should have known that nearly half of the Campus Terrorists creating, managing and equipping the Encampment and causing the harm to Jewish Students and Faculty, creating the chaos and disruption and overtaking the Defendant University's buildings and property, were and still are in fact paid outside agitators rather than genuine students attending classes at the Defendant University who were and are instigated and funded by wealthy Democrat Party donors and radical Democrat Left Wing political action groups, including the Rockefeller Brothers Fund, Tides Center, Soros Foundation and Popular Front for the Liberation of Palestine ("PFLP"), all done under the Defendant University's watch. (*New York Post*, various articles, April – May 2024).

5.      Far from "peaceful protests" and the "free speech" narrative promulgated by the Democrat-party controlled media, Democrat congressmen and the Democrat Party itself, the dangerous hate-filled, violent, and anti-Semitic speech included rote comments repeated ad nauseum through megaphones that were so offensive to any Jew that it offends them to hear it, eliciting memories of the Holocaust and October 7, 2023 – slogans that include "Death to Israel" (the only *Jewish* nation state in the world and a common refrain of Iranian fanatics and their proxies), and not surprisingly, "Death to America." Violent, hate-filled speech is not only offensive and hurtful, it is dangerous and not protected by the First Amendment.

6.      The purpose and intent of the Campus Terrorists was not to peacefully protest but to terrorize, intimidate, assault, and shame Jewish Students and Faculty members and interfere with their right to freely travel to and from classes, offices, and otherwise accessing other facilities at the Defendant University by threats, intimidation, and coercion. All of this was done to harm Plaintiffs, Jewish Students and Jewish Professors and Faculty members and create the equivalent

of a hostile work environment, with the knowledge, consent, and blessings of the Defendant University.

7.    The Campus Terrorists' purpose was encouraged, and aided and abetted by the Defendant University. The Defendant University invited Hamas-supporting groups to speak at USC notwithstanding the rampant anti-Semitism spewed by such groups; encouraged Hamas-leaning and -supporting faculty members to spew anti-Semitism and hatred of Jews and the State of Israel, the only Jewish country in the world. The Defendant University further permitted, aided, abetted and encouraged the Campus Terrorists to paint swastikas and other painfully offensive and hurtful comments on USC property while appeasing the Campus Terrorists and actually listening to and considering their antisemitic demands. (http://www.youtu.be/XqbztOuKVVo)

8.    Defendant University allowed the Campus Terrorists to continue their anti-Semitic campaign against the Defendant University's large Jewish student body and faculty unabated until April 24, 2024, when the Defendant University finally allowed the Los Angeles Police Department ("LAPD") to clear the Encampment and arrest 93 people on suspicion of trespassing, reporting publicly that nearly half of the arrested mob members were not students attending USC but rather paid "agitators" funded by the Democratic dark-money political action groups identified herein above. (http://www.youtu.be/v7ibgdWRMkgl8YB6hwmz1o). Plaintiffs are informed and believe that none of the offending students, Campus Terrorists, professional paid agitators or other responsible parties – arrested or otherwise – suffered any consequences.

9.    The Defendant University has refused to press charges or discipline offending students and allows the antisemitism to fester and continue by its lame and anemic response, further enabling anti-Semitism to exist and spread throughout Defendant University's USC Campus even after the removal of the Encampment. For example, as of May 7, 2024, Hamas-supporting protests were continuing at the Defendant University's campus, with Palestinian flags and

students or outside supporters sporting Palestinian flags and other terrorist garb, including green Hamas headbands and the traditional Keffiyeh - and of course, black and white Hamas facemasks and scarves to hide the Campus Terrorists' identities. After the Encampment was removed, students and outside vendors were allowed to send emails on University sponsored or permitted internet platforms to sell and encourage gullible students, faculty and other supporters to purchase Keffiyehs to wear and display at individual department graduation ceremonies, all with the knowledge and encouragement of the Defendant University. As of the filing of this Complaint, the Palestinian flag is still proudly displayed virtually anywhere on Campus by Keffiyeh and mask-wearing thugs, within sight of Figueroa Street, aided and abetted by the Campus Terrorists, with the knowledge and consent of the Defendant University.

(http://www.youtu.be/XqbZtOuKVVo)

10.     Despite Defendant University's belated call for LAPD's intervention, the offending Campus Terrorists were all released without bail to launch their attack again spurred on by outside agitators funded by the Rockefeller Center, Tides, Soros Foundation and other Jew-hating organizations.

11.     The Defendant University, one of America's leading universities, has for decades been one of the worst centers of academic anti-Semitism in the United States. Since October 7, 2023, when Hamas terrorists invaded Israel and slaughtered, tortured, raped, burned, and mutilated 1200 people – including infants, children, and the elderly – anti-Semitism at Defendant University has been particularly severe and pervasive. Defendant University faculty and students have openly lauded Hamas' October 7 atrocities as astounding, awesome, and great feats. Mobs of pro-Hamas students and faculty have marched by the hundreds to Defendant University's Campus shouting antisemitic slogans, including calls for genocide, such as: Jews will not defeat us; there is only one solution, intifada revolution; we will honor our martyrs; resistance is

justified; by any means necessary; from the river to the sea and in Arabic, from water to water Palace Dean will be Arab.

12.     These mobs have occupied Defendant University's buildings, promoted violence against and restricted access to , Plaintiffs, Jewish Students and Jewish Professors and members, caused cancellation of classes and commencement exercises, and harassed and assaulted Jewish Students and Faculty members on campus.

13.     Plaintiffs, Jewish Students and Jewish Professors and Faculty members have been spat at and faculty physically assaulted, threatened and targeted on campus and social media with epitaphs such as death to Jews. Defendant University has helped promulgate anti-Semitism in its courses and dismissed and intimidated students who object. What is most striking about all of this is Defendant University's abject failure and deliberate refusal to act to stop and deter this outrageous anti-Semitic conduct and discipline the students and faculty who perpetrated it.  In fact, the Defendant University encouraged the conduct by its appeasement policy in the face of hate speech, dangerous misconduct in other actions that it knew or should have known would create the worst and most insidious hostile anti-Semitic work environment.

14.     The Defendant University's anti-Semitism manifests itself in a double standard invidious to Jewish Students and Faculty members. Defendant University selectively enforces its policies to avoid protecting Jewish Students and Faculty members from harassment, hires professors who support anti-Jewish violence and spread anti-Semitic propaganda, and ignores Jewish Students and Faculty pleas for protection. Defendant University permits students and faculty to advocate without consequence, the murder of Jews and the destruction of Israel, the only Jewish country in the world.

15.     Plaintiffs and other similarly situated Jewish Student and Faculty members, and numerous others have explicitly and repeatedly warned Defendant University that its severe and pervasive

hostile anti-Semitic environment harms Jewish Students and Faculty members. In fact, Defendant University has been aware of its anti-Semitism problem for years, but its response has been utterly ineffective and clearly unreasonable in tolerating and even enabling anti-Semitism. Defendant University has abjectly failed to enforce its policies and discipline those responsible for turning Defendant University's campus into a severely hostile environment for its Jewish Students and Faculty members, including the Individual Plaintiffs and other similarly situated Jewish Student and Faculty members.  When, in clear violation of Defendant University's policies, a mob of students overtook a campus building to further their anti-Semitic agenda, Defendant University's response was not to remove and discipline them, but to enable them to conceal their identities by supplying them with supplies and ammunition that the mob subsequently used against LAPD.

16.     Defendant University's longtime practice when it comes to anti-Semitism—of refusing to enforce its own policies against discrimination and harassment—ensured that Hamas' October 7 terrorist attack would enormously intensify the anti-Jewish abuse on campus. Shockingly, numerous students and faculty members at Defendant University have openly endorsed Hamas and the horrific October 7 massacre of Israelis it perpetrated even though: Hamas, since its founding in 1987, has perpetrated numerous suicide bombings and other terrorist attacks against civilians; Hamas vows to kill and destroy Jews and Israel; the U.S. State Department has designated Hamas as a Foreign Terrorist Organization; and Hamas repeatedly proclaims its determination to repeat the October 7 atrocities until its genocidal aims are achieved. Many of Defendant University's students and faculty support Hamas and condemn Israel for defending itself against Hamas' terrorist attacks—but they are never heard to condemn, let alone rally against, Syria and Yemen, which have killed hundreds of thousands of Arab civilians, or Pakistan, which is currently expelling almost two million Afghan Muslims, or China, which has

imprisoned its Muslims in reeducation camps, or countries including Somalia and Nigeria, where Christians are regularly murdered ("Campus chaos and anti-Israel rhetoric reveal stark failures of today's higher education" https://www.foxnews.com/lifestyle/campus-chaos-anti-israel-rhetoric-reveal-stark-failures-today-higher-education).

17.     Subjected to intense anti-Jewish vitriol, including from their own professors and Defendant University, the Individual Plaintiffs and other Jewish Students and Faculty members have been deprived of the ability and opportunity to fully participate in Defendant University's educational and other programs and have been placed at severe emotional and physical risk. Defendant University's double standard extends to depriving Jewish Students and Faculty members equal time to express contrasting pro-Jewish viewpoints.

18.     In short, Defendant University has permitted endemic antisemitism to exclude Jewish Students and Faculty members from full and equal participation in, and to deprive them of the full and equal benefits of, their educational experience at Defendant University, and has invidiously discriminated against them by, among other things, failing to protect them in the same way Defendant University has protected other groups all based on their race, ethnicity, religion, citizenship, and/or national origin. That Defendant University has done so for many years and continues to do so to this day shows deliberate indifference at best, confirmed by its anemic response to the anti-Semitic mobs who overtook the Defendant University and its enabling of the Encampment, de-facto "passing guards" and pro-Hamas hate speech, symbols and rhetoric to flourish still on its Campus.  Regrettably, the Defendant University cannot be left to its own devices because the Defendant University's response has been clearly ineffective and clearly unreasonable.

19.     As alleged herein, Defendant University's actions, including its deliberate indifference to, and indeed enabling of, anti-Semitism on its campus, constitute an egregious violation of

California's Bane, Unruh and Ralph Civil Rights Acts (California Civil Code sections 51, 52.1 and 51.7), not to mention a dangerous condition of public property – the Defendant University's Los Angeles Campus itself, which proximately caused the assault and battery perpetrated by the mob on Plaintiffs.

20.    Defendant University must now be compelled to implement institutional, far-reaching, and concrete remedial measures.  Defendant University must also pay damages to Plaintiffs – who have been robbed of their college and graduate school experience – to compensate them for the hostility they have been forced to endure as a consequence of Defendant University's unlawful conduct.

THE PARTIES

21.    Plaintiff DOE JEWISH USC FACULTY MEMBER 2004, Individually And On Behalf Of All Others Similarly Situated ("Plaintiff" or "Plaintiffs" or "Jewish Professor"), is and at all times herein mentioned was a citizen of the State of California and a Jewish Professor employed by and at USC.  Much like a victim of sexual abuse and assault, Jewish Professor fears for Jewish Professor's life, liberty, safety and health as well as the hostile work environment caused and created by the filing of this lawsuit, and in particular, the risk to Jewish Professor's continued employment at USC if Jewish Professor's identity is publicly "outed" by Defendant University.

22.    Plaintiff Jewish Professor is suing herein individually and on behalf of all others similarly situated – namely, other Jewish Professors employed by USC who are citizens of the State of California.

23.    The following is Jewish Professor's personal diary of the highly offensive, hateful, hurtful and obnoxious conduct Jewish Professor and other similarly situated Jewish Professors experienced and endured and still endure as a result of the Campus Terrorists and Defendant's aiding, abetting, encouragement, enabling and participation in the mob's rule at USC.

Before October 7, 2023:

24.    Jewish Professor was aware of the U.S. Department of Education's Office for Civil Rights' Title VI investigation into allegations of antisemitism at USC after a Jewish student resigned from her position as student government vice president in August 2020, after being targeted for discrimination because of her perceived Jewish identity. Jewish Professor was also aware of the antisemitic student and faculty organizations, speakers, professors and other hate mongers USC allowed to flourish and grow whose purpose was to spread Hamas propaganda and other dogma and ideology. Among the other lies promulgated by such hateful organizations, speakers, professors and other hate mongers is their specious claim that Israel - and the Jews that inhabit only a fraction of the only democratic, multi-ethnic, religious and racial Jewish nation-state in the world - are "oppressors" against the "oppressed."

After October 7, 2023:

25.    After October 7, I personally witnessed several incidents of students and other individuals removing posters of kidnapped Israeli civilians who are being held hostage in Gaza.

26.    In February 2024, three student groups – Students for Justice in Palestine (SJP), the Palestinian Youth Movement and Dissenters – held a vigil for Palestine and launched the "National Divestment Campaign," calling on the University to divest from Israel and saying "We know that USC is very complicit in violence."

27.    I have personal knowledge that complaints have been lodged against some professors for allegedly promoting antisemitic and anti-Zionist content online, and Jewish students — particularly in the law and medical schools — have also publicly reported being targeted with online harassment.

28.    The level of antisemitism rose to unprecedented levels In April 2024, when USC President Carole Folt announced the nomination of Muslim student Asna Tabbasum ("Tabassum") as the USC valedictorian. Defendant University knew or certainly should have known that Tabassum's social

11

media was replete with anti-Israel propaganda and violent hate speech when an email was sent out by Provost Guzman to keep her as valedictorian yet not allow her to speak. That was the turning point that led to the creation of campus anti-Israel encampments and a level of open antisemitic vitriol that I have never previously experienced. Encampments calling for "death to Israel, death to America" and even "death to Jews" were growing in numbers and I could not get to my office without being accosted by protestors asking me "Are you a Zionist"?? "Do you support the Israeli death war machine???" I endured this for about three (3) weeks before deciding that I would not return to campus again until this came to an end. What is all the more disturbing is the number of faculty members who openly protest with the students and some even cancelling their final exams so that the students can protest daily.

29.     As a Jewish faculty member, I feel targeted, scapegoated, and abandoned by the principles that USC claims to espouse by its written and traditional policies. I did try to get to my office on May 2, 2024 only to be heckled again crossing Trousdale Pkwy by protesters asking again if I "supported the Zionist entity." I refused to engage. On my way back to my car, I was approached by a female protester asking if I wanted to participate in a "bake sale for Palestine" to help feed the children that Israel is intentionally starving. Again, I kept walking and refused to engage.

30.     I feared for my safety and life as a result of the Campus Terrorists and former Encampment and currently fear for my safety as a result of the current antisemitic acts and actions taken and not taken by Defendant University in the face of continued antisemitic mobs flourishing at and taking over USC's Campus - dangerous, threatening "pro-Palestinian" mobs who in fact spew violent hate speech against Jews, Israel and America. There appears to be a continuing and growing antisemitism and terrorist threat on Campus, which makes me and other Jewish Professors anxious and apprehensive. All the while, Defendant University continues to acquiescence to, appease, aid and abet and encourage

what has become an antisemitic mob gaining mass appeal and further support by non-Jewish students and faculty alike.

31.     Simply stated, what we are witnessing is history repeating itself.  The Holocaust in essence began at the universities in Germany when the Nazis prevented Jewish students from entering the campus and then forced out the Jewish professors.  When our pathways are blocked and we are granted entry only when we attest that we do not support Israel, how are we free to both express our Jewish identity and perform our jobs at USC?

32.     Plaintiff DOE JEWISH USC STUDENT 1987, Individually And On Behalf Of All Others Similarly Situated (depending on context, referred to herein as "Plaintiff" or "Plaintiffs" or "Jewish Student" or "Students") is and at all times herein mentioned was a Jewish Student attending USC and a citizen of the State of California.  Much like a victim of sexual abuse and assault, Jewish Student fears for Jewish Student's life, liberty, safety and health as well as the hostile work environment caused and created by the filing of this lawsuit, and in particular, the risk to Jewish Student's continued attendance at USC if Jewish Student's identity is publicly disclosed, or if "outed" by Defendant University.

33.     Plaintiff Jewish Student is suing herein individually and on behalf of all others similarly situated – namely, other Jewish USC Students who are citizens of the State of California.

34.     The following is Jewish Student's personal diary of the highly offensive, hateful, hurtful and obnoxious conduct Jewish Professor and other similarly situated Jewish Students experienced and endured and still endure as a result of the Campus Terrorists and Defendant's aiding, abetting, encouragement, enabling and participation in the mob's rule at USC.

35.     I don't travel to campus very often, because I'm a hybrid Physical Therapy student at USC's health science campus.  But when I do commute, it's for several consecutive days and I'm there at 8am to 10pm for 7-8 days, in class, studying, and practicing skills with classmates.

36.    It used to be very safe and we would travel to and from and walk all around campus, from the parking lot, to CHP building and the Hyatt hotel for more studying and meals.

37.    On April 2nd, USC president Carol Folt announced Asna Tabassum as the undergraduate valedictorian. As part of this honor, she was to give a speech at the upcoming commencement. Upon recognition, it was mentioned that she was majoring in biomedical engineering and minoring in "resistance to genocide".

38.    On the surface, this sounded great. An uprising against genocide of any group of people is a positive thing. However, Anti-israeli protestors have been using this term to justify the acts of Oct 7th. They claim that the act of rape, murder, torture and taking hostages was their "resistance to genocide".

39.    This "narrative" encouraged by Defendant and its faculty is offensive and hurtful to Jews and paints all Jews in one broad brush as favoring "genocide" with respect to Palestinians.

40.    The valedictorian has published several statements advocating for "the complete abolishment of the state of Israel" on the grounds of "ethnic cleansing and apartheid".

41.    It's shocking that someone with such strong antisemitic beliefs would be chosen by USC's Administration and the Trustees for such a high honor as valedictorian. USC knew or certainly should have known the turmoil it was creating by such a poor choice.  The community pushed back and voiced concern about what this antisemitic, venom-spewing and hate speaking and writing represents as valedictorian of 2024.  This concern was likely fueled by both social media and the ongoing conflict in the Middle East.  Regrettably and to the detriment of the other Jewish Students and me, USC and the Trustees and president Folt ignored the public uproar. Encampments were allowed to continue after April 29, 2024 and continue to this day, as confirmed by the May 5, 2024 article published in "Deadline" by Bruce Haring, *USC Pro-Palestinian Encampment Cleared Again By Police*, where he writes "Encampments at USC have

now been established and taken down three times, resulting in restricted access to the university. Disturbances grew in the wake of USC's decision not to let a pro-Palestinian [pro-Hamas] valedictorian speak at its main graduation ceremony."

42.    On April 15th, USC announced (in email) that Asna was to remain valedictorian, but would no longer speak at commencement.

43.    While that should have been the end of it, when I began traveling to and from campus I had encountered several posters on our building doors that read "#LetAsnaSpeak". The posters had the same picture from the original newsletter that claimed valedictorian with her major and minor.   In that moment, I recognized and grew fearful that I could no longer feel safe on campus without USC's intervention and systemic and institutional changes.  The antisemitism allowed to pervade USC is no longer a problem isolated to the undergraduate or the main campus, it has now spread to all aspects of USC life, philosophy and policy and is frightening to Jewish Students like me and others similarly situated.  USC now suffers from a pandemic of hate with respect to Jewish Students attending the university and Jewish Faculty members like Plaintiffs herein who can no longer freely exercise their faith and ethnicity, or act like or be themselves out of fear of reprisal.  The antisemitism has also become systemic at USC's graduate campus.

44.    On April 17th, I received another email, this time from one of our own professors at the department of Physical Therapy. It asked everyone in the department to sign a petition to allow her to speak. It also attached a message from her to the students of USC and the same picture of her from the original newsletter. She stated in her letter that USC's provost had mis-treated her and didn't give her a complete answer on why they would not allow her to speak. The Provost did explain it was due to security and safety of the community.

45.    On April 18th, I received another email from the same professor. It read, "USC Silent March for Asna. When USC silences Asna, they're silencing all of us. Show up in support of

Asna and demand USC let her speak at commencement. Wear a hoodie and mask to symbolize the institutional silencing Asna is experiencing."

46.    I am informed and believe that USC and the Trustees knew nor should nhave known about these hurtful emails.

47.    I couldn't believe what I was reading. Now I'm being harassed by my own department. The community in which I'm supposed to dedicate my time and energy to has abandoned me and the whole jewish community.

48.    I couldn't understand how they would support her after all the hate speech she published.

49.    I'm the only Jewish student in my entire class and I felt like I had to keep it a secret. I didn't want to have a target on my back, or deal with anyone's strong opinions during an already stressful week of finals.

50.    That same day, a classmate (who knew I was Jewish) asked me what my opinion was on the topic of USC's decision to take Asna's speech away. I felt unsafe once again, even among friends. Do I speak my truth and hope we are on the same page, or do I brush it under the rug and avoid the topic just to keep some sense of peace in my class. USC's decision still had a big impact on Jewish student's lives.

51.    Unfortunately, to maintain a sense of normalcy and maintain relationships in school, I had to (and still have to) keep my opinions and identity to myself.

52.    Ironically, USC prides itself on Diversity, Equity and Inclusion. By failing to protect its Jewish student's among the riots, encampments, and occupation of school property (which was taking place on Main campus that week), they've failed to abide by their own standards.

53.    USC's failure to condemn antisemitism condones and provides cover for her and her followers behaviors.

54. Accordingly, Jewish Student's and Plaintiff's fear and anxiety is real and justified.

55. Defendant University is a California private benefit corporation, controlled by its Board of Trustees.

56. The true names and capacities of defendants named herein as DOES 1 through 100, inclusive," are presently unknown to Plaintiffs. Plaintiffs will amend this Complaint to insert their true identities as soon as they are ascertained.

57. [Intentionally omitted (duplicative of paragraph 56 above)].

58. Each defendant is the agent of his or her co-defendant and in doing the things complained of herein was acting within the scope of such agency.

<u>CLASS ACTION ALLEGATIONS</u>

59. This is a class action lawsuit filed pursuant to the provisions of Code of Civil Procedure section 382, which provides in pertinent part:

> "[When the parties are numerous and it is impracticable to bring them all before
> the court, one or more may sue or defend for the benefit of all."

60. Plaintiff DOE JEWISH USC FACULTY MEMBER 2004, Individually And On Behalf Of All Others Similarly Situated ("Plaintiff" or "Plaintiffs" or "Jewish Professor"), sues in Jewish Professor's individual capacity as a Jewish USC Professor and citizen of the State of California who suffered damages and harm as a result of Defendant University's conduct and as a representative of all other similarly situated Jewish Professors who are California citizens who suffered damages and harm as a result of Defendant University's conduct.

61. Plaintiffs DOE JEWISH USC STUDENT 1987 ("Jewish Student or Students"), Individually And On Behalf Of All Others Similarly Situated, is a Jewish USC Student and citizen of the State of California who suffered damages and harm as a result of Defendant University's conduct. Plaintiff is

suing in Jewish Student's individual capacity as a Jewish USC Student and as a representative on behalf of all similarly situated Jewish Students who are citizens of the State of California.

62.     It always was and still is the intention of Plaintiffs, as alleged in paragraphs 60-61 above and in newly numbered paragraph 63b (and old paragraph "62" (sic) of the extant First Amended Complaint) to limit the putative class members in this action – a purely "home state or local controversy" - to California citizens to avoid or defeat any federal subject matter jurisdiction or removal under CAFA, 28 USC 1332 (diversity) or otherwise.  There are no federal claims pleaded or contemplated.  To the extent that these facts were ambiguous or less clear than they could have been in the FAC, Plaintiffs are making it clear now.

63.a.    The Jewish Professors and Faculty Members and Students share the same common interest of wanting to be safe and free from campus terrorism and anti-Semitism, and safe and free from all other harm, including assault and battery.  Plaintiffs also have common interests of freedom of travel, access and passage, and freedom to practice their religion without discrimination or discrimination.

63.b.    This case is not subject to removal to federal court under the Class Action Fairness Act because the matter presents a home state or local controversy involving only California citizens and California discrimination statutes and law and Los Angeles based Jewish USC Professors and other Faculty Members and Students.

FIRST CAUSE OF ACTION FOR VIOLATION OF THE BANE CIVIL RIGHTS ACT

(CALIFORNIA CIVIL CODE SECTIONS 52.1) AGAINST DEFENDANT UNIVERSITY AND

DOES 1 THROUGH 10, INCLUSIVE

63.c.    At all times herein mentioned, Defendant University had a duty to protect Plaintiffs from

physical and psychological and emotional harm on Campus and to protect Plaintiffs from discrimination and anti-Semitism.  Plaintiffs also had the right to practice their Jewish faith and in so doing to be free while on campus from threats, intimidation, or coercion, .

63 d. The essence of a Bane Act claim (California Civil code section 52.1) is that the defendant, by improper means – threats, intimidation, or coercion – tried to or did prevent the plaintiff from doing something he or she had the right to do under the law (attend school discrimination-free and free from physical harm and terrorism) or to force the plaintiff to do something he or she was not required to do under the law (such as unlawfully force Plaintiffs to study remotely while terrorists ran amok at the Defendant University).  *Venegas v. County of Los Angeles* (2004) 32 Cal. 4th 820, 841-43; *Austin B. v. Escondido Union Sch. Dist.* (2007) 149 Cal. App. 4th 860, 883.

63 e. In this case, Defendant University improperly permitted a dangerous condition to exist on the Defendant University's USC Campus by enabling, encouraging, permitting, negotiating with, and aiding and abetting the Campus Terrorists, as alleged herein above, endangering the life, liberty, and property and dignity of Jewish Students and Faculty members.

64. At all times herein mentioned, Defendant University interfered with Plaintiffs' civil rights by creating a dangerous condition on campus and encouraging and enabling the Campus Terrorists and permitting them to set up the Encampment to threaten Jewish Students and Faculty for the purpose of committing or threatening to commit violent acts against them.

65. At all times herein mentioned, Plaintiffs reasonably believed that if they exercised their Jewish faith or identified themselves as being Jewish or Israeli, the Campus Terrorists would commit violence against them or their property.

66. The Campus Terrorists, with the permission and consent of Defendant University, injured Plaintiffs and their property for the purpose of preventing them from exercising their right to

freedom of religion, faith and race, or to retaliate against them for having exercised such rights.

67. Defendant University violated the Bane Act by preventing Plaintiffs from gaining free access to a safe environment that non-Jewish Students and Faculty have.  The Defendant University created a hostile working environment as a result of the jew-hating vitriol spewed by the Campus Terrorists and allowed to continue on Campus.

68. Plaintiffs were harmed as a direct and proximate result of Defendant University's violation of the Bane Act.

69. Defendant University's conduct – and in particular its knowledge and consent of the Campus Terrorists' avowed purpose and its decision to enable, encourage, aid, abet, negotiate with and appease the Campus Terrorists and allow the Encampment to continue and the antisemitism to fester and grow for weeks on end -- was a substantial factor in bringing about Plaintiffs' harm.

SECOND CAUSE OF ACTION FOR VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (CALIFORNIA CIVIL CODE SECTIONS 51, 52) AGAINST DEFENDANT UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

70. Plaintiffs reincorporate paragraphs 1 through 69 of this Complaint as though fully set forth at length herein.

71. At all times herein mentioned, the Defendant University denied Plaintiffs equal accommodations, advantages, facilities, privileges and services that other similarly situated University Students and Faculty enjoy simply because they are Jewish or Israeli.

72. Defendant University's conduct, as alleged herein, denied, aided and abetted, incited a denial of or made a distinction that denied full and equal accommodations, advantages, facilities, privileges and services to Jewish Students and Faculty members.

20

73. A motivating reason for Defendant University's conduct was its perception and the perception of the Campus Terrorists that Plaintiffs are Jewish.

74. Plaintiffs' Jewish faith and race and Israeli origin was a motivating reason for the conduct of the Campus Terrorists and Encampment that Defendant University allowed and permitted to continue for weeks on end.

75. Plaintiffs were harmed as a result of Defendant University's conduct.

76. Defendant University's conduct was a substantial factor in causing Plaintiffs' harm.

THIRD CAUSE OF ACTION FOR VIOLATION OF THE RALPH CIVIL RIGHTS ACT (CALIFORNIA CIVIL CODE SECTION 51.7) AGAINST DEFENDANT UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

77. Plaintiffs reincorporate paragraphs 70 through 76 of this Complaint as though fully set forth at length herein.

78. At all times herein mentioned, the Campus Terrorists committed acts of violence or threatened to commit acts of violence against Plaintiffs herein because of their religion and race.

79. Defendant University had actual knowledge of the violence and threats but allowed and permitted the Campus Terrorists to continue to threaten violence and commit acts of violence against Plaintiffs for weeks on end before standing up to them, encouraging, appeasing and negotiating with the Campus Terrorists and allowing the Encampment to remain on Campus in plain view of the Jewish Students and Faculty members.

80. The motivating and avowed purpose of the Campus Terrorists and Encampment was to spew antisemitism epitaphs at Jewish Students and Faculty and commit violence or make threats of violence to Jewish Students and Faculty.

81. Plaintiffs were harmed as a result of Defendant University's conduct and encouragement of the discriminatory practices and threats of violence.

82. Defendant University's conduct was a substantial factor in bringing about Plaintiffs' harm.

## FOURTH CAUSE OF ACTION FOR NEGLIGENCE AGAINST DEFENDANT UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

83. Plaintiffs reincorporate paragraphs 77 through 82 of this Complaint as though fully set forth at length herein.

84. At all times herein mentioned, Defendant University had a duty of care to provide a safe and sane environment and workspace for Jewish Students and Faculty members.

85. Beginning in or about Spring of 2024 and continuing to the present time, Defendant University created, permitted, allowed, enabled and condoned a dangerous condition to occur on University property, as more particularly alleged herein above.

86. Defendant University breached its duty of care to Jewish Students and Faculty members by allowing the Campus Terrorists to continue on with their reign of terror for weeks on end before capitulating on or about May 5, 2024, when they called LAPD in to remove the Encampment.

87. As a direct and proximate result of Defendant University's negligence and breach of its duty of care to provide a safe and sane environment and workspace for Jewish Students and Faculty members, Plaintiffs were harmed.

88. Defendant University's negligence was a substantial factor in bringing about the harm sustained by Plaintiffs.

## FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DEFENDANT UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

89. Plaintiffs reincorporate paragraphs 83 through 88 of this Complaint as though fully set forth at length herein.

90. Plaintiffs paid over $200,000 to attend four years at Defendant University in consideration for a reasonable expectation that they would be able to study in a safe and sane environment and workplace at the Defendant University.

91. At all times herein mentioned, Defendant University had a contractual duty to provide a safe and sane environment and workspace for Jewish Students and Faculty members.

92. Beginning in or about Spring of 2024 and continuing to the present time, Defendant University breached its contractual duty to Plaintiffs by creating, permitting, allowing, enabling and condoning a dangerous condition to occur on University property, as more particularly alleged herein above.

93. At all times herein mentioned, Plaintiffs performed all conditions they were required to perform with respect to their contract with Defendant University and paid the Defendant University the tuition required.

94. As a direct and proximate result of Defendant University's breach of its contractual obligations to Plaintiffs, Plaintiffs have been harmed.

SIXTH CAUSE OF ACTION FOR ASSAULT AGAINST DEFENDANT UNIVERSITY

AND DOES 1 THROUGH 10, INCLUSIVE

95. Plaintiffs reincorporate paragraphs 89 through 94 of this Complaint as though fully set forth at length herein.

96. At all times herein mentioned, the Campus Terrorists' conduct and the actions permitted and encouraged by Defendant University, as alleged herein, intended to cause harmful and offensive contact with Plaintiffs.

97. At all times herein mentioned, Plaintiffs reasonably believed that the Campus Terrorists were about to touch them in a harmful or offensive manner and in fact threatened to touch them in a harmful manner, screaming slogans like "Death to Israel," "Death to Jews," Death to America." The Defendant University encouraged the Campus Terrorists to continue spewing hate-filled threats at Jewish Students and Faculty members by allowing the Encampment and takeover of University property.

98. At all times herein mentioned, it reasonably appeared to Plaintiffs that the Campus Terrorists were about to carry out their threats.

99. Plaintiffs did not consent to the conduct of the Campus Terrorists or the Encampment.

100.    As a direct result of the conduct of Defendant University, Plaintiffs were harmed.

101.    Defendant University's conduct was a substantial factor in causing Plaintiffs' harm.

SEVENTH CAUSE OF ACTION FOR BATTERY AGAINST DEFENDANT

UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

102.    Plaintiffs reincorporate paragraphs 95 through 101 of this Complaint as though fully set forth at length herein.

103.     At various times from April 2024 through May 5, 2024, and up to the time of the filing of this amended pleading, the Campus Terrorists touched or caused Plaintiffs to be touched with the intent to harm or offend them.

104.     Plaintiffs never consented to the harmful and offensive touching.

105.     The harmful and offensive touching was allowed, permitted, encouraged and made possible by the Defendant University's conduct, as alleged herein above.

106.     Plaintiffs were harmed as a result of the harmful and offensive touching.

107.     A reasonable person in Plaintiffs' situation would have been offended by the touching by the Campus Terrorists.

EIGHTH CAUSE OF ACTION FOR DECLARATORY RELIEF AGAINST DEFENDANT UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

108.     Plaintiffs reincorporate paragraphs 102 through 107 of this Complaint as though fully set forth at length herein.

109.     An actual controversy has arisen and now exists between Plaintiffs and Defendant University in that Plaintiffs contend that Defendant University has created a dangerous condition of public property and further contends that Defendant University encourages, permits, aids, abets, appeases and condones rampant unlawful antisemitism and discrimination to occur on its campus against Jewish Students and Faculty members, whereas Defendant denies such contentions.

110.     A judicial declaration is necessary and appropriate at this time so that the parties can ascertain their respective rights and liabilities.

NINTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF AGAINST DEFENDANT

UNIVERSITY AND DOES 1 THROUGH 10, INCLUSIVE

111.  Plaintiffs reincorporate paragraphs 108 through 110 of this Complaint as though fully set forth at length herein.

112.  The statutory scheme contemplated by Civil Code sections 51 et seq. gives the Court the power to fashion an injunction to remedy future discriminatory practices as necessary.

113.  Plaintiffs herein seek a temporary restraining order, preliminary and permanent injunction:

-  to enjoin and prevent Defendant University from continuing to create and sponsor a dangerous condition of public property;

-  to enjoin and prevent Defendant University from continuing to support antisemitic and discriminatory conduct on campus, as well as Defendant University's continuing encouragement and rampant support for the Campus Terrorists, Hamas and other Jew-hating organizations and groups; and

-  to enjoin and prevent outside funding by antisemitic groups and organizations who require the Defendant University to march to beat of an antisemitic drummer as opposed to the laws forbidding antisemitism and discrimination.

WHEREFORE, Plaintiffs pray for judgment as follows:

**On the First, Second, Third, Fourth, Fifth and Seventh Causes of Action:**

1.  For damages in an amount in excess of the jurisdictional limits of this Court to be shown at the time of trial in accordance with proof;

**On the Eighth Cause of Action:**

2.  For a judicial declaration setting forth the respective rights and liabilities of the parties;

**On the First, Second, Third and Ninth Causes of Action:**

1.  For a temporary restraining order, preliminary and permanent injunction:

- to enjoin and prevent Defendant University from continuing to create and sponsor a dangerous condition of public property;

- to enjoin and prevent Defendant University from continuing to support antisemitic and discriminatory conduct on campus, as well as Defendant University's continuing encouragement and rampant support for the Campus Terrorists, Hamas and other Jew-hating organizations and groups; and

- to enjoin and prevent outside funding by antisemitic groups and organizations who require the Defendant University to march to beat of an antisemitic drummer as opposed to the laws forbidding antisemitism and discrimination.

**On All Causes of Action:**

1. For reasonable attorney's fees;

2. For the costs of suit incurred; and

3. For such other and further relief as the Court deems just and proper.


DATED:  September 22, 2024          LAW OFFICES OF MICHAEL E. REZNICK
                                    A Professional Corporation



                                    By: *Bryan Cristopher Castenada*
                                          Bryan Christopher Castenada

                                    Attorney for Plaintiffs DOE JEWISH UCLA
                                    STUDENT 1958, DOE JEWISH UCLA STUDENT
                                    1972, DOE JEWISH UCSC STUDENT 1987, DOE
                                    JEWISH USD STUDENT 2004, Individually And
                                    On Behalf Of All Others Similarly Situated