Bryan Christopher Castaneda (Cal. Bar No. 275095)
bryanchristophercastaneda@gmail.com
LAW OFFICES OF MICHAEL E. REZNICK
A Professional Corporation
283 Ocho Rios Way
Oak Park, California 91377-5540
Tel: (818) 437-5630
*Attorney for Plaintiffs*

*Additional counsel listed on subsequent page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE JEWISH USC FACULTY MEMBER 2004 and DOE JEWISH USC STUDENT 1987, Individually And On Behalf of All Others Similarly Situated, | Case No. 2:24-cv-05712 FLA (SSC) **JOINT RULE 26(F) REPORT AND DISCOVERY PLAN** |
| Plaintiffs, | |
| v. | Date:      November 8, 2024 |
| Trustees of THE UNIVERSITY OF SOUTHERN CALIFORNIA, a private public benefit corporation; and DOES 1 through 100, inclusive, | Time:      1:30 p.m. Place:     Courtroom 6B Judge:     The Honorable           Fernando L. Aenlle-Rocha |
| Defendants. | |

1

Rasha Gerges Shields (Cal. Bar No. 218248)
rgergesshields@jonesday.com
Tyler J. Scott (Cal. Bar No. 341039)
tscott@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: +1.213.243.2719
Facsimile: +1.213.243.2539

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

**JOINT RULE 26(F) REPORT AND DISCOVERY PLAN**

Plaintiffs Doe Jewish USC Faculty Member 2004 and Doe Jewish USC Student 1987 ("plaintiffs") and Defendant University of Southern California ("USC") (together, the "Parties") hereby submit the following joint report in accordance with Federal Rule of Civil Procedure 26(f), the Court's July 16, 2024 Order setting the scheduling conference (Dkt. 12), and the Court's October 15, 2024 Order (Dkt. 54) resetting the scheduling conference for November 8, 2024.

On October 18, 2024, plaintiffs' counsel, Bryan Christopher Castaneda, and Defendant's counsel, Rasha Gerges Shields and Tyler Scott, participated in a telephonic meeting to discuss the matters specified in Federal Rules of Civil Procedure 16 and 26(f). The parties reached agreements on certain items as described below. Where the parties are not in agreement, the parties state their respective positions.

A. **STATEMENT OF THE CASE**

**1. PLAINTIFF'S STATEMENT OF THE CASE**

As more particularly set forth in Plaintiffs' Memorandum supporting this Court's Order to Show Cause, Motion for Remand and Motion for Leave to File Second Amended Complaint, this local, home state controversy alleges well-pleaded California state law antidiscrimination claims for the patent antisemitism, chaos and harm perpetrated against Jewish USC professors and students by Hamas-supporting terrorist mobs led by outside agitators who overtook the USC Campus and Town Square with the knowledge, consent, assistance and encouragement of USC. Plaintiffs further allege that Defendant not only knew and should have known about the harm, damage and offensive discriminatory conduct as alleged in the pleading, but aided, abetted, enabled and allowed the discrimination to occur.

Plaintiffs' original Complaint against the University of Southern California ("Defendant" or "USC") was filed in the Los Angeles County Superior Court by a "DOE" Jewish USC Professor who is and always was a citizen of the State of California. The only change made to the pleading before Defendant's improper removal of the First

Amended Complaint ("FAC") was to add a DOE Jewish USC Student, who is also a citizen of the State of California.

Since USC is a California citizen, there is and never was "minimal diversity" between the parties. Moreover, the only change Plaintiffs have made in the proposed Second Amended Complaint ("SAC") was and is to make clear that there is no minimal "diversity" between the parties now or at the at the time the Complaint and FAC were filed. Moreover, the "class size" at this point in time is only "two" class members and no other parties or potential class members have come forward.

As a result, Plaintiffs contend that this Court is divested of subject matter jurisdiction under CAFA or otherwise. Accordingly, Plaintiffs contend that the Court should not be ruling on Defendant's MTD or even scheduling the FRCP 26 Conference at all until its subject jurisdiction is determined.

Plaintiffs further contend that Defendant's counsel also removed this case in violation of Rule 11 of the Federal Rules of Civil Procedure and Rule 5-100(A) of the California Rules of Professional Conduct so that she and USC could obtain an unfair advantage in this civil dispute by impliedly threatening to present criminal, administrative or disciplinary charges by reporting in every single paper filed with this Court since removal an unrelated and totally irrelevant June 27, 2021 suspension from the Central District Bankruptcy Court and reciprocal suspension from the California District Court pursuant to Local Rule 73.1 et seq. of Plaintiffs' original lead attorney Michael E. Reznick, SB No. 116126 ("Reznick") (the "Suspension").[1]  Reznick's highly publicized Suspension, which Reznick and Plaintiffs have never concealed from this Court, ends by its terms on June 27, 2025. Moreover, the Suspension is likely to be reversed by the Ninth Circuit when it decides the appeal, which was submitted to the Panel on the briefs on October 23, 2024.

---

[1] Rule 5-100(A) provides that a member of the California Bar "shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute."

More importantly, all filings to date have been signed and efiled by attorney Bryan Christopher Castaneda, Bar No. 275095 ("Castaneda"). Castaneda is not suspended from this Court or any other Court. Pursuant to Rule 11, Castaneda was and is the attorney as a matter of law and in fact who is solely responsible for the handling and management of this case in federal court. As a consequence, Defendant's repeated references to Reznick's irrelevant Suspension (and asserted in every one of its filings since removal (including this scheduling order) are apparently designed to smear Reznick with an irrelevant character assassination and/or to threaten Castaneda with his own disciplinary or administrative charges or Reznick with further and other disciplinary or administrative charges. Defendant's and Defendant's counsel's mention of the Suspension is immaterial, impertinent and scandalous and violates Rule 11 and Rule 5-100. Accordingly, Plaintiffs contend that any and all former references to the Suspension or Reznick should be withdrawn by Defendant or stricken by this Court pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and that the Court should enter an order barring any future references to the Suspension in pleadings. . It is wrong, in bad faith, violates Rule 11 and Rule 5-100 and should not be countenanced by this Court

As stated in Sections "O" and "P" of this Order, if the case is not remanded back to the Los Angeles County Superior Court, Reznick expects to be reinstated to the Central District Bankruptcy Court and Central District when the Suspension ends by its terms on June 27, 2025, or much earlier if as expected the Ninth Circuit reverses what Reznick believes is a bogus order that led to the Suspension. In either case, Reznick will be trial counsel in this matter.

Finally, Plaintiffs continue to assert that this Court lacks subject matter jurisdiction under CAFA or otherwise and thus believes that the Joint Rule 26(F) Report, Discovery Plan and Scheduled Conference is premature since the Court's OSC re Remand and Plaintiffs' Motion for Remand are still pending and have yet to be ruled on. For the same reasons, Plaintiffs believe and contend for the record that the Court herein

should defer ruling on the Defendant's MTD so that the Los Angeles County Superior Court can make all dispositive rulings on a case that Plaintiffs contend was improperly removed in the first place

## 2. DEFENDANT'S STATEMENT OF THE CASE

This is a narrow dispute about specific conduct allegedly experienced by two individual plaintiffs in the context of campus protests concerning the war in Gaza. As explained in USC's pending motion to dismiss, that alleged conduct is not actionable, not attributable to USC, or both. Dkt. 10. The Student Plaintiff claims that she read offensive posters, and that a faculty member sent two notes to a department email list: one asked for petition signatures; the other promoted a "Silent March." Dkt. 1, Ex. A-7, First Amended Complaint ("FAC") ¶¶ 43–45, 50. The Faculty Plaintiff claims that campus protesters asked her if she wanted to participate in a "bake sale for Palestine," among other questions. *Id.* ¶¶ 28–29. She also alleges to have been "spat on" by an unknown "thug." Dkt. 1, Ex. A-9 (*Errata* to FAC). To date, plaintiffs have failed to explain (a) how the speech by others is actionable at all, and (b) how either that speech or the conduct of a "thug" should give rise to liability against USC.

That is unsurprising. Plaintiffs' allegations do not state a claim against USC under California law. *See* Dkt. 10 (USC's Motion to Dismiss). In addition, Defendant is an academic institution constrained by the requirements of California's Leonard Law. *Id.* n.5. To the extent that plaintiffs request that USC suppress speech or viewpoints—or that USC should be liable for the speech or viewpoints of others—that exceeds the scope of relief that may be sought from a Court.

The complaint's allegations concerning these two plaintiffs are thin and flimsy to say the least, and the campus protests at USC were nothing like those seen at other universities. Perhaps recognizing as much, plaintiffs aim most of the complaint at events at other universities, gripes with the "Hamas-supporting Biden Administration," and the purported machinations of "wealthy Democrat Party donors and radical Democrat Left Wing political action groups" to somehow impute liability to USC. FAC ¶¶ 1, 4, 8. That does not work. USC does not dictate foreign policy. And the views of Democratic Party

"donors" and "dark money" groups have nothing to do with the particular alleged conduct experienced by these two plaintiffs. Plaintiffs' theory of the case against USC is fundamentally misguided.

Plaintiffs seek to litigate on behalf of a class of all Jewish USC faculty and students. But as plaintiffs have already admitted, many putative class members were not injured by the protests—and some *supported* the protests of which plaintiffs complain. Plaintiffs' class cannot proceed in light of such admissions. Dkt. 17, Reznick Declaration ¶ 2.

For these and other reasons, Defendant denies that it is liable with respect to plaintiffs' claims for: (1) violation of California's Bane Act, (2) violation of California's Unruh Act, (3) violation of California's Ralph Act, (4) battery, (5) assault, (6) breach of contract, (7) negligence, (8) declaration, and (9) injunction. Nor can plaintiffs pursue any of these claims on behalf of a putative class.

## B.    SUBJECT MATTER JURISDICTION

### 1.  PLAINTIFFS' POSITION

See Section A.1. In addition, these issues have been fully briefed and to repeat them here pending a decision by the Court would be redundant.

### 2.  DEFENDANT'S POSITION

This Court has jurisdiction under the Class Action Fairness Act ("CAFA"). 28 U.S.C. §§ 1332(d)(2), (5); Dkts. 1, 18, 21, 26. In its opposition to plaintiffs' remand motion and in response to the Court's Order to Show Cause, USC demonstrated: (1) the putative class has more than 100 members; (2) there is minimal diversity between at least one member of the putative class and USC; and (3) the amount-in-controversy ("AIC") exceeds CAFA's $5 million floor. *See* Dkts. 18, 21, 26; *see also* Dkt. 1 (removal notice).

Plaintiffs have moved to amend their complaint again for the sole and express purpose of "negating" minimal diversity and "divesting" this Court of CAFA subject matter jurisdiction. Dkt. 51, at 1–2. But controlling caselaw forbids plaintiffs from

amending their class definition after removal to divest the Court of subject matter jurisdiction. As USC has explained, "'citizenship of the class for purposes of minimal diversity [under CAFA] must be determined as of the operative complaint at the date of removal.'" Dkt. 51, at 1–2 (quoting *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1279 (9th Cir. 2017)). The exact maneuver plaintiffs try here has been specifically rejected by the Ninth Circuit. *Id*.

The responses to the Court's Order to Show Cause, plaintiffs' remand motion, and plaintiffs' motion to amend are all under submission.

## C. **LEGAL ISSUES**

### 1. **PLAINTIFFS' POSITION**

Plaintiffs respectfully submit that they cannot provide any meaningful discussion about the legal issues until the Court issues a ruling regarding subject matter jurisdiction and if necessary, Defendant's MTD.

### 2. **DEFENDANT'S POSITION**

Three key legal issues are already pending before this Court:

***CAFA Jurisdiction.*** Plaintiffs have moved to remand the case back to state Court for lack of subject matter jurisdiction under CAFA. Dkt. 25. But the case is properly in this Court for the reasons articulated in USC's responses to plaintiffs' remand motion and the Court's Order to Show Cause. *See* Dkts. 18, 26. USC has shown that CAFA's jurisdictional requirements are met: (1) a putative class with more than 100 members; (2) minimal diversity between at least one member of the putative class and USC; and (3) an AIC exceeding CAFA's $5 million floor. *See* 28 U.S.C. §§ 1332(d)(2), (5); Dkts. 1, 18, 21, 26. Further, as stated above, plaintiffs cannot amend their class definition after removal to divest the Court of CAFA subject matter jurisdiction. Dkt. 51.

***Plaintiffs' failure to state a claim.*** USC has moved to dismiss the case on the merits under Rule 12(b)(6). Dkt. 10. Plaintiffs have failed to state a claim for the numerous reasons identified in USC's motion to dismiss. *Id*. at 7–18. Plaintiffs agree, for instance, that to state a claim under the Bane, Ralph, or Unruh Act, they must

plausibly allege that USC specifically intended to harm or discriminate against plaintiffs on the basis of religion. *See* Dkt. 52, at 4–5. But as USC has shown, plaintiffs' conclusory allegations do not come close to plausibly meeting this standard. Plaintiffs offer no well-pled allegations showing that USC intended for any of the unnamed protestors to say anything specific **to these two plaintiffs** or do anything specific to **these two plaintiffs**. *Id.* at 5. Plaintiffs do not allege that USC knew about the few specific incidents described in the complaint (or even that the protestors knew plaintiffs are Jewish). *Id.* In addition, plaintiffs did not even attempt to respond to numerous dispositive arguments by USC. Among other arguments, plaintiffs did not respond to USC's argument that the Faculty Plaintiff's claims are barred by workers' compensation exclusivity; that the plaintiffs have failed to allege a contract; and that the Student Plaintiff has not shown the kind of special relationship or circumstances that could give rise to a claim for negligent infliction of emotional distress under California law. *See id.* at 6–7.

For related reasons, plaintiffs' claims should be dismissed with prejudice and their motion for leave to amend their complaint should be denied. Plaintiffs' proposed amendments go exclusively to their class definitions, not the events that purportedly give rise to liability for USC. Dkt. 51, at 2, 5–6, 10–11. Plaintiffs have not shown how any amendment would fix the numerous deficiencies that USC has identified in their complaint. *Id*. It is clear that plaintiffs have no further factual allegations to offer.

**The adequacy of plaintiffs' class allegations.** Plaintiffs' class allegations are fatally inadequate and should be stricken. Dkt. 10 at 18–21. Plaintiffs have already admitted that many putative class members were not injured by the protests, and some affirmatively supported the protests. Dkt. 17, Reznick Declaration ¶ 2. And plaintiffs have similarly failed to respond to USC's class certification arguments. Dkt. 52, at 7–8. That dooms class certification, among other issues. Dkts. 10, 51.

Additional legal issues may include the following:

**Litigation by pseudonym.** Parties must typically use their real names in

accordance with the public's right to open courts and the right of private individuals to confront their accusers. *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). Plaintiffs must seek leave to proceed pseudonymously, but have not done so to date. *See, e.g.*, *4 Exotic Dancers v. Spearmint Rhino*, No. CV 08-4038ABCSSX, 2009 WL 250054, at *1-2 & n.2 (C.D. Cal. Jan. 29, 2009) (noting the Court's "obligation to examine the issue *sua sponte*"). Plaintiffs have disclosed their identities privately to USC. USC will evaluate its position on this issue on an ongoing basis as it receives additional information from plaintiffs.

*Class certification and associated discovery.* Because plaintiffs have brought this case as representatives of a putative class, the Court will need to resolve a motion for class certification, if one is made by plaintiffs. USC will oppose class certification. It is USC's position that plaintiffs' admissions and pleadings already demonstrate that their class does not meet Rule 23's requirements (Dkt. 10); no class discovery is necessary or warranted.

USC further notes that it has not filed its answer yet in this case. It continues to investigate the potential legal issues and its defenses in this action, including the applicability of California's Leonard Law as a defense. USC expressly reserves its right to raise additional legal issues in its answer or at the appropriate time during litigation.

## D.  PARTIES AND EVIDENCE

At this time, the Parties do not anticipate the addition of any other parties.

### 1.  PLAINTIFFS' POSITION ON ADDITIONAL ISSUES

Plaintiffs contend that it is premature to discuss additional issues without a decision on the Court's subject matter jurisdiction or lack thereof.

### 2.  DEFENDANT'S POSITION ON ADDITIONAL ISSUES

*Corporate statement.* USC is a private, not-for-profit public benefit corporation organized and existing under the laws of the State of California. USC does not have a parent corporation, and no publicly held company owns 10% or more of its stock.

*Percipient witnesses.* This dispute will turn on the specific allegations made by

these specific plaintiffs.  USC is not presently aware of any percipient witnesses to the specific events that plaintiffs allege they personally experienced.  Plaintiffs have disclosed their identities to USC, but they have offered no further details about their experiences other than the few allegations in the complaint.  The Student Plaintiff alleges that one of her professors sent emails to her department.  She also describes her interactions with a friend.  Those individuals may have relevant and discoverable information.  USC continues to investigate plaintiffs' allegations and will provide additional information about potential witnesses as required by Rule 26(a)(1) on the timeline jointly proposed by the Parties (or as otherwise ordered by this Court).

Plaintiffs' broader assertions about the presidential administration, Democratic donors and dark money groups, the views of other students, and similar allegations have no relevance to the specific conduct that supposedly gives rise to their claims.  Nor do plaintiffs allege that they were personally affected by an encampment at USC.  Discovery should be targeted in the first instance at the specific conduct alleged to have affected these plaintiffs.  That plaintiffs have included broader allegations entirely untethered to these plaintiffs and going all the way up to the White House is not a license to engage in a fishing expedition.

**E.    DAMAGES**

**1. PLAINTIFFS' POSITION**

The gravamen of Plaintiffs' FAC and SAC is for injunctive relief but some of the state court discrimination statutes under which such relief is sought also provide for actual damages or damages up to $400 per day.  Plaintiffs contend that this issue is premature to determine without rulings from the Court.

**2. DEFENDANT'S POSITION**

USC denies that it has any liability in this matter whatsoever.  Plaintiffs are entitled to zero damages.[2]

_____

[2] This is a separate question from CAFA's $5 million amount-in-controversy requirement, which refers to "possible" liability, not probable liability.  For the reasons

**F.**  **INSURANCE**

USC states that the following insurance carriers have been put on notice:

1. Berkshire Hathaway Specialty Insurance

2. National Fire & Marine Insurance Company

Neither insurer has taken a coverage position at this time.

**G.**  **MOTIONS**

**1. PLAINTIFFS' POSITION**

Plaintiffs intend to file a motion for fees and costs if the case is remanded for improper removal and depending on the Court's rulings, a motion pursuant to Rule 11.

**2. DEFENDANT'S POSITION**

The CAFA jurisdictional issues are fully briefed and pending—no additional motion practice on jurisdiction or venue is warranted.  See Dkt. 28 (taking remand motion under submission).  USC's motion to dismiss (Dkt. 10) is fully briefed and pending.  Plaintiffs' motion for leave to file a Second Amended Complaint is also pending (Dkt. 49), and plaintiffs have stated that they will attempt to file a Third Amended Complaint if the operative complaint is dismissed (Dkt. 39, at 6–7).  For the reasons explained in USC's opposition for leave to amend (Dkt. 51, at 2, 10–11) and reply brief in support of its motion to dismiss (Dkt. 52, at 8–10), the Court should deny leave to amend and further amendments by plaintiffs would be futile.

If leave to amend is granted, USC will likely file another motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

USC addresses plaintiffs' threatened Rule 11 motion in the "Other Issues" section below.

---

explained in USC's response to the Court's Order to Show Cause, as well as its opposition to plaintiffs' remand motion, the amount at stake in this case is greater than $5 million. *E.g.*, Dkt. 18.

## H.    DISPOSITIVE MOTIONS

### 1. PLAINTIFFS' POSITION

Plaintiffs' legal position on these issues has been fully briefed and the parties are waiting for decisions and rulings from the Court in that regard.

### 2. DEFENDANT'S POSITION

***Motion to dismiss.*** All of plaintiffs' claims should be dismissed with prejudice at the 12(b)(6) stage.   Plaintiffs have failed to state a claim for the numerous reasons identified in USC's motion to dismiss. Dkt. 10 at 7-18.  None of plaintiffs' allegations come close to establishing the elements of plaintiffs' civil rights claims, which require USC to intentionally violate their expressly protected rights (Bane Act), and to do so based on plaintiffs' religious identities (Unruh and Ralph Acts).  And none of plaintiffs' allegations show that USC specifically intended to further any tortious conduct against plaintiffs, thus dooming plaintiffs' aiding-and-abetting theory.  Moreover, the Faculty Plaintiff's tort claims are barred by California's workers compensation laws.  And the Student Plaintiff fails to allege basic elements of her battery (no touching), assault (no reasonable fear of contact), and contract claims (no contract, no breach, no damages).

Plaintiffs failed to respond to most of USC's dispositive arguments. *See* Dkt. 39. USC showed, for instance, that the Faculty Plaintiff's tort claims are barred by workers' compensation exclusivity under California law. Dkt. 10, at 15–16.  Plaintiffs offer no response, thus "conceding the issue." *Young v. City of Menifee*, No. EDCV 17-1630 (JGB) (SPx), 2023 WL 11053618, at *25 (C.D. Cal. 2023). USC showed, as another example, that the Student Plaintiff's allegations are grossly insufficient to state a claim for negligent infliction of emotional distress. Dkt. 10, at 16–17.  Plaintiffs offer no response, and thus "concede the argument." *ERE Ventures, LLC v. David Evans & Assocs.*, No. CV 17-1561-R, 2018 WL 6118428, at *7 (C.D. Cal. 2018), *aff'd* 2023 WL 4261353 (9th Cir. 2023).  In fact, plaintiffs failed to respond to dispositive arguments as to each of their claims.

***Motion for summary judgment.*** Should plaintiffs' claims survive the 12(b)(6)

1  stage, USC anticipates filing a motion for summary judgment on all of plaintiffs'

2  individual claims at the close of Phase 1 discovery, discussed below.

3  **I.    MANUAL FOR COMPLEX LITIGATION**

4      The Parties agree this is not a complex case and no procedures from the Manual

5  For Complex Litigation are necessary here other than the procedures agreed upon by the

6  Parties, discussed herein.

7  **J.    STATUS OF DISCOVERY**

8      No discovery requests have been served.  Plaintiffs have disclosed their identities

9  to defendant.

10 **K.    DISCOVERY PLAN (RULE 26(f))**

11     The Parties have reached a number of agreements, reflected here.  Where the

12 Parties have remaining differences, their positions are noted below.

13     ***Initial disclosures.***   The Parties have stipulated to a short extension for the

14 exchange of initial disclosures to Friday, November 15, 2024.

15     ***Discoverable evidence.***  The Parties do not anticipate any issues or problems with

16 respect to preserving discoverable evidence that is currently in their respective

17 possession, custody, and/or control.

18     ***Phased Discovery and Schedule.***  The Parties agree that a "just, speedy, and

19 inexpensive determination" of this action will be promoted by the bifurcation of

20 discovery into two phases.  F.R.C.P. 1.  The Parties propose the modified Schedule of

21 Pretrial & Trial Dates worksheet discussed *infra*.

22     <u>*Phase One*</u>:  The Parties agree Phase One of discovery should focus on the two

23 individual plaintiffs' specific allegations and USC's purported liability to the two

24 individual plaintiffs.  This allows for early motions for summary judgment, benefiting

25 both parties.  *Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984) ("early resolution of a

26 motion for summary judgment seems likely to protect both the parties and the court from

27 needless and costly further litigation").  Phase One should last until the Court rules on

28 those motions for summary judgment.  *Tseng v. Nordstrom, Inc.*, No. CV 11-8471-CAS

MRWX, 2013 WL 5486768, at *2 (C.D. Cal. Mar. 25, 2013) ("As the Ninth Circuit has held, a district court may consider a motion for summary judgment before a motion for class certification").

   *Phase Two*:  If necessary, Phase Two will extend discovery to issues of class certification and class merits.  *Aldapa v. Fowler Packing Co. Inc.*, 310 F.R.D. 583, 589 (E.D. Cal. 2015) ("bifurcated discovery would be more than sufficient to ensure the just, speedy, and efficient determination of this action").

### 1. PLAINTIFFS' POSITION ON ADDITIONAL ISSUES

   While it is too early to determine what additional issues may arise in this case given the absence of a decision yet on subject matter jurisdiction, Plaintiffs generally agree with Defendant's position on additional issues.

### 2. DEFENDANT'S POSITION ON ADDITIONAL ISSUES

   ***Nature of discovery.***  At the appropriate time, USC confirms that it intends to serve formal written discovery in the form of requests for production of documents, special interrogatories, form interrogatories, and requests for admissions.  Defendant further intends to take the deposition of plaintiffs in relation to their claims.  USC may seek to depose other relevant witnesses as they are identified in the course of discovery.

   ***Protective order.***  USC will request this Court to enter a protective order to comply with educational privacy laws and guarantee the confidentiality of sensitive documents.  At the appropriate time, USC intends to negotiate a proposed order with plaintiffs.

   ***Reservations.***  USC does not presently propose any changes to the normal limits on discovery but reserves all rights to seek protective orders and limit discovery as appropriate.  USC also reserves its right to raise issues regarding the preservation of discoverable evidence in accordance with applicable court procedures in the event such issues arise.

### L. DISCOVERY CUT-OFF

   The parties agree to a fact discovery cut-off of March 21, 2025 for Phase 1.

**M.    EXPERT DISCOVERY**

Please refer to the schedule worksheet below for a more detailed timeline for potential expert discovery.

### 1. PLAINTIFFS' POSITION

While it is too early to determine what expert discovery is needed in this case given the absence of a decision yet on subject matter jurisdiction, Plaintiffs generally agree with Defendant's position on additional issues.

### 2. DEFENDANT'S POSITION

Expert discovery may be necessary in Phase One.  USC would likely serve expert reports rebutting any expert testimony offered in Phase One.  USC's current position is that expert discovery is more likely in Phase Two of the litigation (class certification and class merits).

**N.    SETTLEMENT CONFERENCE / ALTERNATIVE DISPUTE RESOLUTION**

***ADR selection.***    The Parties agree to have the required ADR proceeding conducted by a Magistrate Judge.

***Previous settlement discussions.***    The Parties have not discussed a formal settlement offer.  During the Parties' Rule 26(f) conference, plaintiffs stated they intend to make a proposal to USC.  Plaintiffs have yet to articulate a specific demand.

**O.    TRIAL ESTIMATE**

### 1. PLAINTIFFS' POSITION

Plaintiffs respectfully submit that they cannot provide any meaningful discussion about the legal issues until the Court issues a ruling regarding subject matter jurisdiction and if necessary, Defendant's MTD.

### 2. DEFENDANT'S POSITION

This is a narrow dispute predicated on specific instances of conduct alleged by the two individual plaintiffs.  On that understanding, USC has no basis on which to suggest that a trial may last beyond four days.  While USC is still investigating plaintiffs' claims

and its potential defenses, it expects to call 3-5 witnesses at trial. USC reserves the right to revise its estimates as the case proceeds and additional details are learned in discovery.

Should the Court permit plaintiffs' wide-ranging class allegations to reach trial, such a dispute may extend beyond four days. USC has no reliable basis by which to estimate how long it would take to try plaintiffs' speculative class claims at this time.

**P.    TRIAL COUNSEL**

Plaintiffs anticipate that Michael E. Reznick, whose suspension ends by its terms on June 27, 2025 or earlier if the Ninth Circuit reverses the order on the appeal submitted on the briefs on October 23, 2024, will serve as lead trial counsel on their behalf.

USC anticipates that Rasha Gerges Shields will serve as lead trial counsel on its behalf.

**Q.    INDEPENDENT EXPERT OR MASTER**

The Parties agree that an independent expert or master is unnecessary in this case.

**R.    SCHEDULE WORKSHEET**

The Parties jointly propose the schedule below. Because this is a putative class case and consistent with note 2 to the Court's Scheduling Order, the Parties have varied from the pretrial dates worksheet and suggested the additional deadlines noted below.

| MATTER | JOINT REQUESTED DATE | TIME |
|---|---|---|
| **TRIAL** [ ]Court [**X**] Jury<br><br>Duration Estimate: 4 days | March 3, 2026<br>(Tuesday) | 8:30 a.m. |
| **FINAL PRETRIAL CONFERENCE ("FPTC")** | February 13, 2026<br>(Friday) | 3:00 p.m. |

| MATTER | JOINT REQUESTED DATE |
|---|---|
| Exchange of Initial Disclosures | November 15, 2024 |
| Last Date to Hear Amended Pleadings and Addition of Parties Cut-Off | November 29, 2024 |

| Phase 1 Fact Discovery Cut-Off (includes hearing of discovery motions) | March 21, 2025 |
|---|---|
| Phase 1 Expert Disclosures | April 4, 2025 |
| Phase 1 Rebuttal Expert Disclosures | May 16, 2025 |
| Phase 1 Expert Discovery cutoff | June 16, 2025 |
| Phase 1 Motion Cut-Off (filing deadline), including motions for summary judgment | July 16, 2025 |
| Phase 2 Fact Discovery Cut-Off | 90 days after the Court decides USC's motion for summary judgment |
| Phase 2 Expert Disclosures | Phase 2 Fact Discovery Cut-Off + 30 days |
| Phase 2 Rebuttal Expert Disclosures | Phase 2 Fact Discovery Cut-Off + 75 days |
| Phase 2 Expert Discovery cutoff | Phase 2 Fact Discovery Cut-Off + 105 days |
| Phase 2 Motion Cut-Off (filing deadline) | Phase 2 Fact Discovery Cut-Off + 135 days |
| Settlement Conf. Completion Date (Magistrate Judge) | January 9, 2026 |
| Trial Filings (first round) in Limine Filing Deadline<br>• Motions in Limine<br>• Memoranda of Contentions of Fact and Law<br>• Witness Lists<br>• Joint Exhibit List<br>• Joint Status Report Regarding Settlement | January 16, 2026 |
| Trial Filings (second round)<br>• Oppositions to Motions in Limine | January 30, 2026 |

JOINT RULE 26(F) REPORT AND DISCOVERY PLAN

| | |
|---|---|
| <ul><li>Joint Proposed Final Pretrial Conference Order</li><li>Joint Agreed Upon Proposed Jury Instructions</li><li>Disputed Proposed Jury Instructions</li><li>Joint Proposed Verdict Forms</li><li>Joint Proposed Statement of the Case</li><li>Proposed Voir Dire Questions</li></ul> | |

**S.    OTHER ISSUES**

**1.  PLAINTIFFS' POSITION**

Plaintiffs respectfully submit that they cannot provide any meaningful discussion about the legal issues until the Court issues a ruling regarding subject matter jurisdiction and if necessary, Defendant's MTD.

**2.  DEFENDANT'S POSITION**

Michael Reznick filed this lawsuit in state court on behalf of plaintiffs.  However, Mr. Reznick has been suspended from practice in this Court (*see* Dkt 51, at 4 n.1), but nevertheless asserted in a sworn declaration that he is "counsel of record for Plaintiffs" and that he was "solely responsible for filing a late opposition to Defendant's motion to dismiss as a result of mis-calendaring the due date…" *See* Dkt. 31, at 3 (Sept. 10, 2024). During the Parties' October 18, 2024 meet and confer, plaintiffs' counsel Bryan Castaneda stated that he is representing plaintiffs and that Mr. Reznick is not representing plaintiffs in this action before this Court.

For the first time, plaintiffs have suggested in this joint report that removing the case to federal court and subsequent mention of Mr. Reznick's suspension somehow violates Rule 11. *Supra* part A-1.  That suggestion is baseless.  CAFA grants USC a

right to litigate in a federal forum; Congress did not require plaintiffs' counsel to be admitted (or not suspended) to practice in federal court in order to remove a case. *See* 28 U.S.C. §§ 1332(d)(2), (5). Such a requirement would be absurd, and it would allow for the bar admissions and conduct of a plaintiff's counsel to control a defendant's right to litigate in a federal forum.

Nor does Rule 11 require a counterparty to remain silent when it suspects that the conduct of an opposing attorney may be in violation of a court order. To the contrary, the Model Rules of Professional Conduct *encourage* a party to report potential misconduct to the relevant authority (here, this Court) when it learns of questionable professional behavior. Model Rule 8.3(a); *accord* Cal. R. Prof. Conduct 8.3(a)–(b). Mr. Reznick's suspension was not at issue until he submitted a declaration claiming to be "counsel of record" and "solely responsible" for a late pleading in this Court. Dkt. 31, at 3. Only then did USC raise the issue of his suspension from practice in this Court. Dkt. 32, at 5 (arguing that "[a] mistake by counsel who is 'solely responsible' for preparing a brief but who has been suspended from practice before this Court cannot be 'good cause'" to file late). Mr. Reznick's own representation to the Court made his suspension pertinent and material. In addition, USC noted Mr. Reznick's suspension in discussing plaintiffs' failure to comply with Local Rule 7-3. *See* Dkt. 51, at 3–4 n.1, 7–8. In that instance, plaintiffs' attorneys sent inconsistent messages on whether they would comply with USC's meet-and-confer request, and USC required clarity on who was representing the plaintiffs. Plaintiffs fail to explain how it is "scandalous" to refer to Mr. Reznick's already "highly publicized" suspension, which he has otherwise never "concealed from this Court" (yet never disclosed, until this filing). *Supra* part A-1.

Counsel's suggestion that USC has violated California Rule of Professional Conduct 3.10 (formerly Rule 5-100) is frivolous. *Supra* part A-1. Counsel points to no improper "threat" to obtain an advantage in litigation—because none has been made. Rule 3.10(a). As the comments make clear, that Rule does not preclude a lawyer from stating her "good faith" belief "that the conduct of the opposing lawyer or party violates"

applicable rules (and potentially reporting it).  *Id*. cmt. 1.  The relevant line is between a good faith belief and a "threat" to further some improper motive.  *See id*.  (In contrast, "a lawyer could not state or imply that a criminal or administrative action will be pursued unless the opposing party agrees to settle").  It is absurd—and would be itself sanctionable—to suggest that USC somehow issued an improperly veiled "threat" to plaintiffs' counsel (*supra* part A-1) by noting his own declaration claiming to be solely responsible for pleadings in a court where he is suspended from practice.  Indeed, the Rules expressly provide for raising such professional concerns to the Court.  *See* Model Rule 8.3; Cal. Prof. Conduct Rule 8.3(a)–(b).  Nothing requires USC to silently acquiesce to a potential violation of an order of this Court.

Dated:  October 25, 2024

LAW OFFICES  OF MICHAEL E. REZNICK

By: /s/ *Bryan Christopher Castaneda*
    Bryan Christopher Castaneda

Attorney for Plaintiffs
DOE JEWISH USC FACULTY MEMBER 2004 and DOE JEWISH USC STUDENT 1987

JONES DAY

By:  /s/ *Rasha Gerges Shields*
    Rasha Gerges Shields

Attorney for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

## **ATTESTATION**

Pursuant to Civ. L.R. 5-4.3.4, the undersigned attests that all other signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized this filing.

Dated:  October 25, 2024

JONES DAY

By:  /s/ *Rasha Gerges Shields*
    Rasha Gerges Shields