UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE JEWISH USC FACULTY MEMBER 2004, *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA,<br><br>　　　　　　　　　Defendant. | Case No. 2:24-cv-05712-FLA (SSCx)<br><br>**ORDER (1) DISCHARGING ORDER TO SHOW CAUSE RE: SUBJECT MATTER JURISDICTION; (2) DENYING PLAINTIFFS' MOTION TO REMAND; AND (3) DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT [DKTS. 9, 25, 49]** |

**ORDER**

On July 12, 2024, the court ordered the parties to show cause why the action should not be remanded for lack of subject matter jurisdiction ("OSC"). Dkt. 9 ("OSC"). Before the court are the responses of Plaintiffs Doe Jewish USC Faculty Member 2004 ("USC Faculty Member") and Doe Jewish USC Student 1987 ("USC Student") (together, "Plaintiffs"), Dkt. 17 ("Pls.' Resp."), and Defendant University of Southern California ("Defendant" or "USC"), Dkt. 18 ("Def.'s Resp.").

Also before the court is Plaintiffs' motion to remand ("Motion to Remand"). Dkt. 25 ("Mot. to Remand"). Defendant opposes the Motion to Remand. Dkt. 26. On August 30, 2024, the court found the Motion to Remand appropriate for resolution without oral argument and vacated the hearing set for September 6, 2024. Dkt. 28; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

Additionally, before the court is Plaintiffs' motion for leave to file a second amended complaint to divest the court of subject matter jurisdiction ("Motion to Amend"). Dkt. 49 ("Mot. to Amend"). Defendant opposes the Motion to Amend. Dkt. 51. On October 21, 2024, the court found the Motion to Amend appropriate for resolution without oral argument and vacated the hearing set for October 25, 2024. Dkt. 55; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court DISCHARGES the OSC, DENIES the Motion to Remand, and DENIES the Motion to Amend.

**BACKGROUND**

Plaintiffs filed this putative class action in California state court on June 5, 2024, arising from protests on Defendant's college campus relating to the Israel-Hamas war. *See generally* Dkt. 1-7 ("FAC"). The First Amended Complaint ("FAC") alleges Defendant "invited, encouraged, aided, abetted, permitted, allowed, and subsequently appeased, enabled and negotiated with violent, sword and other weapon-wielding, Jew-hating Hamas-supporting campus terrorists antisemites … who infiltrated and overtook its Los Angeles campus … setting up tents and occupying

1  [Defendant's] property under [Defendant's] watchful eyes." *Id.* ¶ 1. USC Faculty
2  Member brings this action in an "individual capacity as a Jewish USC Professor who
3  suffered damages and harm as a result of [Defendant's] conduct and as a
4  representative on behalf of all other similarly situated Jewish Professors." *Id.* ¶ 60.
5  Similarly, USC Student sues "individually and on behalf of all others similarly
6  situated." *Id.* ¶ 33. Plaintiffs allege nine causes of action for: (1) violation of the
7  Bane Act (Cal. Civ. Code § 52.1); (2) violation of the Unruh Act (*id.* § 51(b));
8  (3) violation of the Ralph Act (*id.* § 51.7); (4) negligence; (5) breach of contract;
9  (6) assault; (7) battery; (8) declaratory relief; and (9) injunctive relief. *Id.* ¶¶ 63–113.
10       On July 8, 2024, Defendant removed the action pursuant to the Class Action
11 Fairness Act ("CAFA"). Dkt. 1 at 1. On July 12, 2024, the court issued the OSC
12 because the allegations in the notice of removal did not demonstrate by a
13 preponderance of the evidence that the amount in controversy ("AIC") exceeded $5
14 million. OSC at 3. On August 8, 2024, Plaintiffs filed the Motion to Remand,
15 seeking remand on the following grounds: (1) the AIC is less than $5 million;
16 (2) minimal diversity does not exist; (3) the putative classes contain fewer than 100
17 members; and (4) remand is required under the mandatory abstention doctrine. Mot.
18 to Remand at 6–10. On September 27, 2024, Plaintiffs filed the Motion to Amend,
19 seeking leave to file a second amended complaint that "limits the putative classes to
20 California citizens" and, thus, "defeats diversity jurisdiction." Mot. to Amend at 2.

21                                  **DISCUSSION**
22 **I.   Legal Standard**
23       A suit may be removed from state court to federal court only if the federal court
24 would have had subject matter jurisdiction over the case. *See* 28 U.S.C. § 1441(a).
25 CAFA provides federal district courts with original jurisdiction "over class actions in
26 which the class members number at least 100, at least one plaintiff is diverse in
27 citizenship from any defendant, and the aggregate amount in controversy exceeds
28 $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d

1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)).  CAFA's diversity requirement of minimal diversity exists when "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Id*. (citing 28 U.S.C. § 1332(d)(2)(A)).

"The party seeking the federal forum bears the burden of establishing that the statutory requirements of federal jurisdiction have been met." *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013); *see also Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683-685 (9th Cir. 2006) ("[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.").  When evaluating whether there is jurisdiction, courts may consider summary judgment-type evidence, such as affidavits and declarations. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018).

No presumption against removal exists under CAFA.  *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").  CAFA's provisions are to be construed "broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id*. (quoting S. Rep. No. 109-14, 43 (2005)).

## II.   Motion to Amend

Plaintiffs seek to divest the court of CAFA jurisdiction by limiting the putative classes to California citizens, thus eliminating minimal diversity, as Defendant is a California citizen.  Mot. to Amend at 2.  This is impermissible.  *See Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1276–79 (9th Cir. 2017).  In *Broadway Grill*, the district court granted plaintiff leave to amend to modify the class "to include only 'California citizens,' in order to eliminate minimal diversity." *Id*. at 1276.  The Ninth Circuit reversed, explaining "citizenship of the class for purposes of minimal diversity must be determined as of the operative complaint at the date of removal." *Id*. at 1279

(citing 28 U.S.C. § 1332(d)(7)). "[P]ost-removal amendments that change the nature of the claims or the makeup of the class"—like the amendments proposed here—are impermissible. *Id.*; *see* Dkt. 49-1 (proposed SAC) ¶¶ 60–61.

Accordingly, the Motion to Amend is DENIED.

### III. Motion to Remand

#### A. Minimal Diversity

Minimal diversity under CAFA exists when any member of a class of plaintiffs is a citizen of a state different from any defendant. *Ibarra*, 775 F.3d at 1195. "To be a citizen of a state, a natural person must first be a citizen of the United States. Her state citizenship is then determined by her state of domicile." *Alonzo v. Saddle Ranch Holdings, LLC*, Case No. 21-cv-06630-CJC (JCx), 2021 WL 10378009, at *3 (C.D. Cal. Nov. 23, 2021) (cleaned up). "One's domicile is her permanent home—that is, where (i) she resides, (ii) with the intention to remain or to which she intends to return." *Id.* (cleaned up). "At minimum, a person's residence constitutes some evidence of domicile." *Id.* (citation omitted).

Defendant has established by a preponderance of the evidence that minimal diversity existed "as of the operative complaint at the date of removal." *Broadway Grill*, 856 F.3d at 1279; *see also Rodriguez*, 728 F.3d at 978 ("The party seeking the federal forum bears the burden of establishing that the statutory requirements of federal jurisdiction have been met."). It is undisputed Defendant is a California citizen. *See* Mot. to Remand at 3; Dkt. 26 at 8–9. The court also credits the declaration of Frank Chang ("Chang")—the University Registrar at USC—who attests that "over 100 individual Spring 2024 Students have self-reported their religious affiliation as Jewish, including [multiple] from states outside of California … and at least one is a citizen of a country outside of the United States …." Dkt. 1-10 ¶ 4. Based on these facts, the court finds it more likely than not that at least one member in the putative student class is not a California citizen, thus satisfying minimal diversity under CAFA.

Accordingly, the Motion to Remand is DENIED on this basis.

## B. Number of Class Members

To demonstrate more than 100 putative class members, Defendant submits the declaration of Chang, who avers that over 100 students self-reported as Jewish during the spring 2024 semester. Dkt. 26 at 5; Chang Decl. ¶¶ 3–4. Additionally, Defendant submits information from Hillel International[1], which estimates 4,000 Jewish students attend USC.[2] Dkt. 19 at 2; Dkt. 26 at 5.

In opposition, Plaintiffs submit the declaration of their counsel, who attests the class members he spoke with did not want to participate in this action. Dkt. 17 at 9–11 ¶ 2 ("While a certain number of potential class members (both Jewish students and Jewish faculty members) have informed that they did not want to participate out of fear or reprisal or retribution, the vast majority of Jewish USC Students who have declined … have done so out of apathy."). Plaintiffs' counsel concludes that "willing and able potential class members who felt that they were 'harmed and damaged' by the alleged antisemitism are more likely less than 20–25." *Id.* Plaintiffs, however, cite no authority supporting their contention that putative class members are limited to the "willing and able." *See id.*; Mot. to Remand at 8; Pls.' Resp. at 3.

Plaintiffs also fail to substantiate their argument that other Jewish faculty and students were unlikely to "suffer[] damages and harm as a result of [Defendant's] conduct." Pls.' Resp. at 3 ("Despite Defendant's attempt to reframe the class

---

[1] *See About*, Hillel International, https://www.hillel.org/about/ (last visited December 5, 2024) ("Hillel is the largest Jewish campus organization in the world, serving more than 180,000 Jewish students each year at 850+ colleges and universities around the world.").

[2] Defendant's request that the court take judicial notice of a webpage on Hillel International's website is GRANTED. Dkt. 19; *see* Fed. R. Evid. 201; *University of Southern California*, Hillel International, https://www.hillel.org/college/university-of-southern-california/ (last visited December 5, 2024). The request for judicial notice (Dkt. 19) is otherwise DENIED as moot.

definition, the two proposed subclasses in fact are not comprised of 'all' Jewish Students and 'all" Jewish Faculty members who attend or work for USC.  Rather, the proposed subclasses are comprised of similarly situated Jewish Students and Faculty Professors who suffered damages and harm as a result of [Defendant's] conduct.") (cleaned up).  To the contrary, as alleged, all Jewish faculty and students were harmed similarly by the same general conduct.  *See* FAC ¶¶ 2 (alleging protestors "terrorized and victimized blameless Jewish Students and Faculty in a rei[g]n of terror … Jewish Students and Jewish Professors and Faculty were so fearful for their lives and safety that they could not appear in the Defendant University's 'town square' or anywhere else on campus without being verbally or physically assaulted by the [protestors]"), 3 ("Jewish Students and Jewish Professors and Faculty were told by [Defendant] to work remotely from home, or remain in their offices or dorms for their 'own safety.'"), 6 ("The purpose of and intent of the [protestors] … [was] to terrorize, intimidate, assault, and shame Jewish Students and Faculty members and interfere with their right to freely travel to and from classes, offices, and otherwise accessing other facilities at the Defendant University by threats, intimidation, and coercion.  All of this was done to harm [Jewish students and professors] and create the equivalent of a hostile work environment[.]").

In light of Defendant's evidence, *see* Dkt. 26 at 5, and the allegations in the First Amended Complaint, *see generally* FAC, the court finds it more likely than not that at least 100 Jewish students attended USC in the spring 2024 semester and were "similarly situated" to USC Student, *see id.* ¶ 32.

Accordingly, the Motion to Remand is DENIED on this basis.

C.     **Amount in Controversy**

"To meet CAFA's amount-in-controversy requirement, a defendant needs to plausibly show that it is reasonably possible that the potential liability exceeds $5 million."  *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020). The amount in controversy is the "amount at stake in the underlying litigation." *Id.*

(citation omitted). "Amount at stake" does not mean likely or probable liability; rather, it refers to possible liability. *Id.*

Defendant compares this action to *Paletz v. Adaya*, Case No. B247184, 2014 WL 7402324, at *1–2 (Cal. Ct. App. Dec. 29, 2014), wherein 18 individual plaintiffs sued a hotel owner who shut down a pool party fundraiser supporting the Israeli Defense Forces because the attendees were Jewish. *See id.* at 2 (defendant stated she did not "want any [f---ing] Jews in the pool," "systematically shut down the [] pool party," and removed Plaintiffs and other Jews while permitting other guests to stay). The jury awarded each plaintiff between $26,000 and $180,000 in compensatory and statutory damages under the Unruh Act. *Id.* at *3. The mean award was $66,555, and the median award was $55,000. *See* Def.'s Resp. at 7. Defendant argues the "allegations here are at least as severe as those in *Paletz*" and notes the plaintiffs in *Paletz* "were excluded on a single occasion," whereas "plaintiffs here claim to have been subjected to offensive conduct and mistreatment for 'weeks on end.'" *Id.* (quoting FAC ¶ 74).

Defendant has "plausibly show[n] that it is reasonably possible that the potential liability exceeds $5 million." *Greene*, 965 F.3d at 771–72. While estimating damages in a case such as this one is difficult, the court finds the instant allegations are at least reasonably similar to *Paletz*, such that it is "reasonably possible" that each putative class member in this action could recover $55,000 (*i.e.*, the median amount awarded in *Paletz*). *See id.*; FAC ¶¶ 2 ("Plaintiffs … were touched without their consent and spat on by the [protesters] if [Plaintiffs] dared cross into the [protesters' encampment]."), 5 ("[T]he dangerous hate-filled, violent, and anti-Semitic speech included rote comments repeated *ad nauseum* through megaphones that were so offensive to any Jew that it offends them to hear it, eliciting memories of the Holocaust and October 7, 2023—slogans that include 'Death to Israel' …") (italicization added), 7 ("[Defendant] permitted, aided, abetted[,] and encouraged the [protestors] to paint swastikas and other painfully offensive and hurtful comments on

USC property while appeasing the [protestors] and actually listening to and considering their antisemitic demands."), 28 ("Encampments calling for 'death to Israel, death to America' and even 'death to Jews' were growing in numbers and I could not get to my office without being accosted by protestors …"), 31 ("Simply stated, what we are witnessing is history repeating itself.  The Holocaust in essence began at the universities in Germany when the Nazis prevented Jewish students from entering the campus and then forced out the Jewish professors.  When our pathways are blocked and we are granted entry only when we attest that we do not support Israel, how are we free to both express our Jewish identity and perform our jobs at USC?").  Assuming conservatively a minimum class size of 100 and an award of $55,000 to each class member pursuant to the Unruh Act, the total damages are $5.5 million, satisfying the AIC requirement.

Accordingly, Defendant has established it is more likely than not that the AIC is satisfied, and the court need not address Defendant's remaining arguments.  *See* Dkt. 26 at 10–17.  The Motion to Remand is DENIED on this basis.

### D. Local Controversy Exception – 28 U.S.C. § 1332(d)(4)(B)

Plaintiffs argue that, even if the court determines CAFA jurisdiction is proper, the court must still remand the action pursuant to 28 U.S.C. § 1332(d)(4)(B), which "mandates a court dismiss a class action when 'two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was filed.'" *Alonzo v. Saddle Ranch Holdings, LLC*, Case No. 21-cv-06630-CJC (JCx), 2021 WL 10378009, at *3 (C.D. Cal. Nov. 23, 2021) (quoting 28 U.S.C. § 1332(d)(4)(B)).

"[T]he burden of proof for establishing the applicability of an exception to CAFA jurisdiction rests on the party seeking remand[.]" *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013) (citation omitted).  "Where facts are in dispute, the statute requires district courts to make factual findings before granting a motion to remand a matter to state court." *Id.* at 883–84 (citation omitted).  Remand

cannot be based "simply on a plaintiff's allegations, when they are challenged by the defendant." *Id.* at 884 (citation omitted).  Rather, "there must ordinarily be at least some facts in evidence from which the [] court may make findings regarding class members' citizenship." *Id.* ("[Plaintiff]'s arguments for allowing a district court to make the required factual finding where no evidence has been presented are unpersuasive. … [S]uch freewheeling discretion amounts to no more than guesswork … based on a sense of how the world works, but guesswork nonetheless.  A jurisdictional finding of fact should be based on more than guesswork.") (quotation marks and citation omitted).

      Plaintiffs submit an article from USC Today dated October 1, 2021, which states that a "full 42% of the newly enrolled class [of 2025] [was] from California" and "[a]lmost 200 of USC's newly enrolled students earned their diplomas from the Los Angeles Unified School District."  *See* Dkt. 27 at 5–6; Ron Mackovich-Rodriguez, *USC's 2021 entering undergrad class is the most diverse and talented yet*, USC Today (Oct. 1, 2021), https://today.usc.edu/usc-fall-2021-enrollment-public-school-first-generation-students/.  Plaintiffs, however, fail to explain how these statistics translate to a finding that two-thirds of "all proposed plaintiff classes in the aggregate"—*i.e.*, Jewish students and faculty members combined—are California citizens.  28 U.S.C. § 1332(d)(4)(B); *see also* Dkt. 27 at 5–6.  At best, Plaintiffs establish a reasonable likelihood that at least 42% of all enrolled students in fall 2021 were California citizens, given they were from California and attending a California university.  *See Alonzo*, 2021 WL 10378009, at *3 ("a person's residence constitutes some evidence of domicile").  Plaintiffs also fail to account for students who, after the fall 2021 semester, dropped out, transferred, or otherwise were no longer at USC by the spring 2024 semester.  *See* Dkt. 27 at 5–6.

      Lastly, while the court could infer more than two-thirds of the Jewish faculty are likely California citizens, such guesswork is impermissible.  *See Mondragon*, 736 F.3d at 884 ("The inference drawn by the district court in this case was

understandable. It is likely that most of the prospective class members—we would guess more than two-thirds of them—were California citizens at the time the lawsuit was filed. But it is also likely that some of them were not.").

Accordingly, Plaintiffs have failed to establish two-thirds of the putative class members in the aggregate are California citizens, and the court DENIES the Motion to Remand on this basis.

## CONCLUSION

For the foregoing reasons, the court DISCHARGES the OSC, DENIES the Motion to Remand, and DENIES the Motion to Amend.

IT IS SO ORDERED.

Dated: January 3, 2025

FERNANDO L. AENLLE-ROCHA
United States District Judge