UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE JEWISH USC FACULTY MEMBER 2004, *et al.*,<br><br>                              Plaintiffs,<br><br>          v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA,<br><br>                              Defendant. | Case No. 2:24-cv-05712-FLA (SSCx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND TO STRIKE CLASS ALLEGATIONS [DKTS. 10, 11]** |

1

<u>**ORDER**</u>

2       Before the court is Defendant University of Southern California's ("Defendant"

3  or "USC") Motion to Dismiss Plaintiffs' First Amended Complaint and to Strike Class

4  Allegations ("Motion").[1]  Dkt. 10 ("Mot.").  Plaintiffs Doe Jewish USC Faculty

5  Member 2004 ("Plaintiff Faculty Member") and Doe Jewish USC Student 1987

6  ("Plaintiff Student") (together, "Plaintiffs") oppose the Motion.  Dkt. 39 ("Opp'n").

7  On October 21, 2024, the court found the Motion appropriate for resolution without

8  oral argument and vacated the hearing set for October 25, 2024.  Dkt. 55; Fed. R. Civ.

9  P. 78(b); Local Rule 7-15.

10       For the reasons stated herein, the court GRANTS the Motion.

11

<u>**BACKGROUND**</u>

12       Plaintiffs filed this putative class action in California state court on June 5,

13  2024, and bring claims relating to protests on Defendant's campus in Los Angeles,

14  California, regarding the Israel-Hamas war.  *See generally* Dkt. 1-7 (First Amended

15  Complaint, "FAC").  Plaintiffs, in their First Amended Complaint, allege Defendant

16  "invited, encouraged, aided, abetted, permitted, allowed, and subsequently appeased,

17  enabled and negotiated with violent, sword and other weapon-wielding, Jew-hating

18  Hamas-supporting campus terrorists antisemites … who infiltrated and overtook its

19  Los Angeles campus … setting up tents and occupying [Defendant's] property under

20  the [Defendant]'s watchful eyes."  *Id.* ¶ 1.

21       Plaintiff Faculty Member brings this action in an "individual capacity as a

22  Jewish USC Professor who suffered damages and harm as a result of [Defendant]'s

23  conduct and as a representative on behalf of all other similarly situated Jewish

24  Professors."  *Id.* ¶ 60.  Plaintiff Student sues "individually and on behalf of all others

25  similarly situated."  *Id.* ¶ 33.

26

27

28

[1] Defendant also filed a request for judicial notice.  Dkt. 11.  The court does not rely
on the information sought to be noticed and, thus, DENIES the request as moot.

Plaintiffs allege nine causes of action: (1) violation of the Bane Act (Cal. Civ. Code § 52.1); (2) violation of the Unruh Act (*id.* §§ 51, 52); (3) violation of the Ralph Act (*id.* § 51.7); (4) negligence; (5) breach of contract; (6) assault; (7) battery; (8) declaratory relief; and (9) injunctive relief.  *Id.* ¶¶ 63–113.

On July 8, 2024, Defendant removed this action pursuant to jurisdiction under the Class Action Fairness Act (CAFA).  Dkt. 1 at 1.  On January 3, 2025, the court denied Plaintiffs' motion to remand.  Dkt. 69.

Here, Defendant moves to dismiss each cause of action for failure to state a claim pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) and to dismiss or strike the class allegations under Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D).  Mot. at 2, 19.

## MOTION TO DISMISS CLAIMS

### I.    Legal Standard

Under Rule 12(b)(6) a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted."  The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of the claims asserted in the complaint.  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories."  *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations and brackets omitted).

1    "Factual allegations must be enough to raise a right to relief above the

2    speculative level, on the assumption that all the allegations in the complaint are true

3    (even if doubtful in fact)." *Id.* (citations and parentheticals omitted). "Determining

4    whether a complaint states a plausible claim for relief is 'a context-specific task that

5    requires the reviewing court to draw on its judicial experience and common sense.'"

6    *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S.

7    at 679).

8         When evaluating a complaint under Rule 12(b)(6), the court "must accept all

9    well-pleaded material facts as true and draw all reasonable inferences in favor of the

10   plaintiff." *Caltex*, 824 F.3d at 1159. Legal conclusions "are not entitled to the

11   assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S.

12   at 679. The court need not accept as true allegations that contradict matters properly

13   subject to judicial notice or established by exhibits attached to the complaint.

14   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on*

15   *other grounds*, 275 F.3d 1187 (9th Cir. 2001). "Nor is the court required to accept as

16   true allegations that are merely conclusory, unwarranted deductions of fact, or

17   unreasonable inferences." *Id.*

18   **II.    Violation of Bane Act (Cal. Civ. Code § 52.1)**

19        Plaintiffs allege Defendant violated the Bane Act by interfering with their right

20   to practice freely their religion while on the USC campus. *See* FAC ¶¶ 63a (alleging

21   right to "practice [] Jewish faith" on campus), 63b (alleging right to "attend school

22   discrimination-free and free from physical harm and terrorism"), 65 ("Plaintiffs

23   reasonably believed that if they exercised their Jewish faith … the [protestors] would

24   commit violence against them or their property."), 67 (alleging Defendant prevented

25   Plaintiffs "from gaining free access to a safe environment that non-Jewish Students

26   and Faculty have").

27   / / /

28   / / /

4

The Bane Act provides a civil cause of action against anyone who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California][.]"  Cal. Civ. Code § 52.1(b); *see also id.* § 52.1(c) (creating civil cause of action).  "The essence of a Bane Act claim is that the defendant, by the specified improper means (*i.e.*, 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law[,] or to force the plaintiff to do something that he or she was not required to do under the law."  *Austin B. v. Escondido Union School Dist.,* 149 Cal. App. 4th 860, 883 (2007) (citation omitted).

Further, the plaintiff "must show the defendant interfered with or attempted to interfere with the plaintiff's legal right by *threatening or committing violent acts*. Speech is insufficient to establish the requisite threat unless it includes a threat of violence."  *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 395 (2017), *as modified on denial of reh'g* (May 23, 2017) (emphasis added) (cleaned up); *see also* Cal. Civ. Code § 52.1(k) ("Speech alone is not sufficient to support an action brought pursuant to subdivision (b) or (c), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.").

Additionally, a defendant must have the "specific intent to violate a constitutional right."  *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) (cleaned up); *see also, e.g.*, *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017), *as modified* (Nov. 17, 2017) ("[T]he egregiousness required by [§] 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure

….").

Determination of specific intent is a two-pronged inquiry. *Cornell*, 17 Cal. App. 5th at 803. First, the court must determine whether the "right at issue" is "clearly delineated and plainly applicable under the circumstances of the case[.]" *Id.* If the court answers affirmatively, then a jury must determine whether the defendant "commit[ted] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right[.]" *Id.* "If both requirements are met, even if the defendant did not in fact recognize the unlawfulness of his act, he will be adjudged as a matter of law to have acted with the requisite specific intent—*i.e.*, in reckless disregard of constitutional or statutory prohibitions or guarantees." *Id.* (cleaned up). Liability, however, does not require proof that a defendant acted with "discriminatory animus or intent." *Simmons v. Superior Ct.*, 7 Cal. App. 5th 1113, 1125 (2016).

Altogether, the model jury instruction for violation of the Bane Act states:

Plaintiffs claim Defendant intentionally interfered with or attempted to interfere with Plaintiffs' civil rights by threats, intimidation, or coercion. To establish this claim, Plaintiffs must prove all of the following:

1.   That by threats, intimidation, or coercion, Defendant caused Plaintiffs to reasonably believe that if Plaintiffs exercised their right to practice freely their religion, Defendant would commit violence against Plaintiffs and that Defendant had the apparent ability to carry out the threats;

2.   That Defendant intended to deprive Plaintiffs of their enjoyment of the interests protected by the right to practice freely their religion;

3.   That Plaintiffs were harmed; and

4.   That Defendant's conduct was a substantial factor in causing Plaintiffs' harm.

6

1  Judicial Council of California Civil Jury Instructions ("CACI") No. 3066 (modified as
2  applicable here).

3        Here, Plaintiffs do not allege plausibly a violation of the Bane Act, as they do
4  not allege Defendant threatened, intimidated, or coerced Plaintiffs into believing that,
5  if Plaintiffs practiced their religion on the USC campus, Defendant would commit
6  violence against them. *See id.*, Element 1. To the contrary, Plaintiffs allege the
7  *protestors* threatened them and Plaintiffs reasonably believed the *protestors* would
8  commit violence against Plaintiffs if Plaintiffs exercised their faith. FAC ¶ 65
9  ("Plaintiffs reasonably believed if they exercised their Jewish faith or identified
10 themselves as being Jewish or Israeli, the Campus Terrorists would commit violence
11 against them or their property.").

12       While Plaintiffs allege Defendant aided and abetted the protestors through
13 various acts, these acts do not constitute plausibly threats, intimidation, or coercion
14 from which Plaintiffs could believe reasonably Defendant would commit violence
15 against Plaintiffs. *See id.* ¶ 1 ("[Defendant] invited, encouraged, aided, abetted,
16 permitted, allowed, and subsequently appeased … the [protestors] …"). Specifically,
17 first, Defendant's act of permitting protestors on campus cannot plausibly be
18 considered a threat that Defendant would commit violence against Plaintiffs if they
19 practiced their faith on campus. *Id.* ¶ 63c. Second, Defendant's act of telling
20 Plaintiffs "to work remotely from home, or remain in their offices or dorms for their
21 'own safety'" cannot plausibly be considered a threat that Defendant would commit
22 violence against Plaintiffs if they did not work remotely from home—indeed, the
23 opposite appears true, *i.e.*, Defendant was attempting to protect Plaintiffs from
24 potential harm. *Id.* ¶ 3. Third, Defendant's act of inviting the valedictorian to give a
25 graduation speech cannot plausibly be considered a threat that Defendant would
26 commit violence against Plaintiffs. *Id.* ¶¶ 27, 40–41. Lastly, even assuming
27 Defendant could be liable for an email sent by one of its professors, an email asking
28 Plaintiff Student to participate in a protest cannot plausibly be considered a threat that

Defendant would commit violence against Plaintiff Student. *Id.* ¶ 45.

Additionally, Plaintiffs fail to state a Bane Act claim because they allege only in conclusory fashion that Defendant had the specific intent to prevent Plaintiffs from practicing freely their religion. CACI No. 3066, Element 2; *Twombly*, 550 U.S. at 555 (a "formulaic recitation" of the elements is insufficient); *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012) ("The act of interference with a constitutional right must itself be deliberate or spiteful."). Plaintiffs, in their opposition to the Motion, merely set their conclusory assertion from the First Amended Complaint in bold and italicized font. Opp'n at 3 ("USC ***intentionally and purposely*** aided, abetted, encouraged, facilitated[,] and enabled a mob of pro-Hamas terrorist students and outside agitators to take over and operate its campus for weeks on end … to intimidate, assault, terrorize, and control access to the campus and deny free passage for Jewish [students and faculty members].") (emphasis in original) (quoting FAC ¶ 2). Plaintiffs allege no facts in support of their assertion. Opp'n at 3–5; *see Mujica v. AirScan Inc.*, 771 F.3d 580, 592 (9th Cir. 2014) ("Plaintiffs have the burden of pleading sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, and a mere conjecture that conduct may have occurred … does not meet that burden.") (internal quotation marks and citations omitted).

While Plaintiffs allege certain acts by the protestors from which the court might be able to infer the protestors' intent, the court cannot infer Defendant's intent from the protestors' acts. FAC ¶¶ 24–26, 28, 39–41, 44–45. Rather, Plaintiffs' allegations actually support Defendant did not have the requisite intent, as they suggest Defendant and the protestors had adverse interests. *See* FAC ¶¶ 26 (alleging the protestors were protesting Defendant's investments in Israel), 86 (alleging Defendant called the Los Angeles Police Department to remove the protestors' encampment).

For these reasons, the court GRANTS the Motion on this basis and DISMISSES Plaintiffs' Bane Act claim with leave to amend.

/ / /

III.   **Violation of Unruh Act (Cal. Civ. Code §§ 51, 52)**

The Unruh Act states in relevant part:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b); *see also id.* § 52(a) ("Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.").

"In general terms, the Unruh Act entitles individuals to full and equal access to public accommodations, and prohibits 'unreasonable, arbitrary, or invidious discrimination.'" *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1062 (C.D. Cal. 2015) (citing *Sprewell*, 266 F.3d at 989; *Sunrise Country Club Ass'n v. Proud*, 190 Cal. App. 3d 377, 380 (1987)). "Unreasonable, arbitrary, or invidious discrimination is present where the defendant's policy or action 'emphasizes irrelevant differences' or 'perpetuates [irrational] stereotypes.'" *Id.* (citing *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 33 (1985)). "A policy that is neutral on its face is not actionable under the Unruh Act, even when it has a disproportionate impact on a protected class." *Id.* (quotation marks omitted) (citing *Turner Ass'n of Am. Med. Colls.*, 167 Cal. App. 4th 1401, 1408 (2008)).

CACI No. 3060 states:

Plaintiffs claim that Defendant denied them full and equal accommodations, advantages, facilities, privileges, or services because of

their race, religion, ancestry, or national origin.  To establish this claim, Plaintiffs must prove all of the following:

1.  That Defendant aided or incited a denial of full and equal accommodations, advantages, facilities, privileges, or services to Plaintiffs;

2.  That a substantial motivating reason for Defendant's conduct was its perception of Plaintiffs' race, religion, ancestry, or national origin;

3.  That Plaintiffs were harmed; and

4.  That Defendant's conduct was a substantial factor in causing Plaintiffs' harm.

(modified as applicable here).

### A.    Plaintiff Faculty Member

Defendant argues Plaintiff Faculty Member's Unruh Act claim fails because Plaintiff Faculty Member is Defendant's employee and "the Unruh Act does not apply to an employer-employee relationship." Mot. at 13 (citing *Alcorn v. Anbro Engineering, Inc.*, 2 Cal. 3d 493, 499–500 (1970); *Rojo v. Kliger*, 52 Cal. 3d 65, 77 (1990) ("[T]he Unruh Civil Rights Act has no application to employment discrimination.")).  The court agrees with Defendant and, thus, finds leave to amend would be futile.  *See also Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 83 n. 12 (1985), *as modified on denial of reh'g* (Dec. 19, 1985) (affirming the Unruh Act does not cover the employer-employee relationship).

Additionally, Plaintiff Faculty Member does not respond to this argument and, therefore, concedes it.  Opp'n at 3–5; *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n. 7 (N.D. Cal. 2013) (failure to respond to argument constitutes waiver or abandonment).

Accordingly, the court GRANTS the Motion on this basis and DISMISSES Plaintiff Faculty Member's Unruh Act claim without leave to amend.

/ / /

**B.    Plaintiff Student**

Defendant argues Plaintiff Student fails to allege a denial of "full and equal accommodations."  Mot. at 14 (quoting Cal. Civ. Code § 51(b)).  The court disagrees. Plaintiff Student alleges she and other Jewish students "were so fearful for their lives and safety that they could not appear in [USC]'s 'town square' or anywhere else on campus without being verbally or physically assaulted … Plaintiffs [and Jewish students] were touched without their consent and spat on by the Campus terrorists if they dared to cross into the Encampment."  FAC ¶ 2.  Plaintiff Student further alleges Defendant permitted this conduct to continue "for weeks on end before finally taking steps of remediation."  *Id.*  Plaintiff Student, thus, alleges plausibly Defendant "aided or incited a denial of full and equal access" to one or more portions of the USC campus.  CACI 3060, Element 1.

Next, Defendant argues Plaintiff Student does not allege plausibly Defendant specifically intended to deprive Plaintiff Student's right to equal accommodations because of Plaintiff Student's race, religion, or national origin.  Mot. at 8–9; CACI No. 3060, Element 2.  The court agrees.  As described regarding the Bane Act claim, Plaintiff Student cannot allege Defendant's intent based on the protestors' conduct. *See supra* § II.  The court cannot reasonably infer "a substantial motivating reason for Defendant's conduct" was Plaintiff Student's race, religion, or national origin.  CACI No. 3060, Element 2.

Additionally, Plaintiff Student alleges insufficiently the remaining elements of an Unruh Act claim, as Plaintiff Student merely recites these elements in conclusory fashion. FAC ¶¶ 72–76; *Twombly*, 550 U.S. at 555.

For these reasons, the court GRANTS the Motion on this basis and DISMISSES Plaintiff Student's Unruh Act claim with leave to amend.

**IV.    Violation of Ralph Act (Cal. Civ. Code § 51.7)**

Under the Ralph Act, "[a]ll persons within [California] have the right to be free from any violence, or intimidation by threat of violence, committed against their

11

persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics. Cal. Civ. Code § 51.7(b)(1).  Thus, to establish liability, the plaintiff must prove the defendant "threatened or committed violent acts against the plaintiff or their property, and a motivating reason for doing so was a prohibited discriminatory motive, or that the defendant aided, incited, or conspired in the denial of a protected right."  *Gabrielle A. v. Cnty. of Orange*, 10 Cal. App. 5th 1268, 1291, *as modified* (Apr. 18, 2017) (citing CACI No. 3063; *Austin B.*, 149 Cal. App. 4th at 880–81); *see also* CACI No. 3063, Element 2 (plaintiff must prove "a substantial motivating reason for Defendant's conduct was Defendant's perception of Plaintiffs' race, religion, ancestry, or national origin") (modified as applicable here).

Defendant argues Plaintiff Student's Ralph Act claim fails because liability requires an "objectionably reasonable perception of violence" and Plaintiff Student "does not describe any specific threats of violence against her."  Mot. at 14 (citing *Winarto v. Toshiba Am. Electronics Components, Inc.*, 274 F.3d 1276, 1289–90 (9th Cir. 2001)).  The court disagrees.  Plaintiff Student alleges plausibly a "reasonable person, standing in [her] shoes" would have been intimidated and perceived a threat of violence.  *Winarto*, 274 F.3d at 1289; *see* FAC ¶¶ 2, 28–30, 32, 36, 43, 49–54.

Plaintiffs' Ralph Act claims, however, ultimately fail for the same reasons discussed above regarding the Bane and Unruh Acts.  Plaintiffs do not allege plausibly that a "substantial motivating reason" for Defendant's conduct was Plaintiffs' race or religion.  CACI No. 3063, Element 2; *see supra* §§ II, III.B.

Accordingly, the court GRANTS the Motion on this basis and DISMISSES Plaintiffs' Ralph Act claims with leave to amend.

## V.    Tort Claims

### A.    Plaintiff Faculty Member

Defendant argues Plaintiff Faculty Member's tort claims for negligence, assault,

1   and battery are barred by the exclusivity provisions of the California Workers'

2   Compensation Act ("WCA").  Mot. at 15 (citing Cal. Lab. Code § 3600(a); *Miklosy v.*

3   *Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902–03 (2008); *Jones v. Regents of Univ. of*

4   *Cal.*, 97 Cal. App. 5th 502, 508 (2023)).  The court agrees.

5        "Where an employee is injured in the course and scope of his or her

6   employment, workers' compensation is generally the exclusive remedy of the

7   employee and his or her dependents against the employer." *Jones*, 97 Cal. App. 5th

8   at 507 (citing Cal. Lab. Code §§ 3600(a), 3602).  "The 'exclusivity rule' is based upon

9   a presumed compensation bargain: The employer assumes liability for industrial

10  personal injury or death without regard to fault in exchange for limitations on the

11  amount of that liability.  The employee is afforded relatively swift and certain

12  payment of benefits to cure or relieve the effects of industrial injury without having to

13  prove fault but, in exchange, gives up the wider range of damages potentially

14  available in tort." *Id.* at 507–08 (cleaned up).  "The workers' compensation statutes

15  must be 'liberally construed by the courts with the purpose of extending their benefits

16  for the protection of persons injured in the course of their employment.'" *Id.* at 508

17  (quoting Cal. Lab. Code § 3202).  "This is so even where it might be to the advantage

18  of a particular plaintiff to avoid workers' compensation benefits and seek a remedy at

19  law." *Id.* (citation omitted).

20       For example, in *Jones*, the plaintiff worked for the University of California,

21  and, while riding her bicycle home from work, she swerved to miss a trench, fell, and

22  sustained injuries. *Id.* at 505–06.  The WCA's exclusivity rule barred the plaintiff's

23  negligence claim against the University. *Id.* at 509.

24       Similarly, in *Miklosy*, the two plaintiffs worked for the University of California

25  as computer scientists on a project designed to determine the safety and reliability of

26  the nation's nuclear weapons stockpile.  44 Cal. 4th at 883.  The plaintiffs raised

27  problems to management regarding potential collisions by large million dollar robotic

28  "positioners," the delivery of unusable and untested control software, a lack of defined

engineering and operation processes, and inadequate control operator training. *Id.*
The first plaintiff was terminated, and the second resigned because she believed she
was about to be terminated. *Id.* The plaintiffs then filed whistleblower complaints
with the University. *Id.* at 883–84. The University determined the first plaintiff was
terminated for unsatisfactory work performance, and the second plaintiff's supervisors
actually tried to convince her to stay. *Id.* at 884. The Plaintiffs filed a lawsuit against
the University, including a claim for intentional infliction of emotional distress. *Id.*
They alleged the University engaged in "outrageous conduct" that was intended to,
and did, cause severe emotional distress. *Id.* The California Supreme Court held the
plaintiffs' claims were barred by the WCA's exclusivity rule. *Id.* at 902. "The alleged
wrongful conduct … occurred at the worksite, in the normal course of the employer-
employee relationship, and therefore workers' compensation [was] plaintiffs'
exclusive remedy for any injury that may have resulted." *Id.* (citations omitted); *see
also Fretland v. Cnty. of Humboldt*, 69 Cal. App. 4th 1478, 1486–91 (1999) (WCA's
exclusivity rule barred plaintiff's assault and battery claims).

Here, Plaintiff Faculty Member's claims for negligence, assault, and battery all
occurred at USC during the normal course of the employer-employee relationship.
FAC ¶¶ 85–86, 92, 97. The court, thus, finds Plaintiff Faculty Member's tort claims
are barred by the WCA's exclusivity rule and leave to amend would be futile.
*Miklosy*, 44 Cal. 4th at 902; *Fretland*, 69 Cal. App. 4th at 1486–91. Additionally,
Plaintiff Faculty Member does not respond to this argument and, thus, concedes it.
Opp'n at 5; *Ramirez*, 941 F. Supp. 2d at 1210 n. 7.

For these reasons, the court GRANTS the Motion on this basis and DISMISSES
Plaintiff Faculty Member's claims for negligence, assault, and battery without leave to
amend.

### B.    Plaintiff Student

#### 1.    Negligence

"To succeed in a negligence action, the plaintiff must show that (1) the

1    defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and

2    (3) the breach proximately or legally caused (4) the plaintiff's damages or injuries."

3    *Thomas v. Stenberg*, 206 Cal. App. 4th 654, 662 (2012); *see also* CACI No. 400.

4        Defendant first argues that, "[w]ithout any physical harm alleged, the Student

5    Plaintiff's negligence claim [] is actually a claim for negligent infliction of emotional

6    distress." Mot. at 16 (citing FAC ¶¶ 83–88). The court agrees.

7        A negligence claim may support "parasitic" damages for emotional distress

8    when the negligence causes "physical injury," *i.e.*, a "detrimental change to the body."

9    *Macy's California, Inc. v. Superior Ct.*, 41 Cal. App. 4th 744, 748–57 (1995). ("For

10   parasitic recovery of emotional distress damages, plaintiff must have sustained

11   physical injury, meaning detrimental change to the body."). In *Macy's*, the court

12   addressed the "level of bodily harm" required to support parasitic damages. *Id.*

13   at 752–56. The plaintiff had pricked her finger on a hypodermic needle while trying

14   on a jacket at a Macy's store, and, as a result, alleged she could not sleep at night, had

15   panic attacks, cried frequently, and experienced vomiting, aches, diarrhea,

16   uncontrolled weight loss and gain, tiredness, rapid aging, and tumors on her liver. *Id.*

17   at 747. She brought a negligence action against the store. *Id.* at 746. The court

18   concluded the needle stick did not cause a detrimental change to her body. *Id.* at 756.

19   The court further held that, because she did not contract any disease from the needle

20   stick, any substance injected did not cause a detrimental change to her body. *Id.*

21   at 756–57. As a result, the plaintiff could not recover emotional damages on her

22   negligence claim. *Id.* at 757–58.

23       Here, Plaintiff Student does not allege any physical harm. FAC ¶¶ 32–54, 88.

24   Plaintiff Student, thus, cannot recover any damages on her negligence claim. *Macy's*,

25   41 Cal. App. 4th at 748–58. Accordingly, the court GRANTS the Motion on this

26   basis, DISMISSES Plaintiff Student's negligence claim with leave to amend, and

27   GRANTS LEAVE for Plaintiff Student to allege a claim for negligent infliction of

28   emotional distress.

### 2.    Breach of Contract

Defendant argues Plaintiff Student has failed to allege "at least three required elements" of a breach of contract claim: the contract; breach; and result damages. Mot. at 17–18 (citations omitted).  Defendant argues a contract's terms must be "sufficiently definite" and Plaintiff Student "merely asserts that she had a contract with the University requiring a 'safe and sane environment' for study." *Id.* at 18 (quoting FAC ¶ 90) (citations omitted).  Defendant further contends Plaintiff Student does not allege damages. *Id.*

Plaintiff Student does not respond to these arguments and, thus, concedes them. Opp'n at 5; *Ramirez*, 941 F. Supp. 2d at 1210 n. 7.  The court, therefore, GRANTS the Motion on this basis and DISMISSES Plaintiff Student's breach of contract claim with leave to amend.

### 3.    Battery

"The elements of a civil battery are: 1. Defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; 2. Plaintiff did not consent to the contact; and 3. The harmful or offensive contact caused injury, damage, loss or harm to the plaintiff." *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (2004) (cleaned up).

Here, Plaintiff Student does not allege harmful or offensive contact.  FAC ¶¶ 32–54; Mot. at 6.  Plaintiff Student does not respond to this argument and, thus, concedes it.  Opp'n at 5; *Ramirez*, 941 F. Supp. 2d at 1210 n. 7.  The court GRANTS the Motion on this basis and DISMISSES Plaintiff Student's battery claim with leave to amend.

### 4.    Assault

"The essential elements of a cause of action for assault are: (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that

16

defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." *So v. Shin*, 212 Cal. App. 4th 652, 668–69 (2013), *as modified on denial of reh'g* (Jan. 28, 2013).

Here, Plaintiff Student alleges she believed the *protestors* "were about to touch [her] in a harmful or offensive manner and in fact threatened to touch [her] in a harmful manner[.]" FAC ¶ 97. Plaintiff Student, however, does not allege *Defendant* "acted with intent to cause harmful or offensive contact, or threatened to touch [her] in a harmful or offensive manner." *So*, 212 Cal. App. 4th at 668–69. Rather, Defendant allegedly "encouraged" the protestors' conduct. FAC ¶ 96. This is insufficient. Plaintiff Student does not allege an aiding and abetting theory, and, in any case, the allegations are insufficient to support such a theory because they do not demonstrate Defendant "gave substantial assistance or encouragement" to the protestors. *See Hunter v. Citibank, N.A.*, Case No. 09-cv-02079-JW, 2010 WL 2509933, at *18 (N.D. Cal. Feb. 3, 2010) ("A plaintiff may state a claim for aiding and abetting an intentional tort if (1) the defendant knew that the primary tortfeasor's conduct constitute[d] a breach of duty, and (2) the defendant gave substantial assistance or encouragement to the other to so act."). While Plaintiff Student alleges Defendant permitted the protestors to be on campus, she does not allege Defendant gave substantial assistance or encouragement to the protestors to assault Plaintiff Student. FAC ¶ 2.

Lastly, even were Plaintiff Student to allege an aiding and abetting theory, she alleges insufficiently the protestors assaulted her. She alleges she was threatened by the protestors' slogans and oral statements. FAC ¶ 97. This is insufficient, as "mere words, however threatening, will not amount to an assault." *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1604 (2012) (cleaned up).

The court, thus, GRANTS the Motion on this basis and DISMISSES Plaintiff Student's assault claim with leave to amend.

///

1  **VI.    Declaratory and Injunctive Relief**

2      Defendant argues the court should dismiss Plaintiffs' claims for declaratory and

3  injunctive relief because "California does not recognize an independent cause of

4  action for injunctive or declaratory relief." Mot. at 18.  California law, however, does

5  not affect a federal court's equitable powers. *Sonner v. Premier Nutrition Corp.*, 971

6  F.3d 834, 839, 840–42 (9th Cir. 2020).  Nor does California law affect the court's

7  ability to issue declaratory judgments. *See* 28 U.S.C. § 2201.  The court, thus, rejects

8  this argument, and addresses in turn Plaintiffs' claims for declaratory and injunctive

9  relief.

10      **A.    Claim for Declaratory Relief**

11      "The Declaratory Judgment Act [] permits a federal court to 'declare the rights

12  and other legal relations' of parties to 'a case of actual controversy.'" *Societe de*

13  *Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir.

14  1981) (quoting 28 U.S.C. § 2201).  "The decision to grant declaratory relief is a matter

15  of discretion, even when the court is presented with a justiciable controversy." *United*

16  *States v. State of Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985) (*en banc*) (cleaned

17  up).

18      "The two principal criteria guiding the policy in favor of rendering declaratory

19  judgments are (1) when the judgment will serve a useful purpose in clarifying and

20  settling the legal relations in issue, and (2) when it will terminate and afford relief

21  from the uncertainty, insecurity, and controversy giving rise to the proceeding."

22  *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966).

23  Declaratory relief is designed to "resolve uncertainties or disputes that may result in

24  future litigation," *i.e.*, it operates "prospectively and is not intended to redress past

25  wrongs." *StreamCast Networks, Inc. v. IBIS LLC*, Case No. 05-cv-04239-MMM (Ex),

26  2006 WL 5720345, at *3 (C.D. Cal. May 2, 2006) (citing *Washington*, 759 F.2d

27  at 1356–57 ("Declaratory relief should be denied when it will neither serve a useful

28  purpose in clarifying and settling the legal relations in issue nor terminate the

proceedings and afford relief from the uncertainty and controversy faced by the parties.")).

Here, while Plaintiffs allege an "actual controversy" exists because Defendant "has created a dangerous condition of public property" and "encourages, permits, aids, abets, appeases and condones rampant unlawful antisemitism and discrimination to occur on its campus against Jewish Students and Faculty members," Plaintiff does not specify what declaratory relief it seeks. FAC ¶ 109. Rather, Plaintiff alleges vaguely a "judicial declaration is necessary and appropriate at this time so that the parties can ascertain their respective rights and liabilities." *Id.* ¶ 110. This is insufficient.

For this reason, the court GRANTS the Motion on this basis and DISMISSES Plaintiffs' claims for declaratory relief with leave to amend.

## B.    Claim for Injunctive Relief

Defendant argues injunctive relief is a remedy, not a claim. Mot. at 19. The court agrees. *EVIG, LLC v. Natures Nutra Co.*, 685 F. Supp. 3d 991, 996 (D. Nev. 2023) ("[I]njunctive relief is not an independent, free-standing cause of action. It is a form of relief the court may grant.")

Accordingly, the court GRANTS the Motion on this basis and DISMISSES Plaintiffs' claim for injunctive relief without leave to amend.

/ / /

/ / /

/ / /

## **MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS**

Defendant argues Plaintiffs "have made no attempt to plead the existence of any of the requirements for class certification, including that their claims are typical of the alleged class, that they are adequate representatives, that common issues exist, or that common issues predominate." Mot. at 19–20 (citations omitted). Defendant further argues that, "to the extent that Plaintiffs purport to allege a class of all USC faculty and students who identify as Jewish, such a class would include countless individuals with no possible claim, including Jewish faculty and students who were not present on campus during the protests, who were not harmed by the protests, and, importantly, who supported or chose to participate in the protests." *Id.* at 20–21 (citations omitted).

Plaintiffs do not respond to these arguments and, thus, concede them. Opp'n at 5; *Ramirez*, 941 F. Supp. 2d at 1210 n. 7. The court, therefore, GRANTS the Motion on this basis and DISMISSES the class allegations with leave to amend.

## **CONCLUSION**

For the foregoing reasons, the court GRANTS the Motion and ORDERS as follows:

1. The court DISMISSES Plaintiffs' Bane Act claims with fourteen (14) days' leave to amend.

2. The court DISMISSES Plaintiff Faculty Member's Unruh Act claim without leave to amend.

3. The court DISMISSES Plaintiff Student's Unruh Act claim with fourteen (14) days' leave to amend.

4. The court DISMISSES Plaintiffs' Ralph Act claims with fourteen (14) days' leave to amend.

5. The court DISMISSES Plaintiff Faculty Member's claims for negligence, assault, and battery without leave to amend.

6. The court DISMISSES Plaintiff Student's claims for negligence, assault, and battery with fourteen (14) days' leave to amend.

7.  The court GRANTS LEAVE for Plaintiff Student to allege a claim for negligent infliction of emotional distress within fourteen (14) days of this Order.

8.  The court DISMISSES Plaintiffs' claims for declaratory relief with fourteen (14) days' leave to amend.

9.  The court DISMISSES Plaintiffs' claims for injunctive relief without leave to amend.

10. The court DISMISSES Plaintiffs' class allegations with fourteen (14) days' leave to amend.

IT IS SO ORDERED.

Dated: March 4, 2025

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge