Rasha Gerges Shields (Cal. Bar No. 218248)
rgergesshields@jonesday.com
Tyler J. Scott (Cal. Bar No. 341039)
tscott@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: +1.213.243.2719
Facsimile: +1.213.243.2539

Jeffrey D. Baltruzak (admitted *pro hac vice*)
jbaltruzak@jonesday.com
Daniel Paul Johnson (admitted *pro hac vice*)
dpjohnson@jonesday.com
JONES DAY
500 Grant Street Suite 4500
Pittsburgh, PA 15219
Telephone: +1.412.391.3939
Facsimile: +1.412.394.7959

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE JEWISH USC FACULTY MEMBER 2004, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, *et al.*,<br><br>    Defendants. | Case No. 2:24-cv-05712 FLA (SSC)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**<br><br>**Date:    May 2, 2025**<br>**Time:    1:30 p.m.**<br>**Place:    Courtroom 6B**<br>**Judge:   The Honorable**<br>**         Fernando L. Aenlle-Rocha**<br><br>SAC Filed: March 18, 2025 |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on Friday, May 2, 2025, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 6B of this Court, located at 350 West 1st Street, Los Angeles, California, before the Honorable Judge Fernando L. Aenlle-Rocha, Defendant University of Southern California ("USC" or "University"), erroneously sued as "Trustees of THE UNIVERSITY OF SOUTHERN CALIFORNIA,"[1] will and hereby does move the Court for an order dismissing plaintiffs' Second Amended Complaint ("SAC") with prejudice and/or each of its causes of action or, in the alternative, striking plaintiffs' class allegations.

This motion is made pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, and this Court's inherent powers.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the accompanying Request for Judicial Notice ("RJN"), the proposed order submitted herewith, the complete files and records in this action, the argument of counsel, and such other matters as the Court may consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 24, 2025. The conference was conducted via phone.

---

[1] Plaintiffs continue to define USC with reference to its "Trustees." Dkt. 77, ¶ 31. Plaintiffs' initial complaint was modeled after a separate lawsuit filed by Plaintiffs' counsel against the "Regents of THE UNIVERSITY OF CALIFORNIA, LOS ANGELES" on May 13, 2024. *See* RJN, Ex. A. Although the "Regents of the University of California" is an incorporated legal entity, the "Trustees of the University of Southern California" is not. Moreover, the SAC appears to reference USC itself as the defendant. *See, e.g.*, Dkt. 77, ¶¶ 4-5.

Dated: April 1, 2025

Respectfully submitted,

JONES DAY

By: */s/ Rasha Gerges Shields*
    Rasha Gerges Shields

Attorneys for Defendant
UNIVERSITY OF SOUTHERN
CALIFORNIA

USC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND STRIKE CLASS

# **<u>TABLE OF CONTENTS</u>**

**Page**

BACKGROUND ............................................................................................ 2

    I.     Plaintiffs' Allegations ........................................................... 3

         A.    The Student Plaintiff's Allegations ......................... 3

         B.    The Faculty Plaintiff's Allegations.......................... 4

    II.    Other Allegations ................................................................. 5

ARGUMENT ............................................................................................... 7

    I.     Plaintiffs' Claims Must Be Dismissed Again ...................... 8

         A.    Plaintiffs' Civil Rights Claims Fail Again ............. 8

             1.    Plaintiffs Again Fail to Allege USC Had the Requisite Specific Intent to Violate Their Civil Rights or Authorize Violence Against Them................... 8

             2.    Plaintiffs' State Civil Rights Claims Again Fail for Additional Specific Reasons ......................................... 13

                 a.    Bane Act (Count 1) .............................. 13

                 b.    Unruh Act (Count 2) ............................ 14

                 c.    Ralph Act (Count 3) ............................. 15

         B.    Plaintiffs' Tort Claims Fail Again ........................ 16

             1.    The Student Plaintiff's Intentional Tort Claims (Counts 7-8) Again Fail for Lack of Necessary Elements ..................................................................... 16

             2.    The Student Plaintiff's Negligence Claims (Counts 4-5) Again Fail for Lack of Necessary Elements........... 16

         C.    Plaintiffs' Remaining Claims Fail Again ............... 17

             1.    Breach of Contract (Count 6) .......................... 17

             2.    Declaratory relief (Count 9) ........................... 19

    II.    Plaintiffs' Class Allegations Should Be Dismissed or Stricken Again ........................................................................................ 19

CONCLUSION............................................................................................ 21

CERTIFICATE OF COMPLIANCE............................................................ 22

i

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

C ASES

4

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,*
5
    300 U.S. 227 (1937) ................................................................................. 19

6
*Ashcroft v. Iqbal,*
7
    556 U.S. 662 (2009) ..........................................................2, 9, 11, 12

8
*Augustus v. Cnty. of Los Angeles,*
    2023 WL 2799117 (C.D. Cal. 2023) ............................................. 8, 18
9

*Bautista v. Los Angeles Cnty.,*
10
    216 F.3d 837 (9th Cir. 2000) ........................................................ 3, 5

11
*Bell Atl. Corp. v. Twombly,*
12
    550 U.S. 544 (2007) .......................................................................... 5

13
*Bustamante v. Intuit, Inc.,*
14
    141 Cal. App. 4th 199 (2006) ........................................................ 18

15
*Cervantes v. Countrywide Home Loans, Inc.,*
    656 F.3d 1034 (9th Cir. 2011) ......................................................... 7
16

*Cider Riot, LLC v. Patriot Prayer USA, LLC,*
17
    544 P.3d 363 (Or. App. Ct. 2024) ................................................. 17

18
*City of Reno v. Netflix, Inc.,*
19
    52 F.4th 874 (9th Cir. 2022) .......................................................... 19

20
*Conde v. Sensa,*
21
    259 F. Supp. 3d 1064 (S.D. Cal. 2017) ........................................... 6

22
*Consortium of Servs. Innovation v. Microsoft Corp.,*
    2020 WL 885742 (W.D. Wash. 2020) ............................................. 9
23

*Coon v. Joseph,*
24
    192 Cal. App. 3d 1269 (1987) ....................................................... 15

25
*Cornell v. City & Cnty. of San Francisco,*
26
    17 Cal. App. 5th 766 (2017) ............................................................ 8

27
*Daniels v. Select Portfolio Servicing, Inc.,*
28
    246 Cal. App. 4th 1150 (2016) ...................................................... 18

ii

*Day v. California Lutheran Univ.*,
    2024 WL 649239 (C.D. Cal. 2024) ........................................................ 17

*Doe v. Rector & Visitors of George Mason Univ.*,
    149 F. Supp. 3d 602 (E.D. Va. 2016) ...................................................... 9

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ................................................................. 10

*Ernesto Jasso v. Cnty. of Los Angeles et al.*,
    2015 WL 13916216 (C.D. Cal. 2015) ..................................................... 13

*Est. of Miller v. Cnty. of Sutter*,
    2020 WL 6392565 (E.D. Cal. 2020) ......................................................... 8

*Fed. Trade Comm'n v. Walmart Inc.*,
    664 F. Supp. 3d 808 (N.D. Ill. 2023) ....................................................... 6

*Ford v. Mckesson*,
    2024 WL 3367216 (M.D. La. 2024) ........................................................ 17

*Frankel v. Regents Of Univ. Of California*,
    No. 24-cv-04702 (C.D. Cal.), Dkt. 101 .................................................... 7

*Gabrielle A. v. Cnty. of Orange*,
    10 Cal. App. 5th 1268 (2017) ........................................................... 8, 15

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ............................................................................... 20

*Harris v. Cap. Growth Invs. XIV*,
    52 Cal. 3d 1142 ........................................................................................ 8

*Holliday v. Jones*,
    215 Cal. App. 3d 102 (1989) .................................................................. 17

*Indigo Grp. USA Inc v. Polo Ralph Lauren Corp.*,
    2011 WL 13128301 (C.D. Cal. 2011) ..................................................... 18

*Jones v. Kmart Corp.*,
    17 Cal. 4th 329 (1998) ........................................................................... 13

*Lam v. Ngo*,
    91 Cal. App. 4th 832 (2001) .................................................................. 17

iii

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982) ............................................................... 13, 19

*Manhattan Cmty. Access Corp. v. Halleck*,
    587 U.S. 802 (2019) ................................................................. 19

*Mazzeo v. Gibbons*,
    649 F. Supp. 2d 1182 (D. Nev. 2009) .......................................... 11

*McGowan v. Weinstein*,
    505 F. Supp. 3d 1000 (C.D. Cal. 2020) ........................................ 13

*Molien v. Kaiser Found. Hosps.*,
    27 Cal. 3d 916 (1980) .............................................................. 17

*Naiman v. Alle Processing Corp.*,
    706 F. Supp. 3d 892 (D. Ariz. 2020) ........................................... 21

*Osborne v. Yasmeh*,
    1 Cal. App. 5th 1118 (2016) ...................................................... 14

*Piedra v. Dugan*,
    123 Cal. App. 4th 1483 (2004) ................................................... 16

*Roberts v. Target Corp.*,
    2012 WL 400030 (W.D. Okla. 2012) ........................................... 20

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ............................................................. 19

*Rogers v. Western Univ. Health Sciences*,
    2017 WL 11567381 (C.D. Cal. 2017) ........................................... 17

*Route v. Mead Johnson Nutrition Co.*,
    2013 WL 658251 (C.D. Cal. 2013) .............................................. 20

*Sanders v. Apple, Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................... 20, 21

*Shoyoye v. Cnty. of Los Angeles*,
    203 Cal. App. 4th 947 (2012) ...................................................... 8

*Smith v. Cnty. of Santa Cruz*,
    2020 WL 6318705 (N.D. Cal. 2020) ............................................ 14

*So v. Shin*,
   212 Cal. App. 4th 652 (2013) ................................................................................... 16

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................................. 20

*Trazo v. Nestle USA, Inc.*,
   2013 WL 4083218 (N.D. Cal. 2013) ........................................................................ 20

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ..................................................................................... 6

*Van Buskirk v. Cable News Network, Inc.*,
   284 F.3d 977 (9th Cir. 2002) ..................................................................................... 6

*Waswick v. Torrid Holdings, Inc.*,
   2023 WL 9197563 (C.D. Cal. 2023) .......................................................................... 7

*White v. Square, Inc.*,
   7 Cal. 5th 1019 (2019) ............................................................................................. 14

*Winarto v. Toshiba Am. Electronics Components, Inc.*,
   274 F.3d 1276 (9th Cir. 2001) ................................................................................. 15

*Wuxi Multimedia, Ltd. v. Koninklijke Philips Electronics, N.V.*,
   2006 WL 6667002 (S.D. Cal. 2006) ......................................................................... 10

*Zavatto v. Itzhaki*,
   2017 WL 1021734 (Cal. Ct. App. 2017) .................................................................. 18

**STATUTES**

CAL. CIV. CODE § 51 ..................................................................................................... 8, 14

CAL. CIV. CODE § 51.7 ........................................................................................................ 8

CAL. CIV. CODE § 52 ........................................................................................................ 14

CAL. CIV. CODE § 52.1 ............................................................................................. 8, 14, 16

CAL. EDUC. CODE § 94367 ................................................................................................ 10

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 7

Fed. R. Civ. P. 12(f) ......................................................................................................... 11

v

**OTHER AUTHORITIES**

1 WILLISTON ON CONTRACTS § 4:22 (4th ed. May 2024 update) ............................ 18

Judicial Council of California Civil Jury Instructions No. 1620 ............................ 17

Judicial Council of California Civil Jury Instructions No. 3066 ............................ 13

M. BENDER, 11 CALIFORNIA FORMS OF PLEADING AND PRACTICE
    ANNOTATED § 117A.13 (2025) ............................................................ 15

*Negotiator's tricks: pizza and patience*, Columbus Dispatch ................................ 12

## **MEMORANDUM OF POINTS AND AUTHORITIES**

This case is about two Plaintiffs who filed claims against the University of Southern California ("USC") following campus protests by "third party protestors" during the spring of last year.  Dkt. 77, ¶ 6.

Last month, the Court dismissed all Plaintiffs' claims.  Dkt. 72.  Plaintiffs' Second Amended Complaint (Dkt. 77, "SAC") does nothing to solve its predecessor's dispositive flaws.  What "contract" was breached?  Plaintiffs still do not say.  What "battery" (actual contact) or "assault" (imminent contact) did the Student Plaintiff experience?  Again, none is alleged.  What cognizable harm, consistent with this Court's order, did the Student Plaintiff experience as a result of USC's "negligence"?  Once more, nothing is said.  The same flaws here lead to the same result of dismissal.

So too for Plaintiffs' state civil rights claims.  The California civil rights laws here require a specific, unlawful intent on the part of USC.  Dkt. 72, at 5, 11-12.  Plaintiffs' claims previously failed because—among other reasons—they failed to plausibly allege that USC specifically intended to harm its own community members, or shared the specific unlawful intentions of the protestors.  *Id*.  Plaintiffs have tried to plug that hole by (again) copying and pasting from a *different* case against UCLA involving *different* claims with *different* standards, *different* plaintiffs, and *different* facts.  That makes no sense.  To correct the record (and state the obvious), USC is not UCLA, and the alleged facts at UCLA were nothing like those at USC.

But even accepting those allegations here, the missing intent remains missing.  Like before, Plaintiffs focus on wrongful acts by protestors.  And like before, Plaintiffs allege the protestors and USC were adversaries, not in cahoots.  After all, and as the SAC continues to allege, USC called in the LAPD, which arrested protestors for trespassing.  The Court's prior analysis again leads to dismissal: "[T]he court cannot infer [USC's] intent from the protestors' acts … Rather, Plaintiffs' allegations actually support Defendant *did not have the requisite intent*."  *Id*. at 8 (emphasis added).

To be sure, Plaintiffs have added numerous pages of inflammatory, repetitive, illogical, and conclusory allegations in the SAC. Plaintiffs, for instance, substitute an incendiary label, "Jew Exclusion Zone," for what was previously called an "Encampment." SAC ¶ 4. They repeat their new term 61 times. Plaintiffs also accuse USC's attorneys of antisemitism for allegedly opposing an (out of time) motion to add claims to this action. *Id*. ¶¶ 20, 25.[2] The end product only makes the chain of inferences necessary to attribute an unlawful intent to USC even more convoluted and implausible than before. *See, e.g.*, *id*. ¶ 6 (newly alleging that because "the 'third party protesters' in fact were a mob of antisemitic thugs … orchestrated by … George Soros," then "USC knew or certainly should have known that the antisemitism … was being exported to West Coast universities and colleges from liberal 'Ivy League' colleges and well-organized hatemongers"). The SAC should be dismissed in full, and with prejudice.

In the alternative, the Court should strike Plaintiffs' class allegations. Once more, Plaintiffs make no attempt to show why they would be adequate representatives, or that their claims are even suitable for class treatment. In fact, their own allegations and admissions defeat their ability to proceed with their class claims.

## BACKGROUND

At the 12(b)(6) stage, the Court assumes the truth of only well-pleaded factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To avoid any doubt, USC disputes Plaintiffs' allegations. Assertions of "undisputed" facts (SAC ¶¶ 3-4) do not make them so. Because the Court is familiar with the facts, USC summarizes only the key allegations and notable changes.

---

[2] Plaintiffs have still not filed that motion to amend, even though the SAC asserts the motion was being filed "concurrently." SAC ¶¶ 20, 26.

## I.  PLAINTIFFS' ALLEGATIONS

No material changes have been made to the only allegations that matter:  those actually concerning the two Plaintiffs, each of whom must individually state a claim. *See Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000) ("Each plaintiff's right to relief therefore depends upon proof of the operative facts giving rise to an enforceable right in favor of that plaintiff.").  For the convenience of the Court, the Plaintiffs' "diaries" of allegations specific to them can now be found at ¶¶ 101-124 of the SAC (pp. 32-38).

### A.  The Student Plaintiff's Allegations

The Student Plaintiff is a Jewish "hybrid physical therapy student at USC's Health Science campus" who "do[esn't] travel to campus very often."  SAC ¶¶ 109, 112.[3]  Her allegations focus on USC's selection of its Class of 2024 valedictorian, a biomedical engineer.  *Id*. ¶¶ 114-122.  The Student Plaintiff asserts that the valedictorian has "strong anti-Semitic beliefs," shown by "publish[ing] several statements advocating for 'the complete abolishment of the state of Israel.'"  *Id*. ¶¶ 117-118.[4]  She also alleges that the title of the valedictorian's minor, "resistance to genocide," has been used by unnamed "anti Israeli protestors … to justify the acts of October 7th."  *Id*. ¶ 115.  By selecting a valedictorian with this minor and these alleged

---

[3] The hybrid physical therapy program is a graduate-level program that combines online and in-person learning.  RJN at 2.  USC's 79-acre health sciences campus is seven miles from the "undergraduate or the main campus" (SAC ¶ 113), where Plaintiffs allege the protests took place.  RJN at 1-2; *see, e.g.*, SAC ¶¶ 33, 54 (noting "pro-Hamas rallies" at "Bovard Hall," and a corresponding "encampment" "in the center of campus").

[4] In emphasizing allegations about viewpoints of third parties, the Complaint ties itself in knots.  *Compare, e.g.*, SAC ¶ 1 ("This case does not litigate … viewpoints … or counter protest slogans.") *with id*. ¶ 7 (listing "obnoxious Hamas propaganda and carefully designed slurs and slogans").

USC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND STRIKE CLASS

opinions, the Student Plaintiff says, USC has itself "encouraged" an anti-Jewish "narrative." *Id*. ¶¶ 116, 118.

At the same time, the Student Plaintiff faults USC for choosing to organize a commencement ceremony that did not include a speech from the valedictorian. *Id*. ¶¶ 111-112. As a result, the Student Plaintiff says, those supporting the valedictorian protested "'USC's decision not to let a pro-Palestinian … valedictorian speak at its main graduation ceremony.'" *Id*. ¶¶ 118, 112 (pp. 36-37).

The Student Plaintiff identifies three incidents following the valedictorian selection that she says caused her to "no longer feel safe on campus." *Id*. ¶ 112. The first two incidents involved public expressions of support *for the valedictorian* and *against USC*: First, the student "encountered several posters" on the health sciences campus that advocated for the valedictorian. *Id*. These posters contained a hashtag slogan ("#Let [Her] Speak"), a picture of the valedictorian, and the names of her major and minor. *Id*. Second, the Student Plaintiff alleges that an unidentified professor sent out an email that "asked everyone in the department to sign a petition to allow [the valedictorian] to speak." *Id*. ¶ 115. The email also accused USC of "mistreat[ing] the valedictorian." *Id*. The professor then sent another email encouraging students to attend a "silent march" supporting the valedictorian: "When USC silences [the valedictorian] they are silencing all of us." *Id*. ¶ 116.

Last, the Student Plaintiff was asked by a Jewish friend "what [her] opinion was on the topic of USC's decision to take [the valedictorian's] speech away." *Id*. ¶ 121. This question, the Student Plaintiff said, caused her to "fe[el] unsafe once again even among friends." *Id*. As a result of these incidents, the Student Plaintiff alleges that she experienced fear and anxiety. *Id*. ¶ 124.

**B. The Faculty Plaintiff's Allegations**

The Faculty Plaintiff purports to be a "Jewish Professor employed by and at USC." SAC ¶ 98. According to the Faculty Plaintiff, an announcement by USC's provost "to keep [the student] as valedictorian yet not allow her to speak" caused

4

"Anti-Semitic vitriol." *Id*. ¶ 105.  After that, the Faculty Plaintiff alleges that she could not get to her office without being "accosted by protestors" asking offensive questions.  *Id*.  She also alleges that she was "spat on" by a group of protesters asking if she "Supported the Zionist baby killing entity." *Id*.  The Faculty Plaintiff then says that she chose to work from home for an unspecified time.  *Id*.  When she returned to campus, the Faculty Plaintiff states that she was again "accosted" by protesters but "refused to engage." *Id*. ¶ 106.  And on her way back to her car, she was "approached by a woman asking if [she] wanted to participate in a 'bake sale for Palestine.'" *Id*. Again, the Faculty Plaintiff "kept walking and refused to engage." *Id*.

## II.  OTHER ALLEGATIONS

The allegations described above are about these Plaintiffs.  As before, those are the purported "facts" that matter.

Trying to distract from the basic gaps that are critical to state a claim and satisfy the Court's prior dismissal order, Plaintiffs' SAC doubles down on rhetoric. Plaintiffs, for instance, add new allegations about George Soros (*id*. ¶¶ 6, 55, 63, 82, 87), "Hamas … propaganda" (*id*. ¶¶ 8, 10, 17, 32, 60-61, 64, 80, 81, 101), the funding of antisemitism at USAID uncovered by DOGE (*id*. ¶¶ 57, 82), and lies by "the Democratic Party controlled 'legacy media'" (*id*. ¶¶ 16, 56, 83).  How such actors relate to these two Plaintiffs' specific claims against USC is not apparent.  "[P]laintiffs can[not] simply toss incomprehensible documents before the district court and have the court do the work of sorting out what should be pled." *Bautista*, 216 F.3d at 845 (O'Scannlain, J., concurring).  Plaintiffs similarly adopt a new label (taken from a different lawsuit, discussed *infra*) for the supposed "Encampment," now calling it a "Jew Exclusion Zone," and then repeat that buzzword over 60 times.  SAC ¶ 4.  An "'entitle[ment] to relief' requires more than labels … and a formulaic recitation …will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The SAC's new allegations have the same old problems.  Plaintiffs now allege the creation of a federal taskforce "to investigate … allegations" of "campus

5

antisemitism" at ten colleges, including USC.  SAC ¶ 13.  But, as before, "allegations about allegations" are not well-pleaded facts and cannot save these plaintiffs' defective claims.  *See Fed. Trade Comm'n v. Walmart Inc.*, 664 F. Supp. 3d 808, 825 (N.D. Ill. 2023) ("Allegations about allegations" are either not actionable or "not alleged with particularity."); *cf. Conde v. Sensa*, 259 F. Supp. 3d 1064, 1070 (S.D. Cal. 2017) ("[U]nproven state-court allegations may not validly support a plaintiff's cause of action in this Court.").

Again, other of Plaintiffs' new claims are flatly contradicted by the sources on which they purport to rely.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (documents mentioned by a complaint are "incorporated by reference" in the 12(b)(6) posture) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that the district court considered interview tapes as incorporated by reference)); *see also infra* (identifying additional contradictions). Plaintiffs say, for instance, that their Exhibit D shows that USC allowed "antisemitic organizations … aligned with … anti-America terrorist groups" to "promulgate antisemitic material via USC's official internet channel."  SAC ¶ 32.  But the attached exhibit, on its face, depicts a post from an Instagram account, "@uscdivestfromdeath."  Ex. D.  As the account's name suggests, it is a non-USC account that *criticizes* USC and calls for its divestment from Israel.  RJN at 1.  The second post, too, is by "@uscscale," or the "USC Student Coalition Against Labor Exploitation."  *Id*.  That also is not a USC account on its face.  *See* Ex. D.

The bulk of Plaintiffs' changes simply copy and paste court orders and other pleadings from an entirely separate case *against UCLA* into the complaint here

(swapping out "UCLA" for "USC").[5]  Plaintiffs do this again and again in the SAC. *See* App'x A (chart of misappropriated quotes).[6]

Here is just one example:

| **Second Amended Complaint ¶ 3** | ***Frankel*, 744 F. Supp. 3d at 1020** |
|---|---|
| In the year 2024, in the United States of America, in the State of California, in the City of Los Angeles, Jewish students … were excluded from portions of the USC campus because they refused to denounce their faith. This fact is so unimaginable and so abhorrent to our constitutional guarantee of religious freedom that it bears repeating: Jewish students … were excluded from portions of the USC campus because they refused to denounce their faith. | In the year 2024, in the United States of America, in the State of California, in the City of Los Angeles, Jewish students were excluded from portions of the UCLA campus because they refused to denounce their faith. This fact is so unimaginable and so abhorrent to our constitutional guarantee of religious freedom that it bears repeating, Jewish students were excluded from portions of the UCLA campus because they refused to denounce their faith. |

To be clear, these are conclusions—not allegations.  Indeed, the Court in *Frankel* reached them after consideration of facts and evidence, though Plaintiffs attempt to repackage the above paragraph as an "undisputed fact[]" about USC.  SAC ¶¶ 3-4. And to the extent these copied and pasted words pass for allegations, they are not well-pleaded, and USC unambiguously disputes them.

## ARGUMENT

Rule 12(b)(6) requires dismissal of a complaint that "does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).  "[A]llegations that are merely conclusory, unwarranted deductions of fact, or

---

[5] This practice continues from Plaintiffs' First Amended Complaint ("FAC"). *See* Dkt. 10, at 6.

[6] Appendix A compares quotes from Plaintiffs' SAC to the original text in *Frankel v. Regents Of Univ. Of California*, No. 24-cv-04702 (C.D. Cal.), Dkt. 101. *See Waswick v. Torrid Holdings, Inc.*, 2023 WL 9197563, at *3 (C.D. Cal. 2023) (At 12(b)(6) stage, courts may rely on appendices that "provide organizational work that the Court would otherwise have to take upon itself.") (quotation marks omitted).

unreasonable inferences" carry no weight. *Augustus v. Cnty. of Los Angeles*, No. 2:20-cv-11255-FLA, 2023 WL 2799117, at *3 (C.D. Cal. 2023) (quotation marks omitted).

## I.    PLAINTIFFS' CLAIMS MUST BE DISMISSED AGAIN

The SAC fails to correct the defects previously identified by the Court (Dkt. 72), and USC's previous motion to dismiss (Dkts. 10 (motion), 52 (reply)).

### A.    Plaintiffs' Civil Rights Claims Fail Again

#### 1.    Plaintiffs Again Fail to Allege USC Had the Requisite Specific Intent to Violate Their Civil Rights or Authorize Violence Against Them

Plaintiffs again lead with claims under the Bane, Ralph, and Unruh Acts. *See* CAL. CIV. CODE §§ 52.1(a), 51(b), 51.7(b)(1). As this Court correctly held, all three statutes capture only *intentional* deprivations of civil rights or *intentional* discrimination. Dkt. 72, at 5 (Bane Act), 11 (Unruh Act), 12 (Ralph Act). Plaintiffs must therefore plead that USC's "act of interference" with a civil right was itself "deliberate or spiteful." *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012) (Bane Act); *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 801-02 (2017) (Bane Act); *Harris v. Cap. Growth Invs. XIV*, 52 Cal. 3d 1142, 1175 (Unruh Act); *Gabrielle A. v. Cnty. of Orange*, 10 Cal. App. 5th 1268, 1291 (2017) (Ralph Act). Plaintiffs cannot merely allege that they were deprived of a civil right or effectively treated differently. *See Est. of Miller v. Cnty. of Sutter*, 2020 WL 6392565, at *19 (E.D. Cal. 2020) (rejecting Unruh Act claims at the pleading stage).

Applying this standard, Plaintiffs cannot state a civil rights claim. There are still no well-pleaded allegations showing that USC itself specifically intended for any protestor to deprive Plaintiffs of their rights. There are no allegations that USC specifically intended for any protestor to ask Plaintiffs questions, invite Plaintiffs to a bake sale, or ask them to sign a petition. And, unsurprisingly, there are *no* allegations that USC specifically intended for a protestor to spit at one of its faculty members. Even more, Plaintiffs do not allege that they ever reported these incidents to USC—

8

thus, there is no allegation that USC even knew about these particular incidents, let alone had specific intent to bring them about.[7]  Furthermore, there are no allegations that USC did anything intentionally to these two plaintiffs because they are Jewish. All this dooms Plaintiffs' civil rights claims.

The logic of the Court's prior order likewise supports dismissal here.  In the prior complaint, Plaintiffs asked the Court to infer USC's intentions from the acts of protesters and others.  The Court rejected that argument, explaining that it could not plausibly "infer [USC's] intent from the protestors' acts."  Dkt. 72, at 8.  The Court also emphasized that Plaintiffs alleged an adverse relationship between USC and the protestors.  *Id*.  The Court accordingly held that "Plaintiffs' allegations actually support Defendant did not have the requisite intent, as they suggest Defendant and the protestors had adverse interests."  *Id*. (citing FAC ¶¶ 26, 86).

The same is true here.  *First*, Plaintiffs repeat their error in alleging the acts of others—protestors, student groups, George Soros, and others—in an attempt to impute intent to USC.  *See Iqbal*, 556 U.S. at 682-83 ("various other defendants" may have had "impermissible reasons" but "petitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic").  As for the alleged viewpoints of student groups and faculty, as USC previously explained, academic environments host a wide variety of viewpoints that cannot all plausibly be imputed to USC as an institution.  *See Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 627 (E.D. Va. 2016)  Plaintiffs offer no explanation for how the alleged views of "faculty" who "support the Jewish state of Israel" (SAC

---

[7]  Plaintiffs appear to suggest that use of a ".edu" shows particularized knowledge of the Professor's emails.  SAC ¶ 117.  USC is aware of no authority that charges an organization with knowledge (or specific intent) based on emails sent using a domain.  *Cf. Consortium of Servs. Innovation v. Microsoft Corp.*, 2020 WL 885742, at *3 (W.D. Wash. 2020) ("use of a corporation's email address is insufficient" to establish vicarious liability as a matter of law).

¶ 16) and the views of other "professors" who "hate … Israel" (*id.* ¶ 14) can both simultaneously be attributed to USC.[8]

*Second*, Plaintiffs elaborate on the adverse relationship between USC and the protestors—once again negating any inference of shared unlawful intentions. *See, e.g.*, *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 (9th Cir. 2014) (Ninth Circuit "taking into account the evidence in [p]laintiffs' own complaint that undermines their allegation"); *Wuxi Multimedia, Ltd. v. Koninklijke Philips Electronics, N.V.*, 2006 WL 6667002, at *9 (S.D. Cal. 2006) (courts "need not accept" allegations that are "internally inconsistent" in a 12(b)(6) posture). According to Plaintiffs, agitators protested USC, accusing it of being "very complicit in violence" against Palestinians, and demanding that it divest from Israel. SAC ¶ 103. After all, the Student Plaintiff complains of emails from a professor inviting students *to protest USC's* supposed "mistreat[ment]" of the valedictorian. *Id.* ¶ 115; *see also* ¶¶ 112, 116, 121. And she specifically calls out posters on campus that *protested USC*. *See also* Ex. D.

Moreover, the SAC continues to allege that USC "made the decision to call in the LAPD" to "clear[] the Encampment" of protestors and "arrest[] 93 people on suspicion of trespassing." *Id.* ¶¶ 15, 62. An article incorporated by the SAC further shows that "the university had started the disciplinary process for people who had violated laws or campus policies." B. Haring, *USC Pro-Palestinian Encampment Cleared Again By Police*.[9] Other incorporated links report that USC "won't

---

[8] Doubly so for the unnamed "guest and tenured professors," who were able to supposedly "lecture[] students" about "the 'war crimes' of Jews" only by pulling an alleged bait-and-switch on USC. *See* SAC ¶ 14 ("*Instead of teaching courses on the subject matter for which they were hired*, they spewed antisemitic hate against Jews, Israel and Americans.") (emphasis added). As for student viewpoints, California's Leonard law prohibits private universities from disciplining enrolled students for merely articulating offensive ideas. CAL. EDUC. CODE § 94367.

[9] Available at https://deadline.com/2024/05/usc-pro-palestinian-encampment- (footnote continued)

tolerate … illegal encampments,"[10] that a swastika drawn on campus (*see* Ex. E) was immediately removed, that USC rejected the protestors' demands to issue "political statements," and that USC "condemned all forms of … antisemitic symbols."[11]

There are just two new additions to the SAC that attempt to impute intent to USC based on its own supposed actions, rather than those of others.

*First*, focusing on litigation conduct, Plaintiffs allege that an "unreasonable refusal" by USC's counsel "to agree to Plaintiffs' reasonable request [to add § 1983 claims] to force the filing of a motion to amend" shows USC's "anti-Jewish sentiment and animus against Plaintiffs and their claims … and Jewish students and faculty generally."  SAC ¶ 20.  This ugly and unfounded attack is regrettable, particularly where the time to add claims is long past.  *See* Dkt. 59, at 4 (last day to add claims was Nov. 29, 2024).[12]  "As between that 'obvious alternative explanation' for the [denial of consent], and the purposeful, invidious discrimination [Plaintiffs] ask[] us to infer, discrimination is not a plausible conclusion."  *Iqbal*, 556 U.S. at 682.  To

---

cleared-police-1235904798/ (last accessed Mar. 25, 2025) (cited SAC ¶ 118).

[10] Video at 0:05-0:18, KTLA 5, *Police clear protest encampment at USC*, available at https://www.youtube.com/watch?v=v7ibgdWRMkg (last accessed Mar. 31, 2025) (cited SAC ¶ 85).

[11] Video at 2:30-2:50, 3:38-3:55, NBCLA, *Swastikas found on USC campus* https://www.youtube.com/watch?v=XqbZtOuKVVo (last accessed Mar. 31, 2025) (cited SAC ¶ 86).

[12] This is one of the myriad "redundant, immaterial, impertinent [and] scandalous" allegations in Plaintiffs' lengthy SAC.  Rule 12(f).  In the unlikely event this case proceeds, the Court may, on its own motion, strike such allegations (Rule 12(f)(1)) or, alternatively, permit USC the opportunity to identify such allegations "before responding to the pleading" (Rule 12(f)(2)).  *See, e.g.*, *Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1202 (D. Nev. 2009) (striking, *sua sponte*, under Rule 12(f)(1) "inappropriate commentary and dramatic flourishes, deviating from the directive that [plaintiff] need provide only a short plain statement of her claims" following adjudication of motion to dismiss) (quotation marks omitted).

make matters worse, Plaintiffs have not filed their motion to amend, even though they announced two weeks ago that they were filing it "concurrently" with the SAC. SAC ¶¶ 20, 26, 74, 148, 155. To recap: in a pleading publicly filed in federal court, Plaintiffs accused USC and its attorneys of antisemitism for refusing to stipulate to a late motion that Plaintiffs have not bothered to file.

*Second*, Plaintiffs allege that USC acquiesced to protestors' demands for "megaphones, food, water bottles and other necessities of life." SAC ¶¶ 5, 8, 41, 84. Assuming these allegations, in Plaintiffs' own telling, these supposed actions were part of USC's attempt "to appease ... and negotiate with the Campus Terrorists." SAC ¶¶ 39, 52, 81, 107, 157. Indeed, the SAC alleges that USC's actions toward the campus terrorists "can best be described as an 'appeasement' policy." *Id.* ¶ 84. One "appeases" or "negotiates" with an adversary—not a sympathizer. Even assuming for the purposes of this motion that USC gave "campus terrorists" the "necessities of life," that no more supports an inference that USC intended to harm these Plaintiffs than an inference that a hostage negotiator shares the aims of a hostage taker when he gives food and water to the captor. *See Iqbal*, 556 U.S. at 682; *cf. Negotiator's tricks: pizza and patience*, Columbus Dispatch (May 27, 2007) ("when escaped convict Billy Jack Fitzmorris held Geneva Erb hostage ... negotiators ordered him the pepperoni and sausage pizza he requested").[13] In any event, any potential inference of shared intent is expressly negated here, where USC is alleged to have simultaneously taken actions to promote the safety of its students and faculty. SAC ¶ 52; Dkt. 72, at 7 (noting, based on this same allegation, that "the opposite appears true, *i.e.*, Defendant was attempting to protect Plaintiffs from potential harm").

---

[13] Available at https://www.dispatch.com/story/news/2007/05/27/negotiator-s-tricks-pizza-patience/23758229007/ (last accessed Apr. 1, 2025).

### 2. Plaintiffs' State Civil Rights Claims Again Fail for Additional Specific Reasons

While the lack of the requisite intent dooms all Plaintiffs' civil rights claims, they also fail for additional reasons.

#### a. Bane Act (Count 1)

A Bane Act plaintiff "must allege both a constitutional [or statutory] violation and a specific intent to violate" that right. *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1017 (C.D. Cal. 2020). USC previously explained that the Plaintiffs' Bane Act claim failed because they did not specify the constitutional right that USC supposedly violated. Seeking to correct that error, Plaintiffs now say that the alleged constitutional right—and the theory that they wish to pursue—is a violation of the Fourteenth Amendment (presumably drawing from the copy-and-pasted *Frankel* materials). SAC ¶¶ 137-140. That is a different right than what the Court previously assumed to be at issue. *See* Dkt. 72, at 4.

The problem for Plaintiffs is that a Fourteenth Amendment violation requires state action. *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). USC is a private university. *E.g.*, SAC ¶ 125. And the Bane Act does not circumvent that state-action requirement. *See, e.g.*, *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 332-33 (1998). A "plaintiff [can] not recover on a Bane Act claim against private actors predicated upon the violation of" constitutional rights with a state action requirement "since the rights can only be interfered with by a state actor." *Ernesto Jasso v. Cnty. of Los Angeles et al.*, 2015 WL 13916216, at *8 (C.D. Cal. 2015). This alone defeats Plaintiffs' Bane Act claim.

Even if Plaintiffs could circumvent the state-action requirement, their Bane Act claim would still fail. "Plaintiffs do not … [plausibly] allege Defendant threatened, intimidated, or coerced Plaintiffs into believing that, if Plaintiffs [exercised a protected right], Defendant would commit violence against them." Dkt. 72, at 7 (citing Judicial Council of California Civil Jury Instructions ("CACI") No. 3066,

Element 1).  "To the contrary," the Faculty Plaintiff "allege[s] the *protestors* threatened [her]."  *Id.* (emphasis in original).  And as to the Student Plaintiff, she does not allege any specific threats against her, any objectively reasonable fear of violence, or any apparent ability to carry out an actionable threat.  She cannot state a claim.  *See Smith v. Cnty. of Santa Cruz*, 2020 WL 6318705, at *10 (N.D. Cal. 2020), *aff'd*, 2022 WL 2287429 (9th Cir. 2022).  CAL. CIV. CODE § 52.1(k) reinforces that speech "is not sufficient to support an action" under the Bane Act unless it "specific[ally]" threatens violence coupled with an "apparent ability to carry out the threat" resulting in a "reasonabl[e] fear."  The Student Plaintiff makes no attempt to explain how seeing a poster, being invited to a march, being invited to sign a petition, or being asked for an opinion by a Jewish friend amounts to a specific threat of violence.

### b.  Unruh Act (Count 2)

The Faculty Plaintiff's Unruh Act claim was previously dismissed with prejudice.  Dkt. 72, at 10.  The Faculty Plaintiff has no Unruh Act claim to bring.

The Student Plaintiff's allegations fail to show a denial of "full and equal accommodations" (CAL. CIV. CODE § 51(b)) or that she was a "*person aggrieved*" by the denial at issue (CAL. CIV. CODE § 52(c) (emphasis added)).  "[A] plaintiff who only learns about the defendant's allegedly discriminatory conduct, but has not personally experienced it, cannot establish [statutory] standing" under the Unruh Act, even when they are a member of the relevant protected class.  *Osborne v. Yasmeh*, 1 Cal. App. 5th 1118, 1133 (2016).  Where a plaintiff merely alleges that she would be denied access or a service—but has not encountered the denial herself—she lacks statutory standing under the Unruh Act.  *See White v. Square, Inc.*, 7 Cal. 5th 1019, 1025 (2019) ("[A] plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct.") (quotation marks omitted).

Here, the Student Plaintiff alleges an encampment took place on the "undergraduate or the main campus."  SAC ¶¶ 54, 81, 113.  But the Student Plaintiff here is a "hybrid" graduate student "at USC's Health Science campus," who—

although she "does not travel to campus very often"—travels to a different campus miles from where the encampment took place. *Id.* at 112. And the Student Plaintiff's personal diary appears to recount only events at the health sciences campus. *See id.* at 112-121. Moreover it would be hard to exclude the Student Plaintiff based on her religion: the student does not allege that anyone at USC—other than her friend—even knew that she was Jewish. *See* SAC ¶¶ 120-121.

Finally, the Student Plaintiff "alleges insufficiently the remaining elements of an Unruh Act claim," including that USC's conduct "was a substantial factor in causing [her] harm." Dkt. 72, at 10-11. As before, Plaintiffs merely assert that "USC's conduct was a substantial factor in causing Plaintiffs' harm." SAC ¶ 147. The Court previously found this conclusory allegation insufficient. So too now.

### c.  Ralph Act (Count 3)

"Under the Ralph Act, a plaintiff must establish the defendant threatened or committed violent acts against the plaintiff or their property, and a motivating reason for doing so was a prohibited discriminatory motive." *Gabrielle A.*, 10 Cal. App. 5th at 1291. A Ralph Act threat requires an objectively reasonable perception of violence. *See Winarto v. Toshiba Am. Electronics Components, Inc.*, 274 F.3d 1276, 1289-90 (9th Cir. 2001).

Ralph Act "remedies are limited to those who themselves have been the subject of threats, intimidation, coercion, or violence." M. BENDER, 11 CALIFORNIA FORMS OF PLEADING AND PRACTICE ANNOTATED § 117A.13 (2025). So, for example, "a plaintiff who witnessed the assault of his intimate male friend did not have standing to bring his own action under [the Ralph Act]." *Id.* (discussing *Coon v. Joseph*, 192 Cal. App. 3d 1269, 1277-78 (1987) ("The complaint establishes that no violence or intimidation was committed or threatened against appellant's person and thus no cause of action exists in his own right.")). Similarly here, the Student Plaintiff does not describe any specific threats of violence against her. Her diary only describes being exposed to specific instances of speech (posters, emails, and a question from a

friend) that did not contain any threat of violence.  *See* CAL. CIV. CODE § 52.1(k).
That is insufficient.

Moreover, given that neither Plaintiff alleges that their Jewish identity was
known (apart from the student's friend, *see* SAC ¶ 121), neither could have been
discriminated against *because of* religion.  Plaintiffs similarly do not allege that
USC—the actual defendant here—ever knew of the specific incidents they complain
about or that they are Jewish.  *See id.* ¶¶ 121-122.

## B.  Plaintiffs' Tort Claims Again Fail

The Faculty Plaintiff was not given leave to amend as to her tort claims.  She has
no tort claims to bring.  Although the Student Plaintiff was given leave to amend her
tort claims, they too fail.

### 1.  The Student Plaintiff's Intentional Tort Claims (Counts 7-8) Again Fail for Lack of Necessary Elements

The Student Plaintiff does not allege any offensive or harmful touching.  And
an allegation of seeing posters and receiving emails seeking support for the
valedictorian does not plausibly demonstrate a reasonable fear of imminent bodily
harm.  Dkt. 72, at 16-17.  The Student Plaintiff's assault and battery claims cannot
proceed.  *See, e.g.*, *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (2004) (harmful
or offensive touching is a necessary element of battery); *So v. Shin*, 212 Cal. App. 4th
652, 668 (2013) (assault requires a reasonable belief of an imminent harmful or
offensive touching).  Additionally, for the same reasons that Plaintiffs cannot show
specific intent on the part of USC to discriminate against Plaintiffs, they cannot show
that USC intended for the Student Plaintiff to be assaulted or battered.

### 2.  The Student Plaintiff's Negligence Claims (Counts 4-5) Again Fail for Lack of Necessary Elements

Without any actual physical harm alleged, the Student Plaintiff's negligence
claim (Count 4) is actually a claim for negligent infliction of emotional distress
("NIED").  "This court agree[d]."  Dkt. 72, at 15 ("Plaintiff Student does not allege

16

any physical harm … [she], thus, cannot recover any damages on her negligence claim.").  For lack of a physical injury, the Student Plaintiff's negligence claim fails.

The Student Plaintiff is also outside of the set of well-defined special relationships necessary to state an NIED claim under California law.  *See generally Holliday v. Jones*, 215 Cal. App. 3d 102, 111 (1989); CACI No. 1620 (identifying "only three types of factual situations" where "[t]he California Supreme Court has allowed plaintiffs to recover damages as 'direct victims'").  To put it bluntly, "no court has found that a university has a general duty of care to avoid emotionally harming students." *Rogers v. Western Univ. Health Sciences*, 2017 WL 11567381, at *4 (C.D. Cal. 2017); *accord Day v. California Lutheran Univ.*, 2024 WL 649239, at *5 (C.D. Cal. 2024).  Even if the Student Plaintiff had a special relationship with USC that allows an NIED claim, seeing posters and receiving emails is not the kind of conduct that causes "a reasonable [person], normally constituted, [to] be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 928 (1980).[14]

## C.  Plaintiffs' Remaining Claims Fail Again

### 1.  Breach of Contract (Count 6)

The Court did not grant the Faculty Plaintiff leave to bring a breach of contract claim.  *See* Dkt. 72, at 16.  She has no contract claim to bring.[15]

---

[14] Plaintiffs also fail to show how negligence liability can be attributed to USC in the context of a campus protest.  There can be no "liability on a protest leader or an organizer" for the wrongful acts of others "under a negligence theory." *Cider Riot, LLC v. Patriot Prayer USA, LLC*, 544 P.3d 363, 375 (Or. App. Ct. 2024); *Ford v. Mckesson*, 2024 WL 3367216 at *14 (M.D. La. 2024) (imposing negligence liability for the acts of others at a protest is impermissible); *accord Lam v. Ngo*, 91 Cal. App. 4th 832, 845 (2001) (no vicarious liability for intentional torts at protests absent a specific intent to harm).  Here, USC did not even organize the protest—it was the object of the protestors and the location where the protest occurred.  Thus, it is even further removed from civil liability than those who organize or plan such events.

[15] Although the Court did not expressly preclude the Faculty Plaintiff from (footnote continued)

17

The Student Plaintiff has again failed to plead at least three required elements of a breach of contract claim—"the contract," "breach," and "resulting damages to [the] plaintiff." *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1173 (2016). "In California, in order to state a cause of action for breach of contract, a complaint 'must indicate on its face whether the contract is written, oral, or implied by conduct.'" *Indigo Grp. USA Inc v. Polo Ralph Lauren Corp.*, 2011 WL 13128301, at *2 (C.D. Cal. 2011). Plaintiff flunks that basic pleading test (SAC ¶¶ 174-178)—so it is no surprise that she also fails to allege "what exactly were the terms of that contract." *Id.*; *see also Augustus*, 2023 WL 2799117, at *5 (dismissing claim where plaintiff did not "plead *facts* from which the existence of [the policy at issue] can plausibly be inferred," including "the exact parameters of the policy") (emphasis in original).

Moreover, the duty to provide a "safe" campus (SAC ¶ 177) is insufficiently definite on the face of this complaint, where Plaintiffs persistently conflate notions of physical safety, "verbal" safety (*i.e.*, offensive slogans), and feelings of safety. *See* 1 WILLISTON ON CONTRACTS § 4:22 (4th ed. May 2024 update) (contract duties must be sufficiently definite); *Zavatto v. Itzhaki*, 2017 WL 1021734, at *3 (Cal. Ct. App. 2017) (contract for a "complete remodel" of a property was indefinite, despite contract payments). Whether a contract duty is "sufficiently definite … is a question of law" that serves as alternative grounds for dismissal here. *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006) (quotation marks omitted).

Additionally, the Student Plaintiff does not offer well pleaded facts that plausibly allege breach or damages. The Student Plaintiff does not show how an alleged encampment on the main campus caused USC to breach any obligations to her as a "hybrid" student on the health science campus miles away from the main campus. Nor does the Student Plaintiff offer well-pleaded allegations of contract

bringing a contract claim, it would fail in any event for the same reasons.

damages arising from any breach. *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).

### 2. Declaratory relief (Count 9)

The Court previously held that the federal Declaratory Judgement Act controls. Dkt. 72, at 18. But here, Plaintiffs have no claims remaining on which to seek a declaration: "the Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878-79 (9th Cir. 2022) ("Reno lacks an independent cause of action, so the Declaratory Judgment Act provides no basis for relief."); *see also, e.g.*, *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) ("the operation of the Declaratory Judgment Act is procedural only"). Plaintiffs seek a declaration vindicating their Ralph Act, Bane Act, and Unruh Act claims. SAC ¶ 204. Because those claims fail for the reasons discussed above, the request for declaratory relief necessarily fails as well.

Plaintiffs' request for a declaratory judgment mentions other legal theories in passing. *Id*. But Plaintiffs were not given leave to amend to state a claim under the "First and Fourteenth amendments," and "federal civil rights laws including 42 USC § 1983 and 1985." *Id*. ¶ 203. They may not add these claims through the guise of a request for a declaration.[16]

## II. PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE DISMISSED OR STRICKEN AGAIN

In the unlikely event that any claims survive, Plaintiffs' class allegations should be stricken. "Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule

---

[16] These claims would fail. The First and Fourteenth Amendments apply to state—not private—actors. *See Lugar*, 457 U.S. at 929; *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019). Section 1983 also has a state action requirement. *See Lugar*, 457 U.S. at 929. Plaintiffs have not even specified which of the three different causes of action in § 1985 they seek to invoke, or how their allegations make out a plausible claim here.

12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010); *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, at *8 (C.D. Cal. 2013).  Striking class allegations at the pleading stage "avoid[s] the expenditure of time and money that must arise from litigating spurious issues." *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (quotation marks omitted).

*First*, Plaintiffs have made no attempt to plead the existence of any of the requirements for class certification, including typicality, adequacy, commonality, and predominance.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158, 160 (1982) (where a complaint lacked any "specific presentation identifying the questions of law or fact that were common to … the class," it was error for the district court to presume that plaintiff's claim was typical of the class, and stating that "[s]ometimes the issues are plain enough from the pleadings…"); *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *11 (N.D. Cal. 2013) (*reconsidered on other grounds*) (complaint "must make a prima facie showing that Fed. R. Civ. P. 23(a) and 23(b) can be satisfied"); *Roberts v. Target Corp.*, 2012 WL 400030, at *1 (W.D. Okla. 2012) (granting motion to dismiss class allegations where complaint "contains no facts in support of any of the elements of a class action claim under Rule 23").

The Student Plaintiff, for instance, baldly asserts that she sues on behalf of similarly situated Jewish students.  SAC ¶ 110.  But the SAC alleges that the Student Plaintiff is a hybrid graduate student on the health sciences campus (and evidently did not encounter any of the protest activity on the "main" campus), that she is the only Jewish student in her hybrid class, and that her Jewish identity is not known to the campus community at large.  *See id.* ¶¶ 112-122.  The SAC makes no attempt to explain why a hybrid graduate student who does not allege travel to the main campus and did not experience much of the conduct complained of is a typical and adequate representative for Jewish students at-large.  That is facially insufficient.

*Second*, while Plaintiffs' class definition is not entirely clear, membership appears to turn on " damages, harm and … stigmatiz[ation]." SAC ¶¶ 127-128. That would require a highly individualized inquiry into the factual circumstances of each potential class member, including whether they suffered damages and were stigmatized. Indeed, Plaintiffs' own counsel has demonstrated how individualized (and onerous) that task would be:  he spent over seven months searching for plaintiffs on USC's campus. Dkt. 17, at 9. And during that time, the "vast majority of Jewish USC students" that he spoke with "declined to participate in the lawsuit" for reasons including "***because they support the protests***" or "***because they believed that the harm or damage was trivial***." *Id*. (emphasis added). Thus, the Court "would be forced to engage in individual inquiries of each class member" to determine if each was harmed. *Sanders*, 672 F. Supp. at 991. Such a class cannot proceed. *E.g.*, *Naiman v. Alle Processing Corp.*, 706 F. Supp. 3d 892, 902-03 (D. Ariz. 2020) (collecting authority and striking class claims that would require individual interviews).

## CONCLUSION

The Court should dismiss Plaintiffs' Second Amended Complaint with prejudice in full.  In the alternative, Plaintiffs' class allegations should be stricken.

Dated: April 1, 2025

Respectfully submitted,

JONES DAY

By: */s/ Rasha Gerges Shields*
    Rasha Gerges Shields

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

USC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND STRIKE CLASS

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant University of Southern California, certifies that this brief contains 6993 words, which complies with the word limit of L.R. 11-6.1 and Standing Order 6(c).


Dated: April 1, 2025                    Respectfully submitted,


                                        JONES DAY


                                        By: */s/ Rasha Gerges Shields*
                                            Rasha Gerges Shields

                                        Attorneys for Defendant
                                        UNIVERSITY OF SOUTHERN
                                        CALIFORNIA

USC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND STRIKE CLASS